1

HONORABLE THOMAS S. ZILLY

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10  AMERICAN MANAGEMENT SERVICES
    EAST, LLC, a Washington limited liability
11  company, *et al.*,

NO.  2:15-CV-01004-TSZ

DEFENDANT LEXINGTON
INSURANCE COMPANY'S MOTION
FOR SUMMARY JUDGMENT RE: DUTY
TO DEFEND

12                                  Plaintiffs,

      v.

13  SCOTTSDALE INSURANCE COMPANY, a
    Delaware corporation, *et al.*,

**NOTE ON MOTION CALENDAR:**
**December 18, 2015**

14

                                  Defendants.

ORAL ARGUMENT REQUESTED

15

16              **I.     RELIEF REQUESTED**

17          COMES NOW Defendant Lexington Insurance Company ("Lexington"), and moves for

18  summary judgment seeking a declaration that Lexington has no duty to defend Plaintiffs in the

19  lawsuits captioned *Monterey Bay v. Military Housing, LLC, et al. v. Pinnacle Monterey, LLC, et*

20  *al.*[1] ("California Action"), and *Fort Benning Family Communities, LLC and Fort Belvoir*

21

22

---

[1] United States District Court, Northern District of California, San-Jose Division, Case No. 14-cv-03953-BLF.

A n d r e w s ▪ S k i n n e r ,  P.S.
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    *Residential Communities, LLC v. American Management Services East, LLC, et al.*,[2] ("Georgia

2    Action").    The Lexington policies do not provide coverage for the claims asserted in the

3    underlying lawsuits, and the duty to defend under the policies has not been triggered.  First, there

4    are no allegations of "bodily injury" or "property damage", which is a requirement under

5    Coverage A to the Lexington policies.  Second, even if any allegation could be construed to

6    allege damages because of "bodily injury" or "property damage", such damage must be alleged

7    to have been caused by an "occurrence" as defined in the policies.  Here, there is no reasonable

8    construction under which the allegations could be read to assert damage caused by an

9    "occurrence."   Third, there are no allegations of "personal and advertising injury", which is a

10   requirement under Coverage B to the Lexington policies.  Fourth, even if the underlying claims

11   could be construed to satisfy the prerequisites of coverages A or B, policy exclusions bar

12   coverage for the claim.

13        The underlying lawsuits were brought against Lexington's insureds (Plaintiffs) with

14   regard to their management of military housing facilities, governed by property management

15   agreements (PMAs).  The plaintiffs in the underlying lawsuits sought declaratory relief that the

16   PMAs are void and allege the PMAs automatically terminate upon "theft, fraud, or other

17   knowing or intentional misconduct by [AMSC] or its employees or agents."  To achieve the

18   desired outcome, the complaints clearly and repeatedly allege intentional malfeasance including

19   that Plaintiffs intentionally conspired to defraud, and have defrauded, the United States

20   government, such that the PMAs are terminated.  Conversely, the complaints contain no

21   allegation that the Plaintiffs accidently caused "property damage" or "bodily injury."  Under the

22

---

[2] Superior Court of Muscogee County, Georgia, Civil Action No. SU10CV2025-F.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 2

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

"eight corners rule", construing the complaints liberally, there were no facts alleged that could impose liability on the insured within the grant of coverage of the Lexington policies. Therefore, Lexington appropriately denied it had a duty to defend or indemnify the claims.

## II.   FACTS

### A.   Lexington Policies

Lexington issued five Commercial General Liability Policies as follows:

| Number | Policy Term | Named Insureds |
|---|---|---|
| 3470023[3] | 4/10/03-4/10/04 | Issued to GFS Risk LLC.  Added by endorsement subject to policy terms:  Pinnacle Realty Management Company and all affiliated, subsidiary, associated or allied companies, corporation, firms, entities, partnerships, organizations or joint ventures. |
| 0328814 | 4/10/04-4/10/05 | Issued to GFS Risk LLC.  Added by endorsement subject to policy terms:  American Management Services, LLC (AMS), American Management Services East, LLC (AMSE), Goodman Financial Services, Inc. (GFS), Goodman Real Estate, Inc. (GRE). |
| 2606695 | 4/10/05-4/10/06 | Issued to GFS Risk LLC.  Added by endorsement subject to policy terms:  Pinnacle Realty Management Company, AMS, AMSE, American Management Services California (AMSC), GFS, GRE, Stan Harrelson. |
| 6120162[4] | 4/10/06-4/10/07 | Issued to American Management Services, LLC.  Added by endorsement subject to policy terms:  Pinnacle Realty Management Company, AMS, AMSE, GFS Risk, LLC, GRE. |
| 0631748 | 4/10/07-4/10/08 | Issued to American Management Services, LLC.  Added by endorsement subject to policy terms:  Pinnacle Realty Management Company, AMS, AMSE, AMSC, GFS Risk, LLC, GRE. |

### B.   Underlying Lawsuits

#### 1.   The Georgia Action

The Georgia Action was filed in 2010.  Exs 11 and 12.[5]  In the Fifth Amended

[3] All five policies have a limit of $1 M each occurrence subject to an occurrence Self Insured Retention. *See* policies at Exhibits 1, 2, 3, 4, 5.
[4] Plaintiffs have not alleged in their Complaint that they are seeking coverage under Policy No. 0621062. However, Lexington is seeking a determination that there is no coverage under this or any of the listed policies.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 3

Andrews•Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 • Fax: 206-623-9050

Complaint, the named defendants are the following Lexington insureds: American Management Services East LLC (AMSE), American Management Services, LLC d/b/a Pinnacle (AMS), GFS Risk, LLC, Goodman Real Estate, Inc. (GRE), Goodman Financial Services, Inc., Stanley Harrelson,[6] and John Goodman[7] ("Georgia Plaintiffs").  Ex 16 (Dkt 51-5).  The Georgia Action was brought against the Georgia Plaintiffs by Fort Benning Family Communities LLC ("FBFC") and Fort Belvoir Residential Communities LLC ("FBRC").  FBFC and FBRC ("Owners") are alleged to be formed by the United States of America to provide privatized housing for military residents and their families.  *Id.*, at ¶1.

