The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

AMERICAN MANAGEMENT SERVICES
EAST, LLC, a Washington limited liability
company, AMERICAN MANAGEMENT
SERVICES LLC, A Washington limited
liability company, AMERICAN
MANAGEMENT SERVICES CALIFORNIA
INC., a Washington corporation, formerly d/b/a
GOODMAN FINANCIAL SERVICES, INC.,
STANLEY HARRELSON, an individual,
JOHN GOODMAN, an individual, PINNACLE
IRWIN LLC, a Washington limited liability
company, and PINNACLE MONTEREY LLC,
a Washington limited liability company,

       Plaintiffs,

   vs.

SCOTTSDALE INSURANCE CO., a Delaware
corporation, and LEXINGTON INSURANCE
COMPANY, a Delaware corporation,

       Defendants.

CASE NO. 2:15-cv-01004-TSZ

PLAINTIFFS' RESPONSE TO
DEFENDANTS' CROSS-MOTIONS FOR
SUMMARY JUDGMENT

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:
DECEMBER 18, 2015

PLAINTIFFS' RESPONSE TO DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

# Table of Contents

**Page**

I. Introduction and Summary of Argument..........................................................................1

II. Response to the Insurers' Statements of Facts ................................................................2

III. Argument .......................................................................................................................3

  (A) The Insurers Fail to Appreciate the Broad Nature of the Duty to
      Defend Under Washington Law. ........................................................................ 3

  (B) At a Minimum, it was *Conceivable* that the Insureds Could
      Potentially be Found Legally Obligated to Pay Damages Because
      of "Bodily Injury" or "Property Damage." ........................................................ 4

      1.  The Underlying Complaints Raised the Possibility of
          Damages Arising from "Bodily Injury" or "Property
          Damage." ...................................................................................... 5

          **(a)** *The Underlying Lawsuits Involved Allegations of Potential Bodily Injury*
              *and Property Damage* ........................................................ 6
          **(b)** *The Policies Cover Damages that the Insured Is Legally Obligated to Pay*
              *Because of Bodily Injury or Property Damage* ...................................... 7
          **(c)** *The Underlying Complaints Conceivably Seek Damages Because of Actual*
              *Bodily Injury or Property Damage, Not Mere "Risk of Harm"* ............... 9

      2.  Extrinsic Evidence Provided to and Readily Available
          to the Insurers Demonstrated the Possibility of
          Damages Arising from "Bodily Injury" or "Property
          Damage." .................................................................................... 11

  (C) At a Minimum, it was *Conceivable* that the Insureds Could be
      Found Legally Obligated to Pay Damages Because of an
      Accidental "Occurrence." ................................................................................ 13

      1.  In Their Discussion on "Occurrence," The Insurers Fail
          to Cite to the Only Supreme Court of Washington
          Opinion on Point. ........................................................................ 14

      2.  The Cases Cited by the Insurers Involve Events Where
          Intent is Inferred as a Matter of Law and/or Where
          Damages Were the Direct and Instantaneous Result of
          an Intentional Act. ........................................................................ 16

      3.  Employing an Objective Standard Would Result in
          Absurd Results. ............................................................................ 16

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

(D)  None of the Exclusions Raised by the Insurers Unambiguously
Precludes the *Possibility* of Coverage. ........................................................ 18

    1.  Intentional Conduct Exclusion ........................................................ 19

    2.  Owned/Controlled Property Exclusion ........................................... 20

    3.  Cross-Suits Exclusion ...................................................................... 21

    4.  Mold/Pollution Exclusion ................................................................ 22

IV. Conclusion ............................................................................................................23

TABLE OF CONTENTS - II
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

## Table of Authorities

Page

**Cases**

*Aetna Cas. & Sur. Co. v. Gen. Time Corp.,*
704 F.2d 80 (2d Cir.1983)..................................................................... 8

*Allstate Ins. Co. v. Bauer,*
96 Wash. App. 11 (1999) .................................................................... 16

*Allstate Ins. Co. v. Jackson,*
No. 09-1478-RSM, 2010 WL 1849076 (W.D. Wash. May 6, 2010)......................... 15

*Allstate Prop. & Cas. Ins. Co. v. Strand,*
No. 11-1334-JLR, 2012 WL 2004994 (W.D. Wash. June 5, 2012) .......................... 15

*Allstate Prop. and Cas. Ins. Co. v. Jong Hwan Choi,*
No. 14-311-SAB, 2015 WL 917649 (E.D. Wash. Mar. 3, 2015) ......................... 13, 16

*Am. Best Food, Inc. v. Alea London, Ltd.,*
168 Wash.2d 398 (2010)................................................................ 4, 18

*Boeing Co. v. Aetna Cas. & Sur. Co.,*
113 Wash.2d 869, 784 P.2d 507 (1990)........................................................ 4

*Cent. Armature Works, Inc. v. American Motorists Ins. Co.,*
520 F.Supp. 283 (D.D.C.1980) ................................................................ 8

*Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.,*
96 Wash. App. 698, 704 (1999) ............................................................. 15

*Detweiler v. J.C. Penney Cas. Ins. Co.,*
110 Wash.2d 99 (1988) .................................................................... 15

*DiMambro-Northend Assocs. v. United Constr. Inc.,*
154 Mich. App. 306, 310, 313-16……………………………………………………….8

*Expedia, Inc. v. Steadfast Ins. Co.,*
180 Wash.2d 793 (2014)..................................................................... 4

*Federated Mut. Ins. Co. v. Concrete Units,*
363 N.W.2d 751, 756-57 ..................................................................... 8

*Fischer v. State Farm Fire & Cas. Co.,*
272 Fed.Appx. 608 (9th Cir. 2008).......................................................... 15

*Gen. Ins. Co. of Am. v. Gauger,*
13 Wash. App. 928, 538 P.2d 563 (1975)..................................................... 8

*Grange Ins. Ass'n v. Authier,*
45 Wash. App. 383 (1986)................................................................. 16

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

*Grange Ins. Co. v. Brosseau,*
   113 Wash.2d 91 (1989) .................................................................................. 16

*Grange Ins. Co. v. Roberts,*
   179 Wash. App. 739 (2013) ........................................................................... 15

*Lloyd v. First Farwest Life Ins. Co.,*
   54 Wash. App. 299 (1989) ............................................................................. 16

*Marley Orchard Corp. v. Travelers Indem. Co.,*
   50 Wash. App. 801 (1988) ........................................................................... 7, 8

*Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.,*
   457 N.W.2d 175, 182 (Minn. 1990) ............................................................... 8

*Mut. of Enumclaw Ins. Co v. Cross,*
   103 Wash. App. 52, 10 P.3d 440 (2000) ...................................................... 21

*Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.,*
   165 Wash.2d 255 (2008) ............................................................................... 18

*Overton v. Consolidated Ins. Co.,*
   145 Wash.2d 417, 425 (2002) ....................................................................... 15

*Pac. Ins. Co. v. Catholic Bishop of Spokane,*
   450 F.Supp.2d 1186 (E.D. Wash. 2006) ...................................................... 21

*Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha,*
   126 Wash.2d 60 (1994) .......................................................................... passim

*Rodriguez v. Williams,*
   107 Wash.2d 381 (1986) .................................................................. 14, 16, 19

*Safeco Ins. Co. of Am. v. Butler,*
   118 Wash.2d 383 (1992) ............................................................................... 16

*Safeco Ins. Co. of Am. v. Dotts,*
   38 Wash. App. 382 (1984) ............................................................................ 16

*Scottsdale v. Int'l Protective Agency, Inc.,*
   105 Wash. App. 244 (2001) ............................................................................. 9

*Sheets v. Brethren Mut. Ins. Co.,*
   342 Md. 634, 653, 679 A.2d 540, 549 (1996) .............................................. 17

*Safeco Ins. Co. v. Munroe,*
   165 Mont. 185, 527 P.2d 64 (1974) ................................................................ 8