The Fifth Amended Complaint alleges the Georgia Plaintiffs[8] provided property and asset management services pursuant to PMAs.  Ex 16 (Dkt 51-5), ¶¶1-2.  The PMA with FBFC began in January 2006, and with FBRC in December 2003.[9]  The suit alleges the Georgia Plaintiffs engaged in a scheme of rate overbillings and kickbacks from vendors, as well as inflated insurance premiums, to the financial detriment of FBFC and FBRC.[10]  Ex 16 (Dkt 51-5), ¶¶3-14.  The suit alleges that "[m]uch of the fraud and other misconduct uncovered to date…, including falsification of work order data, has now been admitted by current and former Pinnacle employees and senior managers.  These frauds have been further corroborated by bank records,

---

[5] Unless otherwise stated, referenced exhibits are those filed with the parties' Stipulated Exhibit List, Dkt 50 *et seq*.
[6] Plaintiffs allege that Stanley Harrelson was a manager of AMS, Pinnacle Irwin, LLC, and Pinnacle Monterey, LLC, and chairman of AMSC. Dkt 1, ¶1.7.
[7] Plaintiffs allege that John A. Goodman was a member of AMS, Pinnacle Irwin, LLC, and Pinnacle Monterey, LLC, and chairman of AMS, and GRE.  Dkt 1, ¶1.8.
[8] Specifically, AMSE is alleged to be the entity providing property management services, and AMS allegedly is affiliated with AMSE (collectively with AMS, "Pinnacle").  See Ex 16 (Dkt 51-5), ¶1.
[9] See exhibits 1 and 2 to the original Georgia Complaint, at Ex 11 (Dkt 51), pp. 19-75.
[10] Georgia Plaintiff, GFS Risk, is alleged to have purchased insurance on behalf of the underlying plaintiffs, and it is further alleged that GFS Risk, GRE and Goodman Financial (collectively "Goodman Entities"), along with Pinnacle, charged the underlying plaintiffs an inflated insurance premium to unfairly subsidize insurance rates for other properties owned personally by Georgia Plaintiffs Harrelson and Goodman. Ex 16 (Dkt 51-5), at ¶¶8-13, 160.

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    [Georgia Plaintiffs'] own documents, and the documented interviews conducted by Pinnacle

2    Human Resources employees and its hired special investigator."  *Id*., at ¶15.  The suit further

3    alleges that the same fraud was being perpetrated on California military housing facilities and

4    that "[i]t is now clear that Pinnacle, the Goodman Entities, Goodman and Harrelson had

5    conceived of their schemes before FBFC and FBRC (and the Monterey and Irwin Owners) had

6    entered into the PMAs, and intended to engage in such frauds from the outset of all four

7    projects."  *Id*., at ¶28.  The Georgia Action contains ten counts, including fraud, conspiracy to

8    commit fraud and violation of Georgia's RICO statute.

9         On July 31, 2010, AMSE/AMS tendered the Complaint and First Amended Complaint in

10   the Georgia Action to Lexington.[11]  See Ex A to *Skinner Decl*.  Lexington reviewed the

11   complaints, to determine if there were any allegations that could conceivably bring the Georgia

12   Action within coverage under the policies.  On August 17, 2010, Lexington sent a position letter

13   to the insureds advising that based on the policy language and the allegations of the complaints,

14   Lexington had no duty to defend the Georgia Action or indemnify any of the Georgia Plaintiffs

15   with respect to the claims asserted.  Ex 23 (contained in Dkt 52).

16        Two years later, on November 12, 2012, Plaintiffs tendered to Lexington the Fifth

17   Amended Complaint in the Georgia Action.[12]  Ex 54 (contained in Dkt 52-9).  In that tender,

18   Georgia Plaintiffs made specific reference to paragraphs 97, 120 and 125.  Paragraph 97 alleges:

19        97.   … Pinnacles' top three management employees at Fort Benning…
            engaged in a scheme to harvest and sell valuable scrap metal and potentially other
20          materials of value from Benning Project homes scheduled for demolition and to

---

21   [11] The 2010 tender was made on behalf of AMSE and AMS (d/b/a Pinnacle), who were defendants to the Georgia
     original and Amended complaints.  Exs 11 and 12.  Additional Lexington insureds were added to the Georgia Action
22   at a later date.
     [12] The 2012 tender of the Georgia Action was on behalf of AMS, GRE, GFS, and John Goodman.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 5

A n d r e w s ▪ S k i n n e r ,   P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

use the proceeds for their own benefit.  Rather than accruing to the project, this money was kept in a Pinnacle safe at the property and was not returned to the Benning Project.  Pinnacle again did not inform FBFC or the Army of this fraudulent practice.

*Id.*, and see Ex 16 (Dkt 51-5).  Paragraphs 120 and 125 are contained in the background information section of the complaint titled "Pinnacle's Widespread Scheme to Fraudulently Manipulate Work Order Data to Increase Its Incentive Fees and Bonuses Paid to Top Management."  *Id.*, pp. 33-42.  The preceding paragraphs in this section (103-119)[13] describe the manner in which work order data allegedly is entered into an accounting and general ledger database, allege that a "Pass/Fail" report is generated based on whether work orders were timely completed, allege that the Pass/Fail report is used to determine the incentive fee payable to Pinnacle, and allege that the Pinnacle management instructed their employees to falsify the work order data to increase their "Pass" percentage.  *Id*.  Paragraph 120 alleges that Pinnacle prematurely closed work orders, even though the work was not done, in order to inflate the pass scores.  *Id.*, p. 40.  Paragraph 125 alleges that the foregoing practices exposed the residents to potential dangerous conditions since the work related to life safety issues including smoke detectors, carbon monoxide detectors and mold, which was not completed, and that as a result of the Georgia Plaintiffs' "scheme to defraud," the Owners are unable to determine whether maintenance problems have actually been fixed.  *Id.*, p. 42. Significantly, there are no allegations of "bodily injury" or "property damage."