*State Farm Fire & Cas. Co. v. Ham and Rye, LLC,*
   142 Wash. App. 6, 174 P.3d 1175 (2007) .................................................... 16

*State Farm Fire & Cas. Co. v. Parella,*
   134 Wash. App. 536 (2006) .......................................................................... 16

TABLE OF AUTHORITIES - ii
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

*Stuart v. Am. States Ins. Co.,*
  134 Wash.2d 814 (1998)......................................................................... 18

*Truck Ins. Exch. v. BRE Properties, Inc.,*
  119 Wash. App. 582 (2003)..................................................................... 21

*Unigard Mut. Ins. Co. v. Argonaut Ins. Co.,*
  20 Wash. App. 261 (1978)....................................................................... 16

*Unigard Mut. Ins. Co. v. Spokane Sch. Dist.,*
  No. 81, 20 Wash. App. 261, 579 P.2d 1015 (1978)................................... 21

*United Serv. Auto Ass'n v. Speed,*
  179 Wash. App. 184 (2014)..................................................................... 16

*Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*
  963 N.E.2d 930, 943-44 (Ill. Ct. App. 2011) ............................................. 7

*Walla Walla College v. Ohio Cas. Co.,*
  149 Wash. App. 726 (2009)………………………………………………………8

*Wellbrock v. Assurance Co. of America,*
  90 Wash. App. 234 (1998)………………………………………………….8, 10

*Westchester Fire Ins. Co. v. Bell Lumber & Pole Co.,*
  No. 86 C 8948, 1991 WL 11255748 (N.D.Ill. Oct. 23, 1991) ..................... 8

*Woo v. Fireman's Fund Ins. Co.,*
  161 Wash.2d 43 (2007)................................................................ 3, 13, 14, 15

*Yakima Cement Prods. Co. v. Great Am. Ins. Co.,*
  93 Wash.2d 201 (1980)............................................................................. 8

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

# I. Introduction and Summary of Argument

The AMS Insureds seek to hold the Insurers accountable for the improper denial of one of the principal benefits of insurance: the promise of a defense against litigation. They are not seeking, as one insurer put it, "to be fully immunized by its insurers for any liability for fraud and intentional wrongdoing."  It is with that backdrop that the Insurers' motions continue to place their interests before those of the Insureds, as they have throughout the claims process. Rather than giving the Insureds the benefit of the doubt (as they must), the Insurers continue their after-the-fact attempt to justify their incorrect denial of the Insureds' claim. For the reasons detailed below, the Insurers' dispositive motions are not well-taken and should be denied.[1]

The Insurers begin by continuing to disregard the breadth of their obligation to defend the Insureds. Under Washington law, the Insurers must defend if the insurance policy *conceivably* covers the damages alleged. The allegations in the underlying lawsuits—which are to be liberally construed in favor of coverage—triggered the Insurers' duty to defend because it is at least conceivable that the Insureds could be held liable for property damage or bodily injury.

Next, in their ongoing effort to avoid their coverage obligations, the Insurers disregard allegations and evidence of property damage and bodily injury. They attempt to deflect the allegations and evidence by asserting that they relate only to "the mere risk of damage." The record is replete with allegations and extrinsic evidence establishing covered property damage and bodily injury (including covered consequential damages) that trigger the Insurers' duty to defend.

Similarly, the Insurers ignore clear Washington precedent establishing that the "occurrence" requirement be viewed through a subjective lens which requires a finding that the definition of occurrence is satisfied. Instead, they rely on contradictory case law in an attempt to apply an objective occurrence standard which, if adopted, would eviscerate liability coverage.

---

[1] Plaintiffs are filing this consolidated response to the separate motions filed by Defendant Scottsdale and Lexington (collectively "the Insurers").

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 1
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1    They also rely on distinguishable authority in support of impermissibly inferring the alleged

2    conduct does not constitute an "occurrence."  The Insurers' position on "occurrence" is not

3    supported by case law and should be rejected by this Court.

4         Finally, the Insurers summarily assert that a series of exclusions operate to bar coverage

5    for the Insureds' claim. The Insurers misapply the exclusions and fail to satisfy their respective

6    burden to prove that they apply here. Accordingly, the exclusions, which are "contrary to the

7    fundamental protective purpose of insurance," do not operate to bar coverage.

8         Plaintiffs respectfully request that this Court deny both of the Insurers' motions for

9    summary judgment and instead grant Plaintiffs' motion for partial summary judgment as to the

10   duty to defend.

11   **II. Response to the Insurers' Statements of Facts**

12        The relevant factual background to this insurance coverage dispute is laid out in

13   plaintiffs' motion for partial summary judgment as to defendants' duty to defend and need not be

14   repeated here.[2] Certain of defendants' statements regarding the facts, however, merit further

15   comment.

16        Both Scottsdale and Lexington acknowledge that the plaintiffs in the underlying lawsuits

17   sought a broad and undefined award of "damages."  They describe the underlying causes of

18   action that gave rise to that broad claim for general damages, however, in decidedly pro-insurer

19   fashion, describing in detail causes of action that implicate intentional misconduct while wholly

20   ignoring or, at best, minimizing claims that require no proof of intent. The Insurers focus on the

21   underlying allegations of fraud, deceit, and RICO violations, which, standing alone, may not

22   have triggered the Insurers' duty to defend. The Insurers largely ignore, however, the fact that

23   the underlying lawsuits also included claims for breach of fiduciary duty against all of the AMS

24

25

---

[2] The AMS Insureds attach the Declaration of John A. Goodman herein for additional context comprising the facts at issue in this lawsuit.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 2
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

defendants. As explained in plaintiffs' motion for partial summary judgment, the underlying

plaintiffs could have prevailed on those claims without any finding of intentional, much less

wrongful, conduct. Those claims for breach of fiduciary duty should have been a focus of the

Insurers' coverage analysis. Tellingly, the Insurers barely, if at all, mention those claims.

   In addition to ignoring or minimizing facts that are directly relevant to their duty to

defend, the Insurers include allegations that are both inflammatory and wholly meaningless in

assessing the defense obligation. Scottsdale, for example, references the Georgia court's

summary judgment rulings and the ultimate settlement of the underlying lawsuits.[3] Neither has

any bearing on the question currently before this Court: did the underlying lawsuits include

allegations that could *conceivably* lead to the AMS defendants being legally obligated to pay

damages because of bodily injury or property damage? Scottsdale's reference to wholly

irrelevant materials is emblematic of the wrong-headed approach taken by the Insurers from the

time of the first tender:[4] rather than looking for any evidence of potential coverage, the Insurers

have consistently looked for a way to deny even a defense, an approach that has plainly been

rejected by the Washington Supreme Court.

### III. Argument

**(A)** **The Insurers Fail to Appreciate the Broad Nature of the Duty to Defend Under Washington Law.**

   Washington courts have long recognized that the promise of a defense is "one of the

principal benefits of the liability insurance policy[,]" and Insurers must give their policyholders

---

[3] Scottsdale's reference to these materials demonstrates the Insurers' improper approach to considering the duty to defend. Substantively, the references to the underlying summary judgment ruling and settlements are irrelevant, and plaintiffs move that they be stricken from Scottsdale's motion.

[4] Scottsdale's position in this litigation puts its wrongful conduct on full display. It cites to impermissible extrinsic evidence in an attempt to *justify* its denial. This turns insurance coverage law upside down. The duty to defend is determined *prospectively* and requires insurers to extend a defense if there is any conceivable basis of a potentially covered liability. Insurers do not get the benefit of the passage of time to justify a wrongful denial, because they must err in favor of defending their insureds. *See Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 52 (2007) ("The duty to defend 'arises at the time an action is first brought, and is based on the *potential for liability.*'")

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 3
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

every benefit of the doubt in assessing their defense obligation.[5] In refusing to defend, and subsequently in their motions for summary judgment, the Insurers stand that proposition on its head, giving themselves the benefit of the doubt at every possible turn. The Insurers' position is wholly inconsistent with Washington law, and their motions should be denied.