Lexington reviewed the Fifth Amended Complaint to determine if there were any allegations that could conceivably bring the Georgia Action within coverage under any of the

---

[13] Paragraph 103 alleged that the fraud by Pinnacle "was not confined to bribery and kickbacks, double billing and overcharges by vendors." *Id.*, ¶103.  This followed a series of allegations of schemes of bribes and kickbacks by Pinnacle management, and cover-ups of the malfeasance.  See, e.g., *Id.* at ¶¶61, 64, 69, 75, 76, 90, 92, 93.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 6

A n d r e w s ▪ S k i n n e r ,  P.S.
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1  policies.  Notwithstanding the allegations of paragraphs 97, 120, and 125, Lexington determined

2  there is no conceivable interpretation of the Fifth Amended Complaint by which the Georgia

3  Action would be covered.  On January 22, 2013, Lexington sent a position letter to the Georgia

4  Plaintiffs advising that Lexington determined it had no duty to defend the Georgia Action, or

5  indemnify the Georgia Plaintiffs with respect to the claims asserted.  Ex 24 (contained in Dkt

6  52).

7           2.        **The California Action**

8           On November 12, 2012, Plaintiffs tendered to Lexington the Third Amended Complaint

9  in the California Action.  *See* Ex 54 (contained in Dkt 52-9).  This was the first notice Lexington

10 had of the California Action.[14]   The defendants named in the California Action were:  Pinnacle

11 Monterey LLC, Pinnacle Irwin, LLC, AMS, GFS Risk, LLC, (GRE), Goodman  Financial

12 Services, Inc., Stanley Harrelson, and John Goodman ("California Plaintiffs").  Ex 20 (Dkt 51-

13 9).

14          The plaintiffs in the California Action ("Owners"), are alleged to be entities who hold an

15 interest in and oversee the development, construction and property management services of real

16 property located at military bases known as Presidio of Monterey and Fort Irwin.  *Id*., at ¶15.

17 The complaint alleges that the Owners entered into PMAs with one or more of the California

18 Plaintiffs with respect to base housing beginning as early as May 2003 and continuing to March

19 2004.  *Id*., ¶¶48-53.  The complaint alleges that each PMA was set to last for up to a 50-year

20 period, but that the PMAs "shall automatically terminate upon 'theft, fraud, or other knowing or

21 intentional misconduct by [AMSC] or its employees or agents.'"  *Id*. (¶53).  The complaint,

22 ───────────────────
[14] The Third Amended Complaint in the California Action (first notice of the California Action) was tendered at the same time the 5th Amended Complaint in the Georgia Action was tendered.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 7

A n d r e w s ▪ S k i n n e r ,  P.S.
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   which does not include any allegations of bodily injury or property damage, seeks to terminate

2   the PMAs. *Id.*

3       The complaint alleges that, beginning with an audit at the Fort Benning facility (in the

4   Georgia Action), deficiencies in management controls were discovered and that corrective

5   actions were not taken to change the problems. *Id.* As a result of the Fort Benning audit, alleged

6   discrepancies were found, and similar audits were undertaken at the California facilities. *Id.* A

7   scheme of rate overbillings and kickbacks from vendors were allegedly discovered to the

8   financial detriment of the Owners as well as inflated insurance premiums that subsidized non-

9   base housing locations. *Id.* The Owners sued California Plaintiffs, alleging that the California

10   Plaintiffs and their employees and agents "have committed systematic fraud and intentional

11   misconduct to enrich Defendants at the expense of Plaintiffs." *Id.* at p. 2 (¶1). The Third

12   Amended Complaint contains eleven counts, including declaratory relief (four separate counts),

13   breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, conspiracy to

14   commit fraud, deceit, unfair business practices and unjust enrichment. *Id.*

15      In their tender, California Plaintiffs made specific reference to paragraph 91 of the

16   California Complaint, which alleges:

17         Pinnacle's falsification of work orders has posed and continues to pose a direct
risk to the life and safety of the military residents at Monterey (and likely at Fort
18         Irwin). Many of the work orders at these projects related to life safety issues
including smoke detectors, gas and carbon monoxide leaks, and other potential
19         safety issues. Because part of the scheme to defraud included closing out work
orders where the work had not been performed (and reporting these orders as
20         "passes"), Pinnacle has left MBMH in a position where it can have no confidence
that maintenance requests, including those relating to life and safety issues have
21         been (and are being) responded to at all, let alone on a timely basis. MBMH is
currently attempting to address these risks created by Pinnacle's fraud.

22

1   Ex 20 (Dkt 51-9), at p. 24 (¶91).

2       Lexington reviewed the complaint, to determine if there were any allegations that could

3   conceivably bring the California Action within coverage under any of the Lexington policies.

4   On January 23, 2013, Lexington sent a position letter to the California Plaintiffs advising that

5   Lexington had no duty to defend the California Action, or indemnify the California Plaintiffs

6   with respect to the claims asserted, under any of its policies.  Ex B to *Skinner Decl.*[15]

7       **3.    Extrinsic evidence submitted in 2015**

8       On January 22, 2015, after the Actions had been ongoing for four to five years, Plaintiffs

9   submitted declarations/affidavits that were filed in the underlying Actions after Plaintiffs' 2012

10  tender.  See Exs 37-48. The affidavits were signed by employees of Pinnacle, indicating their

11  knowledge of the intentional manipulation of work orders and other activities perpetrated by

12  some or all of the Plaintiffs or their employees.  *Id.*    However, the affidavits do not support an

13  assertion that any "property damage" is alleged to be caused by an "occurrence."