"While the duty to indemnify exists only if the policy covers the insured's liability, the duty to defend is triggered if the insurance policy *conceivably* covers allegations in the complaint."[6] If a complaint, construed liberally, alleges *facts* which could potentially impose a covered liability on the insured, the insurer must defend, regardless of the specific relief sought or the claims asserted.[7] The standard is "conceivability." Regardless of the presence of uncovered claims, if there are facts alleged (or facts known to the insurer) that could conceivably result in some potentially covered liability, the insurer must defend. In attempting to justify their breach of their obligations under the policies, the Insurers largely ignore the decidedly pro-policyholder nature of the necessary analysis.[8]

**(B)    At a Minimum, it was *Conceivable* that the Insureds Could Potentially be Found Legally Obligated to Pay Damages Because of "Bodily Injury" or "Property Damage."**

As set out in detail in the AMS Insureds' motion for partial summary judgment, the underlying complaints include allegations that could, at least conceivably, have resulted in a legal obligation to pay damages because of bodily injury and/or property damage. The Underlying Lawsuits included broad allegations of breach of fiduciary duty, which could have been proven on negligence standards, and alleged that the underlying plaintiffs suffered both "financial and non-financial damages." Similarly, the Underlying lawsuits sought broad and

---

[5] *Id.* at 54.

[6] *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 802 (2014) (citing *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 404 (2010) (emphasis added)).

[7] *Id.*; See *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wash.2d 869, 878, 784 P.2d 507 (1990) (coverage "does not hinge on the form of action taken or the nature of relief sought").

[8] Lexington, at least, acknowledges the "conceivability" standard (ECF 57 at p. 11 ln. 10-11). Scottsdale fails to even reference the pro-policyholder standard or to acknowledge the frequently referenced maxim that the duty to defend is broader than the duty to indemnify.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4
Case Number:  2:15-CV-1004-TSZ

wide-ranging relief, specifically including "[a]n award of compensatory damages, the amount of which is to be determined at trial." The relief sought in the Underlying Lawsuits could, at least conceivably, include an award of damages arising from covered bodily injury or property damage.

Liberally construed in favor of coverage, the Underlying Lawsuits allege facts that would allow a trier of fact to base an award of damages because of bodily injury or property damage. Those allegations are detailed in Plaintiffs' motion for partial summary judgment and incorporated by reference herein. The Insurers' efforts to ignore or minimize those allegations are unpersuasive, and their motions for summary judgment should be denied.

1.    **The Underlying Complaints Raised the Possibility of Damages Arising from "Bodily Injury" or "Property Damage."**

In their motions for summary judgment, the Insurers argue that the Underlying Lawsuits do not involve any allegations of "bodily injury" or "property damage," as those terms are defined in the Policies. The Insurers raise three primary arguments in support of their position, none of which are persuasive. First, the Insurers argue that the Underlying Lawsuits simply do not involve bodily injury or property damage. That issue is discussed at length in Plaintiffs' motion for partial summary judgment. As discussed in detail there, the Insurers are mistaken, because the Underlying Lawsuits include allegations of serious life and safety concerns that could *conceivably* have resulted in an award of damages "because of" bodily injury or property damage. Second, the Insurers argue that the damages at issue in the Underlying Lawsuits are only "business losses" that are not covered under a liability insurance policy. As discussed below, that argument fails, because the Policies cover "all sums" that the insureds are legally obligated to pay *because of* bodily injury or property damage, including consequential "business losses." Third, the Insurers argue that the underlying allegations of "life and safety issues" raise only an undefined and uncovered "risk of harm," not actual bodily injury or property damage.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 5
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1  Again that argument fails, because the allegations in the Underlying Lawsuits were sufficient to

2  allow introduction of evidence of actual bodily injury and/or property damage.[9]

     **(a)**    *The Underlying Lawsuits Involved Allegations of Potential Bodily Injury and Property Damage*

      The Insurers adapt an unreasonably narrow reading of the Underlying Lawsuits in their

attempt to avoid their defense obligations. Under Washington law, the allegations of the

Underlying Complaints must be liberally construed in favor of coverage. When properly

assessed, the Underlying Complaints alleged facts that could at least conceivably have resulted in

an award of damages because of bodily injury or property damage. For example, the Fifth

Amended Complaint in the California Lawsuit alleged the AMS Insureds prematurely closed

open work orders resulting in life and safety risks, including those relating to fire alarms and gas

and carbon monoxide leaks.[10] The Fifth Amended Complaint in the Georgia Lawsuit contained

similar allegations.[11] These allegations opened the door to an award of damages based on bodily

---

[9] Indeed, the underlying plaintiffs were committed to offering specific instances of bodily injury and property damage at trial, an issue that was hotly litigated by the parties in motions in limine. ECF 65, 65-1.

[10] *See, e.g.,* ECF 51-11 (alleging "very real life and safety risks" caused by "closing open work orders before the work was complete," ¶ 5; describing "critical life and safety issues" as those including "maintenance regarding fire and smoke alarms, and gas and carbon monoxide leaks," ¶ 73;  alleging that inaccurate work-order data causes the Owner to "have no way of ensuring that critical maintenance requests, including those related to the life and safety of the military residents, are appropriately addressed," ¶ 74; alleging that the AMS Insureds' work order misconduct "has posed and continues to pose a direct risk to the life and safety of the military residents," including issues concerning "smoke detectors, gas and carbon monoxide leaks, and other potential safety issues," ¶ 88; alleging an investigation revealed that "many of the homes had life safety issues that [the AMS Insureds], responsible for the repair and maintenance of the military housing, had failed to remedy or had allowed to occur and continue," ¶ 89.)

[11] *See, e.g.,* ECF 51-5 (the "widespread practice of falsifying work order data and closing out work orders even when work had not been done creates serious concerns regarding whether work orders, including work orders related to life safety issues, have been properly addressed by [the AMS Insureds], ¶ 7; the AMS Insureds' employees "engaged in a scheme to harvest and sell valuable scrap metal and potentially other materials of value from Benning Project Homes scheduled for demolition and to use the proceeds for their own benefit," ¶ 97; the AMS Insureds' "falsification of work order data has posed, and continues to pose, a risk to the life and safety of the military residents" including those relating to "life safety issues include[ing] smoke detectors, carbon monoxide detectors, mold and other potential safety issues," ¶ 125; detailing AMSE's obligation under the PMA to "to accurately report data in connection with its response to resident work orders, including but not limited to work orders that raised critical life and safety issues for the residents," ¶ 186.)

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 6
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

injury or property damage. Under Washington law, once that door was opened, the Insurers had a duty to defend the Insureds.

> **(b)**     *The Policies Cover Damages that the Insured Is Legally Obligated to Pay Because of Bodily Injury or Property Damage*

Contrary to the Insurers' suggestion, the Policies do not merely provide coverage "for" bodily injury or property damage.[12] Rather, the Policies provide that the Insurers must pay all sums that the insureds become legally obligated to pay as damages **because of** bodily injury or property damage. Under the terms of the Policies and Washington law, the Insurers must also defend their insureds against any claim that conceivably seeks damages "because of" bodily injury or property damage. Coverage is not limited to claims seeking the direct cost of repairing property damage or treating bodily injury; rather, coverage is available for all damages awarded "because of" such injury or damage, including consequential damages.[13]

Indeed, the fact that consequential losses are not themselves "property damage" is irrelevant. The phrase "damages because of . . . property damage" has been held by numerous jurisdictions to include coverage for *all* consequential damages caused by covered property damage; not just the covered property damage itself. As stated in *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*:

> Liability policies cover not only damages *for* property damage, but damages *because of or on account of or by reason of* property damage. Accordingly, once covered property damage exists, all consequential damages are covered. *** In short, even though an item of damage is not covered as property damage, it can be covered if it constitutes a consequential damage flowing from covered property damage.[14]

---

[12] For example, *see* ECF 57 p 11 ln 17-18 ("Under separate Insuring Agreements, the Lexington policies provide coverage <u>for</u> 'bodily injury' and 'property damage'...") and ECF 31 at p. 14, ln. 15-16 ("The complaints sought damages only for economic injury, while the policies covered only claims <u>for</u> bodily injury or property damage.") (emphasis added).