14      On June 12, 2015 – ten days before filing the instant declaratory action – Plaintiffs

15  submitted the declaration of Paul David Cramer, Acting Deputy Assistant Secretary of the Army.

16  Ex 49.  Plaintiffs assert that the Cramer declaration provides evidence of the potential for "bodily

17  injury" caused by an "occurrence."  However, the declaration does not support an assertion that

18  any "bodily injury" is alleged to be caused by an "occurrence."  Lexington reviewed the Cramer

19  declaration as well as the complaints and policies, to determine if the additional information

20  triggered coverage under the policies.  On June 26, 2015, Lexington sent a position letter

21  addressing the extrinsic evidence and confirming Lexington's denial of coverage.  Ex 28

22
---
[15] Since that letter, the Fifth Amended Complaint was filed on April 16, 2015.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 9

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   (contained in Dkt 52).

2   **C.**   **Declaratory Judgment Action**

3       On June 22, 2015, Plaintiffs filed the Complaint in this lawsuit against Lexington and

4   others.  (hereinafter "Plaintiffs' Complaint")  On August 11, 2015, Lexington filed an answer

5   and counterclaim against Plaintiffs.  As will be discussed below, the duty to defend was not

6   triggered by any of the complaints or extrinsic evidence tendered to Lexington.

7               **III.**   **EVIDENCE RELIED UPON**

8       Lexington relies on the pleadings and files in this case, Stipulated Exhibit List and exhibits

9   thereto, the Declaration of Stephen G. Skinner, with attachments, filed herewith.

10             **IV.**   **STATEMENT OF ISSUES**

11       1.   The underlying lawsuits are not covered under Coverage A of the Lexington

12   Policies, where there is no allegation of "bodily injury" or "property damage" caused by an

13   "occurrence" as defined in the Lexington Policies.

14       2.   The underlying lawsuits are not covered under Coverage B of the Lexington

15   Policies, where there is no allegation of "personal and advertising injury".

16       3.   Even if coverage were triggered under Coverages A or B by the allegations or

17   extrinsic evidence, coverage is barred by application of certain policy exclusions.

18           **V.**   **ARGUMENT AND ANALYSIS**

19   **A.**   **Applicable standards for interpretation of an insurance policy**

20       Summary judgment is appropriate where there is no genuine issue of material fact and the

21   moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c).  Summary

22   judgment should be entered where the affidavits, discovery materials, and pleadings on file

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 10

A n d r e w s ▪ S k i n n e r ,  P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1   demonstrate there is no genuine issue of material fact and that the moving party is entitled to

2   judgment as a matter of law, such as where there is an absence of evidence to support the non-

3   moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

4          An insurer's duty to defend is broader than the duty to indemnify.  Under Washington

5   law, "[t]he duty to defend arises when a complaint against the insured, construed liberally,

6   alleges facts which could, if proven, impose liability upon the insured within the policy's

7   coverage." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404-05 (2010).  When

8   determining whether the duty to defend was triggered, the court is limited to examining "the four

9   corners of the complaint and the four corners of the insurance policy." *Expedia, Inc. v. Steadfast*

10  *Ins. Co.*, 180 Wn.2d 793, 806 (2014). Washington courts have concluded that the duty to defend

11  is triggered if the insurance policy conceivably covers the allegations in the complaint.  *Woo v.*

12  *Fireman's Fund*, 161 Wash. 2d 43, 53 (2007); *Grange v. Roberts,* 179 Wn. App. 739, 751 (2013).

13  The duty to defend is not, however, without limits.  "Although this duty to defend is broad, it is

14  not triggered by claims that clearly fall outside the policy."  *Nat'l Sur. Corp. v. Immunex Corp.*,

15  176 Wn.2d 872, 879 (2013) (citing *Kirk v. Mt Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998).[16]

16  **B.     The allegations of the Georgia Action and California Action do not trigger the
            Insuring Agreements to the Lexington policies.**

17         Under separate Insuring Agreements, the Lexington policies provide coverage for "bodily

18  injury" and "property damage" (Coverage A) and "personal and advertising injury" (Coverage B).

19  In the absence of these types of damages, there is no coverage under the Lexington policies.

20

---

21  [16] Plaintiffs misstate the law in their Complaint, alleging that "the duty to defend only requires the complaint to
    allege facts that could potentially impose liability on the insured."  Dkt 1, Par. 3.10.  However, "[t]he duty to defend

22  'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose
    liability upon the insured *within the policy's coverage*." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 750,
    760 (2002).

A n d r e w s • S k i n n e r ,  P . S .
                                         *645 Elliott Ave. W., Ste. 350*
                                         *Seattle, WA 98119*
                                         *Tel: 206-223-9248 • Fax: 206-623-9050*

1.    **No duty to defend is triggered under Coverage A, where there is no alleged "bodily injury" or "property damage" caused by an "occurrence."**

The Lexington policies contain the following language under Coverage A, which provides coverage for damages arising from "bodily injury" and/or "property damage":[17]

> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. INSURING AGREEMENT
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply…
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

Exs 1 (p. 14), 2 (p. 22), 3 (p. 24), 4 (p. 16), and 5 (p. 10).

a.    **No "Bodily Injury"**

There are no allegations or extrinsic evidence of "bodily injury" as that term is defined by the Lexington policies.   "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these."  Exs 1 (p. 27), 2 (p. 36), 3 (p. 38), 4 (p. 28), and 5 (p. 24).

**i. Georgia Action**

Plaintiffs will likely point to allegations that potentially uncompleted maintenance work related to "life safety issues including smoke detectors, carbon monoxide detectors, mold and other potential safety issues."  *See, e.g.*, Ex 16, ¶125.  However, notwithstanding the phrases

---

[17] All policies had substantially the same policy coverage and conditions, although the actual section/subsection letters and/or number references may vary.