[13] *See Marley Orchard Corp. v. Travelers Indem. Co.*, 50 Wash. App. 801, 807 (1988) (holding that a liability policy "covers consequential damages, *i.e.,* damages causally related to the property damage.").

[14] 963 N.E.2d 930, 943-44 (Ill. Ct. App. 2011) (emphasis in original) (quoting Allan D. Windt, *Insurance Claims & Disputes* § 11.1, at 11-17 - 11-18 (5th ed. 2007)). *See also* Jeffrey W. Stempel, *Law of Insurance Contract Disputes* 14-10 ("[W]here economic damage occurs as a fairly traceable consequence of tangible physical injury,

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 7
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1    Similarly, a loss resulting from some form of "property damage" is covered, whether or

2    not the loss itself is tangible.[15]

3    Accordingly, Scottsdale's assertion that the underlying "plaintiffs are business entities,

4    incapable of incurring bodily injury"[16] is wholly irrelevant. The appropriate question is not

5    whether or not the underlying plaintiffs could directly suffer bodily injury. Rather, the proper

6    inquiry is whether the AMS Insureds could conceivably have been liable to the plaintiffs

7    "because of" bodily injury. At a minimum, evidence of bodily injury to military families could

8    have been introduced in support of the plaintiffs' breach of fiduciary duty claims. Had the

9    plaintiffs prevailed on those claims, the AMS Insureds would have been legally obligated to pay

10   damages **because of** bodily injury. That, alone, was sufficient to trigger the Insurers' duty to

11   defend.

12   Similarly, Scottsdale's argument that there is no conceivable basis for coverage because

13   the Underlying Lawsuits were based on "business losses" is unpersuasive. Consequential

14   damages, including so-called "business losses," may be covered as long as they are awarded

15   "because of" bodily injury or property damage.[17] The cases cited by Scottsdale do not advance

16

---

17   property damage coverage is available."); *Westchester Fire Ins. Co. v. Bell Lumber & Pole Co.,* No. 86 C 8948,
     1991 WL 11255748, at *13 (N.D.Ill. Oct. 23, 1991) (consequential damages were causally related to the railroad

18   company's loss of use of its rail cars); *Cent. Armature Works, Inc. v. American Motorists Ins. Co.,* 520 F.Supp. 283,
     289 (D.D.C.1980) (lost profits stemming from loss of use of a shredder resulting from property damage inflicted by

19   acts of the insured); *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co .,* 457 N.W.2d 175, 182 (Minn. 1990)
     ("Damages which are causally related to covered 'property damage' should also be covered under the language of

20   the policy."); *Federated Mut. Ins. Co. v. Concrete Units,* 363 N.W.2d 751, 756–57 (the loss of use of a grain
     elevator resulted in consequential damages).

21       [15] *See Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wash.2d 201, 219 (1980) (holding liability
     policy language "does not prevent [coverage for] intangible injury resulting in consequential damages" so long as

22   the intangible injuries "result directly from injury to or destruction of tangible property"); *Gen. Ins. Co. of Am. v.
     Gauger,* 13 Wash. App. 928, 538 P.2d 563, 566 (1975) (lost profits resulting from defective crop seed); *Aetna Cas.

23   & Sur. Co. v. Gen. Time Corp.,* 704 F.2d 80, 83 (2d Cir.1983) (lost profits resulting from defective motors
     incorporated into zone valves); *Cent. Armature Works,* 520 F.Supp. at 289 (lost profits resulting from negligently

24   repaired scrap metal shredder); *DiMambro–Northend Assocs. v. United Constr. Inc.,* 154 Mich. App. 306, 310, 313–
     16, 397 N.W.2d 547, 548, 550–51 (1986), *rev. den.,* 428 Mich. 893 (1987) (lost profits, additional overhead and

25   labor costs following fire in a tunnel under construction); *Safeco Ins. Co. v. Munroe,* 165 Mont. 185, 527 P.2d 64,
     68–69 (1974) (lost profits following injury to a wheat crop).
         [16] ECF 53 p. 15 ln. 6-8.
         [17] *Marley Orchard Corp,* 50 Wash. App. at 807.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 8
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

its position. *Walla Walla College v. Ohio Cas. Co.*,[18] did not involve the insurer's duty to defend; there was no issue of whether or not an underlying claim could conceivably give rise to an award of damages because of property damage. Indeed, in that case, there was no question of whether or not property damage had taken place. The issue before the court was *when* the property damage took place: "Did property damage occur when the tank was improperly installed in 1991, or did property damage occur 10 years later when the tank ruptured and leaked?"[19] The issue here is not whether or not property damage occurred during the relevant policy periods. Rather, the only question before this Court is whether the Underlying Lawsuits conceivably alleged facts that could ultimately result in an award of damages "because of" bodily injury or property damage.

*Scottsdale v. Int'l Protective Agency, Inc.*,[20] is similarly unpersuasive. That case involved only the loss of a liquor license and subsequent business losses. There were no allegations that could raise even the possibility of damages arising from bodily injury or property damage. Moreover, in *Int'l Protective Agency*, Scottsdale did exactly what it could have done, but did not do, in the current matter: Scottsdale defended its insured and then sought a judicial declaration that it had no duty to defend or indemnify.[21]

    **(c)**    *The Underlying Complaints Conceivably Seek Damages Because of Actual Bodily Injury or Property Damage, Not Mere "Risk of Harm"*

Both Scottsdale and Lexington argue that the Underlying Lawsuits regular reference to life and safety issues allege only a "risk of harm" and therefore do not allege damages arising from actual bodily injury or property damage. The Insurers cite *Wellbrock v. Assurance Co. of America*,[22] for the broad proposition that "the risk of harm does not trigger coverage under a

---

[18] 149 Wash. App. 726 (2009).

[19] *Id.* at 728. The court went on to conclude that "diminution in value" to the storage tank, in and of itself, did not constitute physical injury to tangible property. *Id.* at 735. That conclusion, however, has no bearing on the current case.

[20] 105 Wash. App. 244 (2001).

[21] *Id.* at 245.

[22] 90 Wash. App. 234 (1998).

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9
Case Number:  2:15-CV-1004-TSZ

liability policy."[23] The Insurers' reliance on *Wellbrock* is misplaced. Applying the broad conceivability test mandated by the Washington Supreme Court, the Underlying Lawsuits allege more than the "risk of harm." Rather, the broad claims that the AMS Insureds' conduct led to serious life and safety issues raised the possibility that the underlying plaintiffs could introduce evidence of actual property damage and/or bodily injury at the military properties in support of their claims for breach of fiduciary duty. In other words, it was at least conceivable that the AMS Insureds could ultimately be obligated to pay damages because of, at least in part, bodily injury or property damage. That, alone, was sufficient to trigger the Insurers' duty to defend.