A n d r e w s ▪ S k i n n e r ,  P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    selected by Plaintiffs out of the complaint, there is no allegation that damages are being sought

2    because of "bodily injury."   The phrases cited by Plaintiffs are contained within paragraphs

3    alleging that the insureds' falsification of work order data, resulted in the Owners not knowing or

4    being able to confirm whether work had been done. Ex. 16, ¶¶120,125.  While the falsified work

5    orders allegedly may have related to "life safety issues," there is no claim by FBFC or FBRC to

6    recover for any "bodily injury."

7            The so-called "life safety issues" would at best allude to a <u>potential</u> risk of injury to

8    military housing tenants, who are not plaintiffs in the underlying lawsuits.  The Owners have no

9    standing to pursue such a claim on behalf of a tenant, there is no allegation that a tenant has been

10   injured or that a claim for "bodily injury" to a tenant is being made.  Further, it would strain

11   incredulity to argue that an oblique reference to a vague risk of a safety issue pertaining to a non-

12   party somehow triggers coverage under the "bodily injury" provision.  Washington law is clear

13   that risk of harm does not trigger coverage under a liability policy.  *Wellbrock v. Assurance Co.*

14   *of Am.*, 90 Wn. App. 234, 243 (1998) (The mere presence of a "hazard," defined as a "source

15   from which an accident may arise" does not trigger coverage).

16                              **ii.  California Action**

17           The analysis with regard to the California Action is substantially similar.  Paragraph 91

18   of the California Complaint contains phrases identical to Paragraph 125 of the Georgia

19   Complaint.  *See,* Ex 20, ¶91 and Ex 16, ¶125. More recently, Plaintiffs also have argued that

20   phrases contained in paragraphs 4, 5, 95 and 56 of the California Complaint trigger coverage.[18]

21   _____

22   [18] Plaintiffs have argued that ¶¶ 4 and 5 of the Third Amended Complaint allege that the maintenance requests which
     Plaintiffs were tasked with responding to "related to critical life and safety issues."  However, ¶¶ 4 and 5 allege that
     it was the Plaintiffs' "[f]alsification of work order data" and "wide-spread work order fraud," that allegedly may

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 13

A n d r e w s ▪ S k i n n e r ,  P. S.
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    However, reviewing the allegations for any conceivably covered claim, there is no allegation that

2    the California Owners are seeking damages because of "bodily injury."   Allegations that

3    Plaintiffs' alleged "falsification" of data, "work order fraud," and "scheme to defraud" may have

4    led to a risk that undone work pertained to safety issues, do not bring the claim within coverage.

5                                    **iii.  Extrinsic Evidence**

6            Plaintiffs assert that the declaration of Paul David Cramer triggers "bodily injury"

7    coverage.  The declaration, submitted ten days before Plaintiffs filed this coverage action, states

8    Mr. Cramer's belief that "the closing of open work orders without work being completed creates

9    potential life and safety issues for residents."   Ex. 49.   However, nothing in Mr. Cramer's

10   declaration alters the fact that no claim is made in the Actions for "bodily injury."   The risk

11   created by Plaintiffs' fraudulent and intentional decisions not to perform services does not

12   change the nature of the claim or allegations asserted.  As already discussed, even if alleged as a

13   claimed damage, a risk of injury does not trigger coverage.  *Wellbrock,* 90 Wn. App. at 243.

14                    **b.      No "Property Damage"**

15           There are no allegations or extrinsic evidence of "property damage" as defined, in part,

16   by the Lexington policies as "Physical injury to tangible property, including all resulting loss of use

17   of that property" and "Loss of use of tangible property that is not physically injured."  Exs 1 (p. 28),

18   2 (p. 39), 3 (p. 41), 4 (p. 33), and 5 (p. 27).

19

20

---

21   have created "risk that such critical life and safety issues are not in fact being responded to."  Ex. 20.  Plaintiffs'
     reference to ¶56 of the California Complaint, which alleges the Plaintiffs "walked off of the Benning Project"
     (which was not the Project at issue in the California Complaint), and "risk[ed] significant disruption to the services"
22   provided to the military families in Georgia, is entirely unpersuasive to support an argument that damages were
     being sought by the Owners in the California Action for bodily injury or property damage.  See Ex. 20.

DEFENDANT LEXINGTON INSURANCE                    A n d r e w s ▪ S k i n n e r ,   P . S .
COMPANY'S MOTION FOR SUMMARY                     *645 Elliott Ave. W., Ste. 350*
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-            *Seattle, WA 98119*
01004-TSZ] - 14                                   *Tel: 206-223-9248 ▪ Fax: 206-623-9050*

### i.  Georgia Action

Lexington anticipates Plaintiffs will point to paragraphs 97, 120, and 125 of the Georgia Complaint.  Paragraph 97 contains no allegation that tangible property was damaged.  See Ex 16, at ¶97.  The allegation is that the Georgia Plaintiffs "engaged in a scheme to harvest and sell valuable scrap metal and potentially other materials of value from the Benning Project homes scheduled for demolition," and "use[d] the proceeds for their own benefit," rather than having the money accrue to the Project.  *Id*.  The claim is that this was a "fraudulent practice."  *Id*. Putting aside that the allegation, construed liberally, can only be read to allege that Plaintiffs stole money from the Project, there is nothing in the paragraph that alludes to any tangible property being "damaged."  The so-called "property" that the Georgia Plaintiffs kept for their own benefit was money, which by definition is not "tangible" property.