 *Wellbrock*, like *Walla Walla College*, involved not the question of *whether* property damage or bodily injury was alleged, but *when* the damage occurred. In *Wellbrock*, a contractor damaged tree roots during construction of a house on property adjacent to the underlying plaintiffs' property. The damage to the roots allegedly hastened the decay of certain trees. One of those trees later fell onto the underlying plaintiffs' property, injuring one of them and killing the other. *Wellbrock*,[24] The contractor's insurance policy, however, was not in force at the time that the tree fell and caused bodily injury; rather, it was in force when the allegedly negligent construction took place. The court concluded that the earlier policy did not provide coverage, because the damage to the roots raised only the risk of later harm, and because the claimants did not actually suffer bodily injury until after the policy had expired. The key issue for the court was the time at which the aggrieved party had suffered an injury, and not whether bodily injury had been alleged.[25]

 Here, in contrast, the issue before this Court does not involve the timing of a potentially covered injury. Nor, contrary to the Insurers' assertions, do the Underlying Lawsuits raise the mere risk of eventual bodily injury or property damage. Rather, as described in Plaintiffs' motion

---

[23] ECF 53 p. 17 ln. 20-22.
[24] *Wellbrock*, 90 Wash. App. at 237.
[25] *Id.* at 242 – 243.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

for partial summary judgment, the Underlying Lawsuits used the terms "life/safety issues" as shorthand for actual bodily injury and property damage, evidence of which the underlying plaintiffs were prepared to introduce at trial.[26] Allegations that the AMS Defendants created very real life and safety issues did more than raise a risk of later damage. Rather, the allegations raised at least the possibility that the AMS Defendants could ultimately be legally obligated to pay damages because of actual bodily injury or property damage. Following the guidance of the Washington Supreme Court, the Insurers should have defended its insureds against those claims.

    **2.**    **Extrinsic Evidence Provided to and Readily Available to the Insurers Demonstrated the Possibility of Damages Arising from "Bodily Injury" or "Property Damage."**

In their motions for summary judgment, the Insurers argue that extrinsic evidence, both readily available to them in court files and provided to them by the AMS Insureds, fails to establish even a conceivable potential for coverage. As discussed in detail in plaintiffs' motion for partial summary judgment, the Insurers are plainly wrong. If the Insurers had carefully reviewed the relevant extrinsic evidence, giving their insureds every reasonable benefit of the doubt and looking for potential coverage, rather than potential excuses, the Insurers would have seen ample evidence that allegations of bodily injury and property damage were important parts of the claims asserted in the Underlying Lawsuits. As discussed in plaintiffs' motion for partial summary judgment, that evidence includes:

- Sworn affidavits referenced in the California Fifth Amended Complaint, which included testimony regarding serious concerns about safety issues and potential property damage and bodily injury.[27]

---

[26] Again, actual evidence of bodily injury and/or property damage was a very real issue, so much so that the AMS Insureds fought to block introduction of such evidence through a heavily contested motion in limine.

[27] *See, e.g.,* ECF 52-4, p. 33-34, ¶ 10 ("I was especially uncomfortable doing this because I knew that meant the work hadn't been done, which could pose a risk to the safety of our residents"); ECF 52-5, p. 1-2, ¶ 3 (detailing resident complaints that 30-40% of residents informed her that "work was not complete"); ECF 52-6, p. 36, ¶ 9 (identifying concerns with "mold" remediation); ECF 52-6, p. 24-26, ¶ 9, 12-14 (testifying that required work was not performed even though the work order was "closed out" and describing concerns about the qualifications of "vendors…to remediate mold"); Mathews Dec., Ex. 18, p. 2-3 (detailing his understanding that employees were "picking up scrap metal on company time storing it and later selling it"); Mathews Dec., Ex. 19, p. 3, ¶ 8 (detailing resident complaints that "mold issues" were not addressed); Mathews Dec., Ex. 20, p. 5, ¶ 12 (testifying that technicians "paint[ed] over the mold"); ECF 52-6, p. 29, 31, ¶¶ 7, 15 (testifying that work orders

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 11
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

- The Declaration of Acting Deputy Assistant Secretary of the Army Paul David Cramer documenting both bodily injury and property damage at properties managed by the Insureds.[28] Mr. Cramer testified about claims arising from residents' alleged exposure to carbon monoxide fumes, an allegation that raises the potential for liability arising from covered bodily injury. Mr. Cramer also testified about a house fire and resulting fatality which may have been related to negligent inspection of or repairs to smoke alarms.

- The California Plaintiffs' response to the AMS Defendants' motion in limine,[29] which cited evidence they intended to put on at trial, including a 2011 fire that killed a young boy which may have resulted from an impaired smoke detector, and an investigative report identifying finding numerous instances of water intrusion, electrical and fire-safety deficiencies, pest problems, elevated carbon monoxide readings, and loose handrails and trip hazards—all and any of which involve actual or potential property damage or bodily injury.

The Insurers attempt to avoid the impact of this extrinsic evidence, arguing that the Underlying Plaintiffs were not seeking damages "for" the alleged bodily injury and/or property damage. As discussed above, the Insurers' argument misunderstands the nature of their own coverage grants. The Policies do not cover claims "for" property damage. Rather, they cover amounts the insured is legally obligated to pay **because of** property damage. Here, the Underlying Plaintiffs sought general "damages" arising from the AMS Insureds' alleged breach of fiduciary duty. That alleged breach could conceivably have been proven by extrinsic evidence of bodily injury or property damage. The AMS Insureds could therefore conceivably have been legally obligated to pay damages because of such bodily injury or property damage, and the Insurers had a duty to defend.

---

were prematurely closed, even if the work was "critical to the safety of the home and its residents," and further recounting other property damage never addressed in the form of "cracked countertops" and "melting siding"); ECF 52-6, p. 21, ¶ 15 (detailing that property that "should have been transferred went missing" and appliances from the homes were "dispose[d] of…that were in largely…good and usable shape"); Mathews Dec., Ex. 21, p. 3, ¶¶ 7-8 (testifying about inadequate abatement of "mold" and that residents became "sick" "because of mold issues"); Mathews Dec., Ex. 25 p. 4-5, ¶ 12 (describing that he was never "asked to investigate what was causing the mold or to properly repair it").

[28] ECF 52-7, pp. 7-8.
[29] ECF 65 and 65-1.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 12
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1   The Insurers' approach to the available extrinsic evidence demonstrates the self-serving

2   and result-driven analysis that has marked their conduct from the time of tender. Instead of

3   carefully reviewing the extrinsic evidence and looking for evidence of potential coverage, the

4   Insurers looked for any way to support their denial. For example, Scottsdale contends that the

5   declarations filed in the California Lawsuit only demonstrate the "intentional nature" of the AMS

6   Defendants' alleged conduct. In other words, Scottsdale attempts to use extrinsic evidence to

7   excuse its failure to defend. Scottsdale's attempt is plainly contrary to Washington law. "The

8   insurer may not rely on facts extrinsic to the complaint to deny the duty to defend – it may do so

9   only to trigger the duty."[30]

10  **(C)    At a Minimum, it was *Conceivable* that the Insureds Could be Found Legally Obligated to Pay Damages Because of an Accidental "Occurrence."**

12  Both Insurers blatantly misstate the law on occurrence. The Insurers contend that even

13  the unintended results of intentional conduct can never arise from a covered occurrence. The

14  Supreme Court of Washington disagrees: "injury or damage resulting from acts of negligence,

15  even though precipitated by an intentional act, would be covered under the occurrence clause."[31]

16  Since 1994 in *Queen City Farms*, the Supreme Court of Washington has applied a

17  subjective standard to determine the "occurrence" issue. But both Insurers fail to cite *Queen City*

18  *Farms,* instead choosing to rely on various decisions from the appellate and federal courts, some

19  of which have applied an objective standard while many others apply a subjective standard.[32] To

20  the extent there is a conflict in the law on this issue, the AMS Insureds must be given the benefit

---

[30] *Woo*, 161 Wash.2d at 54.

[31] *Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha*, 126 Wash.2d 60, 69 (1994).

[32] *Allstate Prop. and Cas. Ins. Co. v. Jong Hwan Choi*, No. 14-311-SAB, 2015 WL 917649, at *3 (E.D. Wash. Mar. 3, 2015) ("Although in some Washington cases the common law definition of Accident has been applied, meaning intentionally performed acts can never be Accidents, many other cases employ the more ordinary definition that encompasses intentional actions that result in subjectively unintended results.")