Paragraphs 120 and 125 similarly do not allege damage to tangible property.  The allegations are that the Georgia Plaintiffs' falsification of work order data, resulted in the Owners not knowing or being able to confirm whether work stated in the work orders had been done. The "damage" alleged in paragraph 125, is that the Owners "are currently attempting to address these risks created by Pinnacle's fraud."  The damage alleged is the "risk" that work has not been done.  But "risk" of "property damage" does not trigger coverage.  *See, e.g., Wellbrock,* 90 Wn. App. at 243.  The damage alleged is not "property damage", but that the Owners did not receive the benefit of their bargain under the PMAs, and the Owners have administrative and financial burdens of needing to determine whether maintenance work was done.  There is no alleged damage to "tangible" property that would trigger coverage.  At best, this constitutes intangible property.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 15

A n d r e w s ▪ S k i n n e r ,  P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

Under Washington law, there is no coverage for damage to intangible property unless consequential damages arises "directly from injury to or destruction of tangible property."  See *Yakima Cement Products Co. v. Great Am. Ins. Co.*, 93 Wn. 2d 210, 219 (1980) (emphasis added).  Washington courts have not hesitated to rule that without physical damage to tangible property there is no coverage under Coverage A.  In *Walla Walla College v. Ohio Cas. Ins. Co.*, 149 Wn. App. 726, 730 (2009), the court held that "stress" to the insured's underground storage tank did not constitute "property damage," because it was not "physical injury to tangible property." *Id.* at 735-736.  Likewise, damage to a property "right" is not "injury to or destruction of tangible property." *West Waterway Lumber Co. v. Aetna Ins. Co.*, 14 Wn. App. 833 (1976).

### ii.  California Action

The California Plaintiffs have argued, as they did with regard to "bodily injury," that allegations of failure to complete work orders triggers the **possibility** for "property damage".  As above, there is no allegation of actual damage to tangible property nor are damages being sought for "property damage" and Coverage A is not triggered.

### iii.  Extrinsic Evidence

Likewise, the affidavits recently submitted by Plaintiffs do not trigger coverage for "property damage."  Plaintiffs have argued that the January 2015 affidavits contain references to the following: cracked countertops and twenty flooded basements. *See, e.g.*, Ex 42 (Decl. of K. Centers); appliances gone missing or disposed of.  Ex 43 (Decl. of D. Smith); failure to do mold remediation.  Ex 46 (Decl. of J. Merrill); and painting over mold.  Ex 47 (Decl. of D. Arias).

However, the coverage is for "property damage" "caused by" an "occurrence" ("occurrence" is discussed below).  The condition of the property referenced in the affidavits is

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 16

A n d r e w s ▪ S k i n n e r ,  P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    not alleged to be damage "caused by" any act or omission by Plaintiffs. Rather, they merely

2    describe conditions left unfixed, reflecting that when Plaintiffs fraudulently and intentionally

3    manipulated work orders for self gain, the Owners of the facilities did not get the benefit of the

4    bargain under the PMAs.  They do not describe alleged "property damage" caused by the

5    insured.

6            **c.    No "occurrence"**

7           To trigger coverage, any alleged "bodily injury" or "property damage" must be caused by an

8    "occurrence."  Exs 1 (p. 14), 2 (p. 22), 3 (p. 24), 4 (p. 16), and 5 (p. 10).  "Occurrence" is defined in

9    the policies as "an accident, including continuous or repeated exposure to substantially the same

10   general harmful conditions."  Exs 1 (p. 29), 2 (p. 38), 3 (p. 40), 4 (p. 32), and 5 (p. 26).

11          The underlying actions cannot conceivably be interpreted as alleging an "occurrence." This

12   identical definition of "occurrence" was analyzed by the Washington Court of Appeals in *Grange*

13   *Ins. Ass'n v. Roberts*, 179 Wn. App. 739 (2013).  *Grange* held that where "occurrence" is defined

14   as an "accident," and where "accident" is not defined in the policy, the court looks to the

15   common law definition of "accident."   Applying the common law meaning of "accident,"

16   *Grange* held that "a reasonably foreseeable harm resulting from deliberate conduct was not an

17   'accident' and, thus, not an 'occurrence' under the policy's language."  *Id.*, at 756.  In *Grange*, the

18   underlying lawsuit involved a family member's suit against the insured to set aside transfers of

19   property from their now deceased mother, and sought damages based on allegations that the

20   insured obtained the transfers by engaging in fraudulent acts, exerting undue influence over their

21   mother, "actively interfer[ing]" with their mother, and making false statements and "bad

22   mouth[ing]" them.  In a subsequent declaratory judgment action, the insured argued that the duty

A n d r e w s ▪ S k i n n e r ,  P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1  to defend was triggered because the underlying complaint "allege[d] defamation, outrage,

2  tortious interference with expected inheritance and tortious interference with a parent/child

3  relationship." *Id*. at 753.

4       Noting that "if there is any reasonable interpretation of the facts or the law that could

5  result in coverage, the insurer must defend," the court affirmed the trial court's determination of

6  no duty to defend, finding there was no reasonable interpretation bringing the complaint within

7  the policy coverage.  *Id*. at 752.  In *Grange*, the court looked to the common law definition of

8  "accident":

9     an accident is never present when a deliberate act is performed unless some
     additional unexpected, independent and unforeseen happening occurs which
10    produces or brings about the result of injury or death. The means as well as the
     result must be unforeseen, involuntary, unexpected and unusual.

11

12  *Id*. at 755-756 (*citing Safeco Ins. Co. of America v. Butler,* 118 Wn.2d 383, 401 (1992)).