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 13
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

of the doubt.[33] However, in the absence of any contrary authority from the Supreme Court of Washington, whether an event qualifies as an "occurrence" is based on a subjective standard.

### 1. In Their Discussion on "Occurrence," The Insurers Fail to Cite to the Only Supreme Court of Washington Opinion on Point.

In *Queen City Farms*, the Supreme Court of Washington applied a subjective standard when determining whether an event qualified as an "occurrence." Rather than cite to, much less discuss, this opinion, the Insurers cite to a collection of cases from Courts of Appeals and federal district courts, many of which are contradicted by the same courts.

*Queen City Farms* unambiguously answered the question of whether an "occurrence"-based liability policy is analyzed by an objective or subjective standard. Citing black-letter law that ambiguities are resolved in favor of the insured, the Washington Supreme Court expressly held that because the definition of "occurrence" failed to provide either an objective or subjective standard, it was ambiguous as a matter of law and interpreted in favor of the insured—that is, a subjective standard was applied. In reaching this conclusion, the court recognized the absurdity of the effect of employing an objective standard to an "occurrence"-based liability policy:

> [A]n objective standard is inconsistent with insurance coverage for damage resulting from ordinary negligence. Thus, the driver who intentionally backs up a car, but does so negligently into the path of a vehicle having the right of way, has acted intentionally in a manner where it can be said that objectively an accident may occur. The average purchaser of insurance would reasonably understand from the policy language that coverage was provided under the occurrence clause.[34]

Moreover, the very terms cited by the Insurers in support of the objective standard are belied by the holding in *Queen City Farms*. Among the other issues decided, *Queen City Farms*

---

[33] *Woo*, 161 Wash.2d at 60 (2007) ("[T]he duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint. Here, Fireman's did the opposite – it relied on an equivocal interpretation of case law to give *itself* the benefit of the doubt rather than its insured.")

[34] *Queen* 126 Wash 2d 60 at 66; *see also Rodriguez v. Williams,* 107 Wash.2d 381, 386 (1986) ("[I]f an objective standard is used, virtually no intentional act would ever be covered. Intentional acts which result in injury generally can be expected to result in injury.")

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 14
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1  unambiguously held that the terms "unexpected and unintended" necessarily requires the

2  implementation of a subjective standard. Nevertheless, the Insurers cite various opinions

3  discussing whether an "accident"  is to be determined based upon an objective or subjective

4  determination. Those opinions generally provide that the term "accident"—when undefined in an

5  "occurrence"-based policy—contemplates an "unusual, <u>unexpected</u> and <u>unforeseen</u>

6  happening."[35] *Queen City Farms* has already held that the similar terms "unexpected and

7  unintended" dictate the use of a subjective standard.[36]

8        In addition, the "unforeseen" requirement does not require a negligence-based

9  foreseeability test, i.e., an objective analysis. *Queen City Farms* specifically noted the word

10  "'foreseeability' has been imprecise in certain of this court's decisions."[37]

11        In light of this rule, rarely is the "occurrence" / "accident" question determined at the

12  summary judgment phase. Rather, aside from two lines of cases discussed below (neither of

13  which apply here), the insured satisfies its burden of proof where there are claims made against it

14  that could conceivably involve unintended harm, even when that harm flows from an earlier

15  intentional act.[38]

16

17  [35] *See, e.g., Grange Ins. Co. v. Roberts*, 179 Wash. App. 739 (2013). (Emphasis added.)

18  [36] *See also Overton v. Consolidated Ins. Co.*, 145 Wash.2d 417, 425, (2002) (holding that whether an event was expected and therefore not an occurrence depends on the "subjective state of mind of the insured with respect to

19  the property damage"); *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wash. App. 698, 704, (1999) ("[w]hether or not an insured 'expected' a particular event is a subjective test, requiring evidence of the insured's state of mind").

20  [37] *Queen City Farms*, 126 Wash.2d at 68, n. 3 (citing Bryan and Petrie, *"Occurrence" Coverage for Pollution Damage—Searching for the Policyholder's Actual Subjective Expectation*, 28 Gonzaga L. Rev. 554, 557 n. 19 (1992 – 93) (distinguishing "unforeseen" from "foreseeability")).

21  [38] *See e.g., Woo*, 161 Wash.2d at 63-64 (holding there was an occurrence when the insured—a dentist— inserted boar tusk flippers into his patient's mouth while under anesthesia, photographing her, and providing her

22  with the photographs at a party); *Cle Elum Bowl, Inc.*, 96 Wash. App. at 704 (holding that a dispute regarding the insured's state of mind must be resolved by the trier of fact); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wash.2d

23  99 (1988) (holding that whether an intentional shooting which resulted in a ricochet and resulting harm was an accident was a factual issue to be determined by the jury); *Fischer v. State Farm Fire & Cas. Co.*, 272 Fed.Appx.

24  608 (9th Cir. 2008) (holding that when a personally intentionally has sex with a second person, that intentional act can constitute an occurrence because the first person did not know that the second person did not know the first

25  person's true identity); *Allstate Ins. Co. v. Jackson*, No. 09-1478-RSM, 2010 WL 1849076, at *4 (W.D. Wash. May 6, 2010) (holding there was an occurrence when the insured engaged in a gun trade that led to another's death); *Allstate Prop. & Cas. Ins. Co. v. Strand*, No. 11-1334-JLR, 2012 WL 2004994, at *7 (W.D. Wash. June 5, 2012) (holding there was an occurrence when the insured trespassed onto a neighbor's property and, without authorization,

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 15

Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

2.   **The Cases Cited by the Insurers Involve Events Where Intent is Inferred as a Matter of Law and/or Where Damages Were the Direct and Instantaneous Result of an Intentional Act.**

The Insurers principally rely upon cases involving underlying events of two categories: (1) where intent to cause harm is inferred as a matter of law; and (2) where the damages were the direct and instantaneous result of an intentional act. Neither line of cases is controlling here. Intent is only inferred in certain sexual abuse and shooting cases. And there is no evidence that the resulting harm was a direct and instantaneous result of the alleged manipulation of work order data.

Courts in Washington infer that harm was intended in only two lines of cases: shootings and sexual abuse. Because this matter involves neither, many of the cases cited by the insurer are not relevant.[39] Washington courts have also found no duty to defend where the harm was the direct and instantaneous result of an intentional act. Again, the facts here are inapposite, and, many of the cases cited by the Insurers do not control here.[40]

3.   **Employing an Objective Standard Would Result in Absurd Results.**

As noted in *Queen City Farms,* employing an objective standard to the meaning of "occurrence" would lead to absurd results—and in many cases, would gut the policy of any

---

removed trees, one of which struck the neighbor's home); *State Farm Fire & Cas. Co. v. Ham and Rye, LLC*, 142 Wash. App. 6, 13-14, 174 P.3d 1175 (2007) (holding there was an occurrence when insureds lit paper in a dumpster and it eventually spread to and damaged a nearby building); *Jong Hwan Choi*, 2015 WL 917649, at *3 (holding there was an occurrence when the insured had a mistaken consent to engage in sexual touching).

[39] *Rodriguez*, 107 Wash.2d at 387 (1986) ("We believe this line of cases is persuasive and that intent to injure, while normally a subjective determination under the wording of the policy, should be inferred to the insured in sex abuse cases."); *Grange Ins. Co. v. Brosseau*, 113 Wash.2d 91 (1989) (shooting in self-defense); *Allstate Ins. Co. v. Bauer*, 96 Wash. App. 11 (1999) (shooting in self-defense); *Grange Ins. Ass'n v. Authier*, 45 Wash. App. 383 (1986) (sexual abuse); *State Farm Fire & Cas. Co. v. Parella*, 134 Wash. App. 536 (2006) (shooting a BB gun); *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383 (1992) (shooting).