13       The test for what constitutes an accident is not based on the insured's <u>subjective</u> intent to

14  cause the harm alleged, but based on what is <u>foreseeable</u> from the insured's conduct.  In short:

15    Where an insured acts intentionally but claims that the result was unintended, the
     incident is not an accident if the insured knew or should have known facts from
16    which a prudent person would have concluded that the harm was reasonably
     foreseeable.  Stated another way, "[w]e define an outcome as accidental only if
17    both the means and the result were 'unforeseen, involuntary, unexpected and
     unusual.'"  "[P]ursuant to the common sense definition, 'accident' is not a
18    subjective term.  Thus, the perspective of the insured as opposed to the tortfeasor
     is not a relevant inquiry. Either an incident is an accident or it is not."  [citations
19    omitted]

20  *Id*. at 756.  *USAA v. Speed*, 179 Wn. App. 184 (2014), was in accord:

21    Under this standard, there is no accident even if the insured did not expect or
     intend any injury. See [*Safeco Ins. Co. of Am. v. Butler* 118 Wn.2d 383, 400-401,
22    823 P.2d 499 (1992) (quoting *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d
     99, 104, 751 P.2d 282 (1988))] (no accident even assuming injury resulted from

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 18

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

an unintentional ricochet of bullet); *State Farm Fire & Cas. Co. v. Parrella*, 134 Wn. App. 536, 541, 141 P.3d 643 (2006) (no accident even though it was undisputed that insured did not intend to injure claimant).

*Safeco Ins. Co. of Am. v. Dotts*, 38 Wn. App. 382, 685 P.2d 632 (1984) is illustrative. In that case, the insured slapped a person he found at his girlfriend's home in order to get the person's attention. *Dotts*, 38 Wn. App. at 383-84. The insured testified that he was not angry and did not intend to hurt the person. *Dotts*, 38 Wn. App. at 384. The person seemed unaffected but later lapsed into a coma and died. *Dotts*, 38 Wn. App. At 384. Division Three of this court held that because the slap was a deliberate act, the death did not result from an accident. *Dotts*, 38 Wn. App. at 385-87.

*Id.* at 198.[19] In *State Farm Fire & Cas. Co. v. Heather Ridge, L.P.*, 2013 U.S. Dist. LEXIS 6747 (W. Dist. WA. 2013), the Court held there was no coverage and no duty to defend the insured, who was sued for fraudulent concealment and breach of contract with regard to the sale of two apartment complexes, where the underlying claimants alleged that at the time of the sale the insureds knew or should have known that the apartments had extensive defects such as water intrusion, rot and mold, infestations and structural defects, that rendered the apartments unsound and unsafe. *Id.* at 2. Applying Washington law, the court held State Farm had no duty to defend allegations of fraudulent concealment where there were no allegations of "property damage" caused by an "occurrence" as defined in the policy and no allegations of negligence. *Id.*

Here, there is no conceivable construction of the complaints that would support the assertion that "bodily injury" or "property damage" is claimed to be caused by an "occurrence." Likewise, the recently submitted extrinsic evidence does not support the claim that any

---

[19] *Speed* held there was no duty to defend a pre-suit demand to the insured alleging a road rage incident, finding no allegation "that would support the conclusion that there was an 'additional unexpected, independent and unforeseen happening'" that would convert the insured's deliberate acts into an accident. *Id.* at 199. The homeowner's policy in that case, which contained the same definition of "occurrence", "does not conceivably cover the allegations" in the demand letter. *Id.* Further, the insurer's "uncertainty" in that case whether to provide a defense did not create a duty to defend when the unambiguous claim allegations did not trigger such a duty, as "the existence of a duty to defend is a question of law for the court, based solely on the claim allegations." (citing *Woo*). *Id.* at 201.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 19

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

"accident" caused the alleged risk of harm or any other alleged damage.

**2.     No duty to defend is triggered under Coverage B, where there is no alleged "personal and advertising injury" as defined in the policies.**

Coverage B[20] to the Lexington policies provides coverage for "personal injury and advertising injury", defined in the policies to include various offenses.[21]   Exs 1 (p. 29), 2 (p. 39), 3 (p. 41), 4 (p. 32), and 5 (p. 26).   None of these delineated offenses is remotely close to the allegations contained in the Actions.   In the absence of a "personal and advertising injury", the requirement of Coverage B has not been satisfied.   It necessarily follows that the duty to defend or indemnify is not triggered under Coverage B.

**C.     The Lexington policies contain exclusions that bar coverage for the Actions**

To the extent the claim does not satisfy the requirements of the Insuring Agreements for Coverages A or B, there is no coverage for the Actions and it is unnecessary to continue the coverage analysis.   However, even if the Insuring Agreements had been triggered by the Actions, exclusions in the Lexington policies preclude coverage for the claim.

Exclusionary clauses are strictly construed against the insurer.   *Am Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 406 (2010) (citing *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68 (1983)).   However, a strict application should not trump the plain, clear language of a policy.   *See Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 374 (1996).[22]

Here, the Lexington policies contain at least five exclusions that bar coverage for the

---

[20] Exs 1 (p. 19), 2 (p. 31), 3 (p. 33), 4 (p. 24-25), and 5 (p. 18-19).
[21] For the purposes of personal injury coverage, the coverage trigger is the type of offense alleged in the complaint as opposed to the nature of the alleged injury.   See e.g., *Kitsap County v. Allstate Ins. Co.* 136 Wn.2d 567 (1998).
[22] If the plain language of the policy does not provide coverage, the court will not rewrite the policy to do so. *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 99 (1999).   Exclusions drafted in clear, unmistakable language will be enforced unless against public policy.   *See Brown v. United Pacific Ins. Co.*, 42 Wn. App. 503, 506 (1986).

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 20

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

claims asserted in the Actions:  (1) Expected or Intended Injury; (2) Cross-Suits; (3) Damage to Property; (4) Mold; and (5) Pollution.

### 1.    Expected or Intended Injury Exclusion

The Lexington Policies provide that there is no coverage for ""Bodily injury" or "property damage" expected or intended from the standpoint of the insured…."  Exs 1 (p. 14), 2 (p. 23), 3 (p. 25), 4 (p. 17), and 5 (p. 11).  Damages resulting from intentional acts are deemed to fall under this exclusion.  Here, the Owners in both Actions are seeking declarations that the PMAs are void, which is only possible if the Insureds' acts or omissions were intentional:

> C. Default: In addition to the default set forth in Section 18.1(A), each of the following events shall constitute an event of default by the party in respect to which such event occurs:
>
> 4. theft, fraud, or other knowing or intentional misconduct by Manager or its employees or agents.