[38] *Safeco Ins. Co. of Am. v. Dotts*, 38 Wash. App. 382, 385-86 (1984) (decedent's flinching at the prospect of being slapped was "instantly and directly connected to [the insured's] deliberate conduct."); *Lloyd v. First Farwest Life Ins. Co.*, 54 Wash. App. 299, 303 (1989) (the insured "produced no evidence of something atypical or unusual which intervened between her cocaine inhalation and injury"); *United Serv. Auto Ass'n v. Speed*, 179 Wash. App. 184, 190 (2014) (insured "got out of his vehicle, opened the door of Mr. Speed's vehicle and beat Mr. Speed with his fists and metal thermos[.]");*Unigard Mut. Ins. Co. v. Argonaut Ins. Co.*, 20 Wash. App. 261 (1978) (fire set inside school).

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 16
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

meaning. This issue was addressed head-on in *Sheets v. Brethren Mut. Ins. Co.*, and provides a succinct statement on the absurdity of employing an objective standard:

> If we were to adopt an objective standard and hold that the term "accident" as used in liability insurance policies excludes coverage for damage that *should have* been foreseen or expected by the insured, such insurance policies would be rendered all but meaningless. Under such an interpretation, the policy would provide no coverage for negligent acts resulting in objectively foreseeable or expectable damage. Only acts of negligence resulting in objectively *un*foreseeable or *un*expectacable damage would be covered. Of course, under basic principles of tort law, the insured is unlikely to be held liable for unforeseeable or unexpectable damages resulting from his negligence.[41]

Considering that the insured bears the burden of proving an "occurrence," it makes sense to apply a subjective standard. As explained by the Washington Supreme Court, "the burden of proof should be on the insured because the insured is likely to be in possession or have greater access to whatever information exists about its expectations or intentions."[42] For these reasons, this issue is rarely determined at the summary judgment phase; rather, it is an appropriate issue for the fact finder.

Applying an objective standard, as noted by courts and commentators, would lead to absurd results—as such, the <u>majority</u> of jurisdictions reject the objective standard approach:

> The difficulties stemming from the use of foreseeability as the operative factor in determining whether there has been an 'occurrence' has led a majority of courts to reject the objective reasonably foreseeable standard applicable in tort actions…in favor of a subjective standard.[43]

The approach advocated by the Insurers—contrary to the statement of the law by the Supreme Court of Washington—is inconsistent with the reasonable expectations of the average purchaser of insurance, and would lead to absurd results. The effect of which is on clear display here. Rather than looking *prospectively* at the *actual* intent or expectations of the insured at the

---

[41] 342 Md. 634, 653, 679 A.2d 540, 549 (1996) (emphasis in original).

[42] *Queen City Farms*, 126 Wash.2d at 72. (internal quotations and citations omitted.)

[43] M. Goode, 1 Law and Prac. Of Ins. Coverage Litig. § 6:15 (July 2015) (collecting cases).

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 17
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

time of the underlying act, the Insurers advocate for an *after-the-fact* analysis that allows for the examination of the events that unfolded following the underlying act. This is inconsistent with the expectations of an insured, is not supported by the express terms of the policy, and, in many cases, would potentially gut the insurance policy of meaning.

The appropriate means to address the Insurers' concerns here—that is, that they will be forced to cover intentional acts—is addressed by exclusions for intentional acts. Unlike the "occurrence" provisions (where no express language is provided concerning an objective or subjective standard), the intentional acts exclusion specifically excludes coverage for "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured."[44] As discussed below, Washington courts employ a subjective standard to this analysis. As such, if it is proved that an insured intends to cause bodily injury or property damage, the Insurers may escape their coverage obligations pursuant to these exclusions. But what they cannot do is escape their obligations for the same conduct by way of the "occurrence" provisions—provisions, which do not contain any express language concerning intentional conduct, much less an objective standard by which to judge intentional conduct.

**(D)   None of the Exclusions Raised by the Insurers Unambiguously Precludes the *Possibility* of Coverage.**

The Insurers incorrectly rely on several exclusions as a basis for denying their duty to defend. Exclusionary clauses in insurance contracts "are to be most strictly construed against the insurer."[45] The Insurers bear the burden of showing that an exclusion applies to bar coverage.[46] The Insurers cannot satisfy their burden on any of the exclusions cited in their motions.

---

[44] ECF 53 p. 21 ln. 9 – p. 22 ln 2 at 21:9-22:2 (Scottsdale); ECF 57 at 21:3-14 (Lexington). *See* ECF 57 p. 21, ln. 3-14

[45] *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 406 (2010) (internal quotation omitted); *see also Stuart v. Am. States Ins. Co.*, 134 Wash.2d 814, 819-20 (1998) ("exclusions from coverage of insurance are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning").

[46] *Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wash.2d 255, 268 (2008).

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 18
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1

### 1.      Intentional Conduct Exclusion

2      The Insurers summarily assert that they do not have a duty to defend pursuant to the

3   exclusion for bodily injury or property damage that is "expected or intended from the standpoint

4   of the insured" (the "intentional conduct exclusion"). ECF 31 at 21:9-22:2 (Scottsdale); ECF 57

5   at 21:3-14 (Lexington).[47]  Washington has unambiguously adopted a "subjective" standard for

6   determining whether to apply the intentional conduct exclusion. In *Rodriguez v. Williams*, the

7   Washington Supreme Court held:

8                   [T]he policy language itself is inconsistent with a blanket objective
                    person standard, and the policy language must control. Moreover,
9                   if an objective standard is used, virtually no intentional act would
                    ever be covered. Intentional acts which result in injury generally
10                  can be expected to result in injury. An objective standard,
                    especially provided after the fact, would seem to render
11                  meaningless the plain language providing for coverage for certain
                    intentional acts.[48]
12

13   As detailed in the above discussion regarding "occurrence," the Insureds are entitled to coverage

14   under a subjective standard. The intentional conduct exclusion fails for the same reasons.

15      Scottsdale's reliance on the conclusion reached in *Rodriguez* as a basis for denying

16   coverage is likewise misplaced. There, the court considered whether the insurer had a duty to

17   indemnify—not under the much broader duty to defend standard at issue here which considers

18   whether there is a mere *possibility* of coverage.[49] The *Rodriguez* case also considered whether

19   coverage was due for liability resulting from a sexual assault which, as detailed above, has been

20   treated as a special class of cases by Washington courts where intent is inferred from the action

21   itself. *See* § (C).ii., above. The same inference is not appropriate here.

22      Lexington cites the fact that the underlying plaintiffs were attempting to void the PMAs

23   as a basis for triggering the intentional conduct exclusion. Even if one were to assume this

24

25

------

[47] Lexington failed to assert the intentional conduct exclusion in its denial letter to the Insureds. ECF 52 p. 1-27.

[48] 107 Wash.2d 381, 386, 729 P.2d 627 (1986).

[49] *Id.* at 384.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 19
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

position was valid (which the Insureds do not), Lexington's position ignores the fact that other claims asserted by the underlying plaintiffs did not expressly require proof of intentional conduct. For example, as detailed in the Insureds' motion for summary judgment, the underlying plaintiffs' claims for breach of fiduciary duty do not require proof of intent. ECF 59 at p. 16 ln 1-p. 17-ln 5.

Finally, the Insurers both improperly rely on an inference that the injury or damage was an obvious—*i.e,.* expected or intended—result of the Insureds' conduct. As with the "occurrence" analysis above, the inferences urged by the Insurers are improper under a subjective analysis. An injury or damage that may seem "obvious" in hindsight is not clear when viewed from the perspective of the insured at the time the conduct occurs—as is required in a subjective inquiry. Accordingly, the Insurers' reliance on inferences is improper and, as such, they have failed to satisfy their burden to establish the intentional conduct exclusion applies.

### 2. Owned/Controlled Property Exclusion

The Insurers also assert they do not have a duty to defend based on the exclusions for property damage to (1) "[p]roperty you own, rent or occupy," and (2) [p]ersonal property in the care, custody or control of the insured" (collectively, "the owned property exclusions"). These exclusions do not apply, however, because they (1) apply only to property damage and there are allegations of bodily injury at issue here, and (2) when coverage is analyzed separately for each plaintiff, the terms of the exclusions do not apply.