See exhibits 1 and 2 to the original Georgia Complaint, at Ex. 11 (Contract- see attached to GA Action original complaint).  As a matter of law, coverage is barred by exclusion a.

### 2.    Cross-Suit Exclusion

Four of the Lexington policies contain "cross-suits" exclusions, which precludes coverage for any suit or claim brought by a named insured/additional named insured against another named insured/additional named insured covered by the Lexington policies.  See Exs 2 (p. 58), 3 (p. 59), 4 (p. 48), and 5 (p. 40).  Under the terms of the PMAs, the Plaintiffs were obligated to maintain general liability insurance and each Owner be named as an insured on general liability policies.  See exhibits 1 and 2 to the original Georgia Complaint, at Ex. 11.  Each of the Lexington policies contains some form of a Blanket Additional Insured endorsement

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 21

A n d r e w s ▪ S k i n n e r ,   P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1   that treats any person or organization, such as the Owners, as an Additional Insured on a blanket

2   basis where required by contract.[23]   Since the PMAs required that the Owners be named

3   insureds, by operation of this endorsement they would be considered additional insureds under

4   the Lexington policies.   Because the underlying lawsuits involve Lexington insureds (the

5   Owners) suing other Lexington insureds (the Plaintiffs), the cross-suits exclusion precludes

6   coverage for these claims.

7        **3.**   **Mold and Pollution Exclusions**

8        The Lexington policies contain exclusions barring coverage for "'bodily injury' or

9   'property damage' or any other loss, cost or expense," relating in any way to mold. [24]   Similarly,

10   the policies contain pollution exclusions for injury or damage arising out of the actual, alleged or

11   threatened discharge, dispersal, seepage, migration, release or escape of Pollutants.[25]   Plaintiffs

12   allege the affidavits they submitted earlier this year contain references to incomplete work

13   orders.   As discussed above, nothing in those affidavits triggers coverage for either "bodily

14   injury" or "property damage" as the result of an "occurrence," and further, the assertion of

15   purported injury arising out of the presence of mold is absolutely barred from coverage by the

16   exclusions.   Similarly, claims arising out of the discharge of a Pollutant, such as carbon

17   monoxide, likewise are barred.

18        **4.**   **Damage to Property Exclusion**

19        The policies bar coverage for "property damage" to property owned, rented, or occupied

20   by the insured; personal property in the care, custody or control of the insured; or to that

21

22   [23] Exs 1 (p. 44), 2 (p. 70), 3 (p. 71), 4 (p. 65), and 5 (p. 56).
[24] Exs 1 (p. 55), 2 (p. 27-28), 3 (p. 29-30, 77), 4 (p. 21-22), and 5 (p. 15-16).
[25] Exs 1 (p. 15-16), 2 (p. 24-25, 47), 3 (p. 26-27, 49), 4 (p. 18-19), and 5 (p. 11-12).

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 22

A n d r e w s ▪ S k i n n e r ,   P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   particular part of real property on which the insured or any contractors or subcontractors working

2   directly or indirectly on the insured's behalf are performing operations, if the damage arises out

3   of those operations.[26]   (Exclusion j(1), (4) and (5)).  Although there are no allegations that the

4   insureds caused "property damage" at the properties which were under their control, any such

5   allegation would be subject to these exclusions.  Washington courts enforce this exclusion,

6   noting that "faulty workmanship is not a fortuitous event but a business risk to be borne by the

7   insured."  *W. Nat'l Assurance Co. v. Shelcon Constr. Grp., LLC*, 182 Wn. App. 256, 263 (2014),

8   citing *Mut. of Enumclaw Ins. Co. v. Patrick Archer Constr., Inc.*, 123 Wn. App. 728, 733 (2004).

9                                    **VI.    CONCLUSION**

10          The Lexington policies issued were not intended to finance the defense of claims of

11   fraudulent conduct and the damages flowing therefrom.  This principle is borne out by the

12   application of the policy language to the underlying claims.  As the essential requirements of the

13   Insuring Agreements have not been satisfied, there is no duty to defend and no duty to

14   indemnify.  Summary judgment should be granted in favor of Lexington.

15          DATED this 6th day of November, 2015.

16                                    ANDREWS ▪ SKINNER, P.S.

17                                    By  *s/Stephen G. Skinner*
                                        STEPHEN G. SKINNER, WSBA #17317
18                                      645 Elliott Ave. W., Suite 350
                                        Seattle, WA  98119
19                                      206-223-9248 | Fax: 206-623-9050
                                        Stephen.skinner@andrews-skinner.com
20                                      Attorney for Def. Lexington Insurance Company

21

22
   ―――――――――――――――
   [26] Exs 1 (p. 17), 2 (p. 26), 3 (p. 28), 4 (p. 20), and 5 (p. 14).
   DEFENDANT LEXINGTON INSURANCE                    A n d r e w s ▪ S k i n n e r ,   P . S .
   COMPANY'S MOTION FOR SUMMARY                     *645 Elliott Ave. W., Ste. 350*
   JUDGMENT RE: DUTY TO DEFEND [2:15-CV-            *Seattle, WA 98119*
   01004-TSZ] - 23                                  *Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1

**CERTIFICATE OF SERVICE**

2

3   I hereby certify that on November 6, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

4

ANDREWS ▪ SKINNER, P.S.

5

6   By _s/Stephen G. Skinner_
STEPHEN G. SKINNER, WSBA #17317
7   645 Elliott Ave. W., Suite 350
Seattle, WA  98119
8   206-223-9248 | Fax: 206-623-9050
Stephen.skinner@andrews-skinner.com
9   Attorney for Def. Lexington Insurance Company

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 24

A n d r e w s ▪ S k i n n e r ,  P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050