At the outset, these exclusions are limited solely to property damage. By their express terms, they do not apply to allegations of liability arising from bodily injury. As detailed in the Insureds' motion for summary judgment, the underlying plaintiffs both made allegations of liability arising from bodily injury. Accordingly, even assuming the exclusions apply (which is disputed), these exclusions do not forgive the Insurers' duty to defend because they do not eliminate the *possibility* of coverage for bodily injury.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 20
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1   Furthermore, the Insurers fail to analyze the exclusion with respect to each individual

2   insured as they are required to do; instead, they attempt to lump all parties together to perform a

3   blanket application of the exclusion. Washington law is clear that coverage must be analyzed

4   separately where coverage is defined in terms of "the insured" as opposed to "an insured":

> [W]here coverage and exclusion is defined in terms of 'the insured,' the courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint, i.e., there are separate contracts with each of the insureds. The result is that an excluded act of one insured does not bar coverage for additional insureds who have not engaged in excluded conduct.[50]

9   Here, Scottsdale cites to the definition of "you" as the basis for finding that the owned

10  property exclusion applies across the board. However, the policies each define "you" as "*the

11  Named Insured … and any other person or organization qualifying as a Named Insured under

12  this policy*," as opposed to "a named insured." The owned property exclusions both use the term

13  "you" to define the scope of insureds that they apply to. Accordingly, under the above case law,

14  coverage must be analyzed separately because the owned property exclusion applies to "the

15  Named Insured," and not an or any named insured. Scottsdale's attempt to group all of the

16  insureds together to apply the owned property exclusion is improper and it does not operate to

17  bar coverage. When coverage is analyzed separately for the Insureds (*i.e.*, for each individual

18  "you"), the owned property exclusion does not apply to bar coverage for plaintiffs because they

19  did not own or lease the property at issue.

20  **3.      Cross-Suits Exclusion**

21  Lexington next asserts the cross-suits exclusion—which bars coverage for suits brought

22  by one insured/additional insured against another—eliminates the possibility of coverage for the

---

[50] *Pac. Ins. Co. v. Catholic Bishop of Spokane*, 450 F.Supp.2d 1186, 1199 (E.D. Wash. 2006) (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wash. App. 261, 265-66, 579 P.2d 1015 (1978)); *see also Truck Ins. Exch. v. BRE Properties, Inc.*, 119 Wash. App. 582, 590-91 (2003); *Mut. of Enumclaw Ins. Co v. Cross*, 103 Wash. App. 52, 10 P.3d 440 (2000).

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 21
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

underlying lawsuits.[51] Initially, Lexington policy number 3470023 (ECF 50-1) does not include the cross-suits exclusion. Accordingly, even if it is assumed the cross-suits exclusion applies to this case (which the Insureds contest), it does not operate to completely absolve Lexington of its obligation to defend the Insureds in the underlying lawsuits.

The basis of Lexington's reliance on the cross-suits exclusion is that the PMAs required the underlying plaintiffs to be named as additional insureds under the policies. Lexington then contends the blanket additional insured endorsement included in each of its policies establishes that the underlying plaintiffs qualified as additional insureds under the Lexington policies. Lexington's argument ignores the fact that the PMAs only applied to AMSE and AMSC—not any of the other plaintiffs in the present lawsuit. There is no allegation in the underlying complaints that would apply the requirements of the PMAs to any other Insured. When coverage is separately assessed for each Insured (as it must be), there is no possibility that the cross-suits exclusion can apply to any plaintiff other than AMSE or AMSC.

Lastly, Lexington fails to provide *any* evidence applying the cross-suits exclusion to the California Lawsuit; instead, it cites only to evidence from the complaint in the Georgia Lawsuit. As such, it cannot be disputed that Lexington has failed to establish its burden that the cross-suit exclusion applies to any claim relating to the California Lawsuit.

### 4.    Mold/Pollution Exclusion

Lexington also cites the mold and pollution exclusion as a basis for denying the duty to defend.[52] This argument is a red herring because it does not eliminate the possibility of coverage for property damage or bodily injury arising from sources other than mold or pollution. Although there is significant evidence of mold-related damage in the record, the Insureds do not exclusively rely on that evidence to establish an entitlement to coverage. The Insureds' motion

---

[51] Scottsdale does not rely on a similar exclusion.
[52] Scottsdale does not rely on a similar exclusion.

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 22
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1

1    for summary judgment details ample allegations of bodily injury and property damage that

2    clearly fall outside the parameters of the mold and pollution exclusion.

3        Additionally, Lexington summarily contends the mold and pollution exclusion bars

4    coverage for damages arising from carbon monoxide. Lexington does not, however, provide any

5    evidence or authority establishing that damage or injury arising from carbon monoxide qualifies

6    as a pollutant. For these reasons, Lexington has failed to satisfy its burden to establish the

7    exclusion bar liability arising from injuries or damage due to carbon monoxide.

8                                    **IV. Conclusion**

9        For the foregoing reasons and those stated in their motion, plaintiffs respectfully request

10   that this Court deny the Insurers' motions and, instead, grant plaintiffs' motion for partial

11   summary judgment on the duty to defend.

12                                    BALL JANIK LLP

13   Dated: December 11, 2015         *s/Kyle A. Sturm*
                                      _____
14                                    Kyle A. Sturm, admitted *pro hac vice*
                                      ksturm@balljanik.com
15                                    Kevin S. Mapes, WSBA 40416
                                      kmapes@balljanik.com
16                                    Nicholas Thede, WSBA #43765
                                      nthede@balljanik.com
17                                    James C. Prichard, WSBA #30077
                                      jprichard@balljanik.com
18                                    Ball Janik LLP
                                      101 SW Main St., Ste. 1100
19                                    Portland, OR 97204
                                      Tel: (503) 228-2525
20
                                      BOWERS FOREMAN PLLC
21
                                      *s/Linda L. Foreman*
                                      _____
22                                    Linda L. Foreman, WSBA 11817
                                      linda@lindaforeman.com
23                                    Bowers Foreman PLLC
                                      5825 60th St. SE
24                                    Snohomish, WA 98290
                                      Tel: (425) 822-7197
25
                                      Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 23
Case Number:  2:15-CV-1004-TSZ

1038324\v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a full, true and correct copy of the foregoing PLAINTIFFS'

RESPONSE TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT by:

☐ U.S. Postal Service
☒ Electronically, utilizing CM/ECF
☐ Facsimile
☐ Arranging for hand delivery [as indicated]
☐ Overnight mail
☐ Electronic mail, via Outlook

addressed to the following named person(s) at their last known address(es):

Stephen G. Skinner, WSBA No. 17317
Andrews Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA  98119
206-223-9248
206-623-9050
Stephen.skinner@andrews-skinner.com

Attorneys for Lexington Insurance Company

Peter Mintzer, WSBA No. 19995
Selman Breitman, LLP
800 5th Ave., Ste. 4100
Seattle, WA  98104
T: 206-447-6461
F: 206-588-4185
pmintzer@selmanlaw.com

Geoff Bridgman, WSBA No. 25242
Tracy N. Grant, WSBA No. 40877
Mary Knack, WSBA No. 26945
Ogden Murphy Wallace, PLLC
901 5th Ave., Ste. 3500
Seattle, WA  98164-2008
T: 206-447-7000
F: 206-447-0215
gbidgman@omwlaw.com
tgrant@omwlaw.com
mknack@omwlaw.com

Attorneys for Scottsdale Insurance Company

DATED: December 11, 2015        BALL JANIK LLP

By: *s/Kyle A. Sturm*
Kyle A. Sturm, admitted *pro hac vice*
OSB No. 080214
James C. Prichard, WSBA No. 30077
jprichard@balljanik.com

Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 24
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1038324\v1