HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, *et al.*,<br><br>                              Plaintiffs,<br><br>          v.<br><br>SCOTTSDALE INSURANCE COMPANY, a Delaware corporation, *et al.*,<br><br>                              Defendants. | NO.  2:15-CV-01004-TSZ<br><br>DEFENDANT LEXINGTON INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE PRAECIPE<br><br>**NOTE ON MOTION CALENDAR: December 18, 2015**<br><br>ORAL ARGUMENT REQUESTED |

## I.      RELIEF REQUESTED

COMES NOW Defendant Lexington Insurance Company ("Lexington"), and submits this memorandum in opposition to Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Duty to Defend.  The underlying lawsuits[1] are the culmination of contentious business disputes brought against Lexington's insureds (Plaintiffs) with regard to their alleged defrauding of their

---

[1] *Monterey Bay v. Military Housing, LLC, et al. v. Pinnacle Monterey, LLC, et al.,* United States District Court, Northern District of California, San-Jose Division, Case No. 14-cv-03953-BLF ("California Action"), and *Fort Benning Family Communities, LLC, et al., v. American Management Services East, LLC, et al.*, Superior Court of Muscogee County, Georgia, Civil Action No. SU10CV2025-F ("Georgia Action").

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 1

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   federal business partners in the management of military housing, causing the governmental entities

2   to seek termination of property management agreements (PMAs) based upon "theft, fraud, or other

3   knowing or intentional misconduct by [AMSC] or its employees or agents."  The complaints in

4   the underlying actions are not ambiguous and do not contain allegations that conceivably would

5   come within the Insuring Agreements to the Lexington Policies. Under the "eight corners rule"

6   and controlling Washington law, the complaints unambiguously did not trigger the duty to defend.

7          Faced with the unwanted coverage outcome under the "eight corners rule," Plaintiffs refer

8   to extrinsic evidence.  However, nothing in this extrinsic evidence triggers a duty to defend.  The

9   declarations that Plaintiffs submitted to Lexington in early 2015, simply reiterate the Complaint

10  allegations that the insureds' intentional and fraudulent manipulation of work order data may have

11  created a "risk" of potential "life safety issues"; but risk of injury is not a covered damage under

12  the policies and the conduct alleged does not constitute an occurrence.  Plaintiffs also cite to a

13  Declaration of Paul Cramer, which was first submitted to Lexington days before filing the instant

14  declaratory action.  The Cramer declaration does not state an allegation that bodily injury or

15  property damage was caused by an occurrence.  As further evidence of Plaintiffs' overreach,

16  Plaintiffs submitted a GAO report not referenced in any complaint and never provided to

17  Lexington, as well as briefs on a *motion in limine* filed in the California Action in <u>July 2015</u>, after

18  this suit was filed, to argue these items somehow created a duty defend before they existed or were

19  made known to Lexington.  Such items are improper and should not be considered.  Plaintiffs also

20  submit a number of statements which were never tendered to Lexington and are attached as

21  exhibits 17-26 of the Declaration of Andrew Mathews.  *See* Dkt 66-1, 66-2.  But Mr. Mathews has

22

1    not authenticated the statements and Plaintiffs do not contend that they ever tendered them to

2    Lexington before filing them with this motion.  *See* Dkt 60.  These should not be considered.

3         Plaintiffs' motion is an exercise in futility, as the simple conclusion is that Lexington

4    properly determined that it did not owe a duty to defend the Plaintiffs in the underlying lawsuits

5    as the allegations in the underlying complaints did not give rise to coverage.

6              **II.      MOTION TO STRIKE PRAECIPE AND RESERVATION**

7    **A.      Motion to Strike Praecipe Filed by Plaintiffs on December 11, 2015 (Dkt 70)**

8         Pursuant to this Court's October 30, 2015 Order, the parties' cross motions for summary

9    judgment on the issue of duty to defend were to be filed on November 6, 2015, with opposition papers

10   filed on December 11, 2015 and replies due December 18, 2015.  Dkt 47.  Plaintiffs, Scottsdale and

11   Lexington each filed summary judgment motions on November 6, 2015.  *See court record.*

12        On the morning of December 11, 2015, the day this opposition brief is due, Plaintiffs filed

13   a "Praecipe" which substantively changes their citations to the record, identifying completely

14   different allegations of the underlying complaints in support of certain arguments.  *See* Dkt 70.

15   Lexington's brief was drafted and ready to file before receipt of Plaintiffs' Praecipe.

16        The Praecipe, which changes citations in Plaintiffs' opening brief, is untimely.  *See* Dkt

17   47. The prejudice to Lexington is patent,[2] where the underlying complaints each have hundreds of

18   allegations, and Lexington has addressed the paragraphs previously cited by Plaintiffs without

19   adequate opportunity to address the newly-cited paragraphs.  Also, Lexington had to devote a page

20   of its opposition brief to this motion to strike the late Praecipe.  Because it is untimely and

21   _____

22   [2] Plaintiffs' last minute changes prevent Lexington from adequately reviewing the record and responding to the arguments made prior to filing Lexington's opposition brief on today's date.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 3

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   prejudicial to Lexington, the Praecipe should be stricken.

2   **B.**   **Lexington's Reservation of Rights to File Supplemental Briefing**

3         Lexington is entitled to an appropriate amount of time to respond to the arguments and

4   citations to the record on which Plaintiffs rely.  With the Court's authorization, Lexington reserves

5   the right to file supplemental briefing to address the new citations and arguments.

6                 **III.**    **FACTS**

7         In its Motion for Partial Summary Judgment re: Duty to Defend, Lexington provided a

8   statement of facts regarding the underlying lawsuits, the Lexington Policies, the tender of the

9   California and Georgia Actions to Lexington, and Lexington's response to those tenders.  See Dkt

10   57.  To avoid repetition, Lexington incorporates by reference its statement of facts and supporting

11   documentation contained in its motion on the duty to defend.  If additional facts are necessary to

12   respond to Plaintiffs' motion, Lexington will refer to those facts within the following discussion.

13         There is one point that needs to be addressed.  Plaintiffs assert that they tendered the Fifth

14   Amended Complaints from both the Georgia Action and California Action to Lexington.[3]

15   Lexington acknowledges that it received the Fifth Amended Complaint from the Georgia Action.

16   However, there is no evidence in the record that Plaintiffs ever tendered the Fifth Amended

17   Complaint from the California Action to Lexington.[4]  Plaintiffs tendered the Third Amended

18   California Complaint to Lexington.  Dkt 52-9, at 2-4 (Ex. 54).  Nevertheless, the allegations from

19

---

[3] In support of their assertion that they tendered the Fifth Amended Complaint to the insurers, Plaintiffs refer to April 15, 2015 correspondence to Selman Breitman LLP, coverage counsel for Scottsdale.  Dkt 52-10.  However, there is no similar correspondence to Lexington.

[4] Lexington takes issue with any suggestion that subsequent amendments to a Complaint have any relevance to a coverage determination based on an earlier version of that Complaint.  Subsequent changes to the allegations have no relevance to the coverage determination made on the earlier complaints, as each complaint would have to be assessed on its merits.  None of the complaints contain any allegations that would trigger coverage under the Lexington Policies.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 4

**A n d r e w s ▪ S k i n n e r , P.S.**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

the California Action lead to the same conclusion as the earlier complaints: the claims in the California Action (like the Georgia Action) are not covered by the Lexington Policies and the declination of the defense of the California Action was appropriate.

## IV.    EVIDENCE RELIED UPON

Lexington relies on the pleadings and files in this case; Lexington Insurance Company's Motion for Partial Summary Judgment re: Duty to Defend; the Stipulated Exhibit List and exhibits thereto; and the Declaration of Stephen G. Skinner, with attachments, Dkt 58.

## V.    STATEMENT OF ISSUES

1.    Under the "eight corners rule", the underlying lawsuits are not covered under the Lexington Policies, where there is no allegation of "bodily injury" or "property damage" caused by an "occurrence" as defined in the Lexington Policies.

2.    In light of the unambiguous allegations contained in the complaints from the underlying actions, it was unnecessary to refer to extrinsic evidence to assess coverage. Regardless, any extrinsic evidence submitted to Lexington by the Plaintiffs did not clarify the allegations to bring either of the lawsuits within the coverage provided by the Lexington Policies.

3.    It is not appropriate for the Court to consider extrinsic evidence that was not provided to Lexington when assessing the duty to defend under the Lexington Policies.

4.    Even if the underlying complaints potentially trigger coverage under one or more of the Lexington Policies, coverage is barred by application of certain policy exclusions.

## VI.    ARGUMENT AND ANALYSIS

The Plaintiffs' motion represents a concerted effort to obfuscate the duty to defend analysis

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 5

**A n d r e w s ▪ S k i n n e r ,  P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    formulated under Washington law.  Washington law calls for application of the "eight corners

2    rule", which involves reference to the allegations in the operative complaint and the terms of the

3    policy at issue.  Plaintiffs attempt to divert the argument away from the "eight corners rule" by

4    repeated reference to judicial platitudes regarding the duty to defend and citation to extrinsic

5    evidence, some of which was never provided to Lexington.  However, this strategy is no substitute

6    for the straightforward analysis that comes with the "eight corners rule."

7    **A.    Applicable standards for evaluating the duty defend**

8            The duty to defend arises if the complaint "construed liberally, alleges facts which could,

9    if proven, impose liability upon the insured within the policy's coverage." *Am. Best Food, Inc. v.*

10   *Alea London, Ltd.*, 168 Wn.2d 398, 404 (2010) (internal quotation marks omitted).   When

11   determining whether the duty to defend was triggered, the court is limited to examining "the four

12   corners of the complaint and the four corners of the insurance policy."  *Expedia, Inc. v. Steadfast*

13   *Ins. Co.*, 180 Wn.2d 793, 806 (2014). This has been referred to as the "eight corners rule."

14   Therefore, a duty to defend will be found unless it is clear from the face of the complaint that the

15   policy does not provide coverage. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 64 (2007).

16           However, "[d]espite these broad rules favoring the insured, insurers do not have an

17   unlimited duty to defend."  *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 196 (2014).

18   The duty to defend "is not triggered by claims that clearly fall outside the policy." *Nat'l Sur. Corp.*

19   *v. Immunex Corp.*, 176 Wn.2d 872, 879 (2013).  Courts "generally examine only the allegations

20   against the insured and the insurance policy provisions to determine whether the duty to defend is

21   triggered." *Speed*, 179 Wn. App. at 194.

22

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 6

**A n d r e w s ▪ S k i n n e r , P.S.**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    Under the "eight corners rule", resolving whether Lexington had a duty to defend requires

2    review of the Lexington Policies.  "In construing the language of an insurance policy, the policy

3    should be given a fair, reasonable, and sensible construction as would be given to the contract by

4    the average person purchasing insurance." *Tyrrell v. Farmers Ins. Co. of Washington*, 140 Wn.2d

5    129, 133 (2000) (quoting *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682 (1990)).  The court

6    "examines the policy's terms 'to determine whether under the plain meaning of the contract there

7    is coverage.'"  *Id.* (quoting *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998)).

8    Plaintiffs misinterpret the holding in *Expedia*, 180 Wn.2d at 802, which they claim stands

9    for the proposition that the duty to defend can arise "regardless of the specific relief sought or the

10   claims asserted."  This argument misconstrues the traditional "eight corners rule" and ignores the

11   factual distinctions of *Expedia.  Expedia* involved the interpretation of E&O policies with broad

12   definitions of "damages," and was not addressing the "bodily injury," "property damage," or

13   "occurrence" definitions at issue under the Lexington Policies.  In *Expedia*, the underlying claims

14   involved whether Expedia properly calculated taxes owed to taxing authorities.  The policies

15   provided Expedia with coverage for any liability for "[d]amages arising out of a negligent act or

16   negligent omission … in the conduct of Travel Agency Operations."  *Id*. at 798.  In addressing

17   whether the trial court properly deferred ruling on the duty to defend, the Washington Supreme

18   Court ruled that because it was conceivable that Expedia "could be found to be liable under the

19   underlying complaints, yet not have engaged in willful misconduct," the claim was conceivably

20   covered and the trial court should have ruled that Expedia had a duty to defend.  *Id*. at 805.

21   *Expedia* reaffirms the rule that the Court must review the actual allegations when assessing

22

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 7

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

the duty to defend.  The underlying complaints specifically allege willful and fraudulent conduct by the insureds, which does not satisfy the requirements of the Lexington Policies.

Plaintiffs' reliance on *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869 (1990) is also misplaced.  *Boeing* involved potential insurance coverage for pollution remediation costs.  The coverage dispute hinged on what constituted 'damages' within the meaning of the policies at issue.  The Washington Supreme Court rejected the insurers' argument that the term should be given its "legal technical meaning", instead focusing on the "substance of the damage claim."  Because the substance of the damage claim related to "compensation for restoration of contaminated water and real property," it was a claim for "property damage."  *Id.* at 884-85.

*Boeing* also confirms the importance of the allegations in the complaints in the duty to defend analysis.  The substance of the claims in the Georgia and California Actions is that the insureds engaged in intentional and fraudulent conduct in their management of military housing.

**B.    Under the "eight corners rule", the allegations of the Georgia Action and California Action do not trigger the Insuring Agreements to the Lexington Policies.**

The Lexington Policies provide coverage for "bodily injury" and "property damage" arising out of an "occurrence", as those terms are defined by the policies.  In the absence of these types of damages, there is no coverage under the Lexington Policies.[5]  The underlying complaints do not contain allegations that satisfy the requirements of the Insuring Agreements to the Lexington Policies.

**1.    No "Bodily Injury"**

There are no allegations of "bodily injury" in the underlying complaints.[6]

---

[5] Exs 1 (p. 14), 2 (p. 22), 3 (p. 24), 4 (p. 16), and 5 (p. 10).

[6] "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these."  Exs 1 (p. 27), 2 (p. 36), 3 (p. 38), 4 (p. 28), and 5 (p. 24).

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 8

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

### a.     Georgia Action

As expected, Plaintiffs focus on the broad allegation that Plaintiffs' fraudulent conduct in the management of military housing at Fort Benning raised "life safety issues including smoke detectors, carbon monoxide detectors, mold and other potential safety issues." *See, e.g.*, Ex 16, ¶124.  However, there is no allegation that damages are being sought because of "bodily injury." Plaintiffs cite to paragraphs: 7, 97, 110, 120, 124, and 186.[7]  Only paragraphs 7, 120, 124, and 186 refer to "life safety issues."[8]

Paragraph 7 states that Plaintiffs' "widespread practice of falsifying" work order data creates "serious concerns" about whether work orders "including those related to life safety issues" were properly addressed.  Dkt 51-5 (Ex 16).  Paragraphs 120 and 124 are found in the background section of the complaint titled "Pinnacle's Widespread Scheme to Fraudulently Manipulate Work Order Data to Increase Its Incentive Fees and Bonuses Paid to Top Management." *Id.*, pp. 33-42.[9] Paragraph 120 alleges Pinnacle prematurely closed work orders, even though the work was not done, in order to inflate the pass scores. *Id.*, p. 40.  Paragraph 124 alleges that these practices

---

[7] These paragraphs are cited on p. 2, n.8 of Plaintiffs' Brief.  Plaintiffs' Appendix A also lists paragraphs 19 and 102 of the Georgia Complaint, alleging "millions of dollars" of damages but not "bodily injury" or "property damage."

[8] Plaintiffs rely on *U.S. Fid. & Guar. Co. v. Korman Corp.*, 693 F. Supp. 253, 259 (E.D. Pa. 1988) for the proposition that allegations of exposure to health risk can be sufficient to allege the possibility of a covered "bodily injury". However, *Korman* did not so hold.  The district court in *Korman* never decided that bodily injury or property damage was alleged ("it is unnecessary to decide whether plaintiffs have alleged an occurrence causing property damage or bodily injury"), as the claims were "undoubtedly" barred by the pollution exclusion. *Id.*  The dicta from *Korman*, an out-of-jurisdiction case, has no application here, since the plaintiffs in that case, unlike here, specifically alleged that the health risk actually caused damage. *Id.* at 259.  *Korman* is inapposite here.

[9] The preceding paragraphs in this section (103-119) describe the manner in which work order data allegedly is entered into an accounting and general ledger database, allege that a "Pass/Fail" report is generated based on whether work orders were timely completed, allege that the Pass/Fail report is used to determine the incentive fee payable to Pinnacle, and allege that the Pinnacle management instructed their employees to falsify the work order data to increase their "Pass" percentage. *Id.*  Paragraph 103 alleged that the fraud by Pinnacle "was not confined to bribery and kickbacks, double billing and overcharges by vendors." *Id.*, ¶103.  This followed allegations of schemes of bribes and kickbacks and cover-ups by Pinnacle management. *See, e.g.*, *Id.* at ¶¶61, 64, 69, 75, 76, 90, 92, 93.

A n d r e w s ▪ S k i n n e r , P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1   exposed residents to potential dangerous conditions since the work related to life safety issues

2   including smoke detectors, carbon monoxide detectors and mold, which was not completed, and

3   that as a result of the Plaintiffs' "scheme to defraud," the owners of the base housing were unable

4   to determine whether maintenance problems have actually been fixed.  *Id.*, p. 42.[10]  Importantly,

5   none of the paragraphs involve a claim by the underlying plaintiffs to recover for "bodily injury."

6          The repeated allegations that Plaintiffs' intentional and fraudulent actions raised a concern

7   about "life safety issues" would at best allude to a <u>potential risk</u> of injury to residents, who are not

8   plaintiffs in the underlying lawsuits.  The Fifth Amended Complaint contains no allegation that

9   the underlying plaintiffs had standing to bring claims on behalf of residents allegedly injured by

10  these purported "life safety issues", much less identifying any specific claims arising from these

11  "life safety issues."  Simply, there is no claim alleged for bodily injury.

12         Washington law is clear that risk of harm does not trigger coverage under a liability policy.

13  *Wellbrock v. Assurance Co. of Am.*, 90 Wn. App. 234, 243 (1998) (The mere presence of a

14  "hazard," defined as a "source from which an accident may arise" does not trigger coverage).

15             **b.      California Action**

16         The analysis with regard to the California Action is substantially similar.[11]  The Third

17  Amended California Complaint, Paragraph 91 contains phrases identical to Paragraph 124 of the

18  Georgia Complaint.  *See,* Ex 20, ¶91 and Ex 16, ¶124. Plaintiffs have argued that phrases contained

19

20  _____

[10] Paragraph 186 simply reiterates prior allegations that AMSE was obligated to accurately report data in connection
21  with its response to resident work orders including those that raised life and safety issues. Dkt 51-5.
[11] Plaintiffs' argument based on to the Fifth Amended California Complaint is of no moment, as there is no evidence
     in the record that the complaint was tendered to Lexington. Dkt 52-9 (Ex 54).  Plaintiffs tendered the Third Amended
22  California Complaint to Lexington in November 2012.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 10

**A n d r e w s ▪ S k i n n e r ,  P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   in paragraphs 4, 5, 95 and 56 of the Third Amended California Complaint trigger coverage.[12]

2   However, reviewing the complaint for any conceivably covered claim, there is no allegation that

3   the California plaintiffs are seeking damages because of "bodily injury."   Allegations that

4   Plaintiffs' alleged "falsification" of data, "work order fraud," and "scheme to defraud" may have

5   led to a risk of safety issues, do not bring the claim within coverage.

6        Consideration of the Fifth Amended Complaint would not change the outcome.[13]   Plaintiffs

7   cite to paragraphs 5, 73, 74, 88, 89, 230, 249, and 267.   Paragraph 5 of the Fifth Amended

8   Complaint alleges Plaintiffs "persisted in such racketeering activity despite creating very real life

9   and safety risks for the military families…"   "Risk" does not trigger coverage.   Paragraphs 73, 74,

10  88, and 89, are allegations in a broader section of the Fifth Amended Complaint titled "VI. FRAUD

11  AND OTHER INTENTIONAL MISCONDUCT UNCOVERED TO DATE AT MONTEREY

12  AND IRWIN."   In the context of describing the "widespread fraud and other intentional

13  misconduct relating to the tracking and reporting of work order data, in order to inflate Pinnacle's

14  property management incentive fees and to improperly suggest that Pinnacle has been providing

15  excellent service to residents" (See e.g. ¶ 69 of Dkt 51-1 (Ex 22)), ¶¶ 73, 74, 88, and 89 mention

16  that some work orders "related to critical life and safety issues," but do not allege bodily injury

17

18

---

19  [12] Paragraphs 4 and 5 of the Third Amended California Complaint allege that it was the Plaintiffs' "[f]alsification of work order data" and "wide-spread work order fraud," that allegedly may have created "risk that such critical life and

20  safety issues are not in fact being responded to." Ex. 20.  Paragraph 56 of the Third Amended California Complaint alleged the Plaintiffs "walked off of the Benning Project" (which was not the Project at issue in the California Complaint), and "risk[ed] significant disruption to the services" provided to the military families in Georgia, and is

21  entirely unpersuasive to support an argument that damages were being sought by the Owners in the California Action for bodily injury or property damage.  See Ex. 20.  Paragraph 95 of the Third Amended California Complaint alleged Plaintiffs "falsified" records regarding the "turn" process for cleaning, painting and preparing units.  Ex. 20, ¶95.

22  [13] Lexington objects to consideration of the Fifth Amended California Complaint.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 11

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    within the Lexington coverage.[14]

2         **2.    No "Property Damage"**

3         There are no allegations of "property damage," as defined by the Lexington Policies.[15]

4         **b.  Georgia Action**

5         In support of their claim that the Fifth Amended Complaint in the Georgia Action contains

6    an allegation of "property damage", Plaintiffs cite to Paragraph 97, which alleges that Pinnacle

7    employees engaged in a scheme to sell scrap metal and other materials from the Project and to

8    keep the sale proceeds. *Id.*, and see Ex 16 (Dkt 51-5).  There is nothing in the paragraph that alludes

9    to any tangible property being "damaged."[16]  The so-called "property" that the insureds kept for

10   their own benefit was money, which is not "tangible" property.

11        Under Washington law, there is no coverage for damage to intangible property unless

12   consequential damages arises "directly from injury to or destruction of tangible property."  See

13   *Yakima Cement Products Co. v. Great Am. Ins. Co.*, 93 Wn. 2d 210, 219 (1980).  Likewise, damage

14   to a property "right" is not "injury to or destruction of tangible property."  *West Waterway Lumber*

15   *Co. v. Aetna Ins. Co.*, 14 Wn. App. 833 (1976).  Economic losses such as loss of business or

16   diminution in value are not property damage as defined by the policies.  *See, e.g., Guelich v. Am.*

17   *Prot. Ins. Co.*, 54 Wn. App. 117, 21 (1989) (Holding the insurer had no duty to defend, because

18   the claimed damage of obstruction of the view from a property "does not allege physical injury to

19

20   _____

     [14] The other paragraphs cited by Plaintiffs are addressed below with regard to property damage.

21   [15] "Property damage" is defined as "Physical injury to tangible property, including all resulting loss of use of that property" and "Loss of use of tangible property that is not physically injured." Exs 1 (p. 28); 2 (p. 39); 3 (p. 41); 4 (p. 33); 5 (p. 27).

22   [16] Plaintiff also cites to Paragraph 110 (see p. 4, n.8 of Plaintiffs' brief), which has no allegation of damage.

     DEFENDANT LEXINGTON INSURANCE                      **A n d r e w s ▪ S k i n n e r , P.S.**
     COMPANY'S MEMORANDUM IN OPPOSITION                 *645 Elliott Ave. W., Ste. 350*
     TO PLAINTIFFS' MOTION FOR PARTIAL                  *Seattle, WA 98119*
     SUMMARY JUDGMENT RE: DUTY TO DEFEND                *Tel: 206-223-9248 ▪ Fax: 206-623-9050*
     [2:15-CV-01004-TSZ] - 12

1  tangible property").  Alleged financial losses resulting from the sale of fraudulent investments

2  likewise have been held not to fall under property damage coverage.  *See, e.g., Country Mutual*

3  *Ins. Co. v. Deatly*, 2013 WL 6119231 (E.D. Wash. 2013).[17]

4        **b.   California Action**

5        The Plaintiffs argue that allegations of failure to complete work orders triggers the

6  **possibility** for "property damage".[18]  Regardless of which complaint is reviewed, there still is no

7  allegation of damage to tangible property.  Plaintiffs cite to paragraphs 230, 249, and 267, but each

8  of those paragraphs supports Lexington's position that the allegations can only be read to seek

9  damages for intentional fraudulent conduct.  Paragraph 230 mentions "financial and non-financial"

10  damages alleged to be as a result of plaintiffs "substantially and intentionally assisting [other

11  defendants] in committing the frauds alleged herein and breaching their fiduciary duties."[19]

12  Paragraph 241 mentions no damage or injury whatsoever, instead referring to concealment of inflated

13  fees, which would be intangible property; paragraph 249 alleges the underlying plaintiffs "were

14  damaged" as a result of Plaintiffs' "wrongful acts"; paragraph 267 alleges damages from the

15  underlying plaintiffs' RICO claim "as a direct and proximate result of" plaintiffs' "racketeering

16  activities" and statutory violations.

17        **3.   No "occurrence"**

18        To trigger coverage, "bodily injury" or "property damage" must be caused by an

19

20  _____

[17] The damage alleged in the Georgia Action is not "property damage", but that the Owners did not receive the benefit

21  of their bargain under the PMAs.  At best, this constitutes intangible property that would not trigger coverage.
[18] Lexington objects to consideration of the Fifth Amended California Complaint.

22  [19] Plaintiffs note that breach of fiduciary duty can be a result of non-intentional conduct. However, in their 5th cause
of action, the underlying plaintiffs explicitly allege intentional conduct that results in a breach of fiduciary duty.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 13

**A n d r e w s ▪ S k i n n e r ,  P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   "occurrence."[20]

2   Plaintiffs assert that the purpose of the underlying actions was to address "life safety issues"

3   arising from the Plaintiffs' conduct in the management of military housing.[21]   While the ultimate

4   motivation of the underlying plaintiffs might be uncertain, the nature of the alleged conduct is beyond

5   debate.   The underlying complaints accuse the insureds of having engaged in fraudulent and

6   intentional conduct, which does not constitute an "occurrence" as defined by the Lexington Policies.

7   This identical definition of "occurrence" was analyzed in *Grange Ins. Ass'n v. Roberts*, 179

8   Wn. App. 739 (2013).[22]   "A reasonably foreseeable harm resulting from deliberate conduct was not

9   an 'accident' and, thus, not an 'occurrence' under the policy's language." *Id.*, at 756.  Noting that "if

10  there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer

11  must defend," the Court affirmed there was no duty to defend, finding there was no reasonable

12  interpretation bringing the complaint within the coverage.  *Id.* at 752.  The *Grange* court held:

13          an accident is never present when a deliberate act is performed unless some
            additional unexpected, independent and unforeseen happening occurs which

14          produces or brings about the result of injury or death. The means as well as the
            result must be unforeseen, involuntary, unexpected and unusual.

15  *Id.* at 755-756 (*citing Safeco Ins. Co. of America v. Butler,* 118 Wn.2d 383, 401 (1992)).  The test

16  for what constitutes an accident is not based on the insured's <u>subjective</u> intent to cause the harm

17  alleged, but based on what is <u>foreseeable</u> from the insured's conduct.  In short:

18

---

19  [20] "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Exs 1 (p. 29), 2 (p. 38), 3 (p. 40), 4 (p. 32), and 5 (p. 26).

20  [21] Plaintiffs cite to an April 2014 GAO report never provided to Lexington prior to this motion.  Plaintiffs fail to mention that the report states that the California plaintiffs were seeking a declaratory judgment invalidating Pinnacle's attempt to unilaterally amend the PMAs to make it harder to remove Pinnacle as property manager, and that the Army

21  "wanted Pinnacle removed as the MHPI projects' property manager due to the alleged fraud and mismanagement." Dkt 67-2, p. 8.  Additionally, Army officials were concerned for resident safety.  *Id.*

22  [22] See Lexington Motion for Summary Judgment, Dkt 57, at pp. 17-19.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 14

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

**Where an insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable.** Stated another way, "[w]e define an outcome as accidental only if both the means and the result were 'unforeseen, involuntary, unexpected and unusual.'" "[P]ursuant to the common sense definition, 'accident' is not a subjective term. Thus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not." [citations omitted]

*Id.* at 756 (bold added). *See also USAA v. Speed*, 179 Wn. App. at 198 ("Under this standard, there is no accident even if the insured did not expect or intend any injury.").

In *State Farm Fire & Cas. Co. v. Heather Ridge, L.P.*, 2013 U.S. Dist. LEXIS 6747 (W. Dist. WA. 2013), the Court held there was no duty to defend the insured, who was sued for fraudulent concealment and breach of contract with regard to the sale of two apartment complexes, where the underlying claimants alleged that at the time of the sale the insureds knew or should have known that the apartments had extensive defects that rendered the apartments unsound and unsafe. *Id.* at 2. Applying Washington law, the Court held State Farm had no duty to defend allegations of fraudulent concealment where there were no allegations of "property damage" caused by an "occurrence" as defined in the policy and no allegations of negligence. *Id.*

Plaintiffs argue that the "unintended occurrence" of property damage and bodily injury is a "repeated theme" in the underlying lawsuits, even though there is <u>no</u> allegation of any alleged damage being an "unintended" occurrence or consequence of Plaintiffs' intentional and fraudulent conduct.[23] Plaintiffs cite paragraphs 4, 6, 26, 109, 117, 120-124 of the Georgia Complaint and

---

[23] Plaintiffs repeatedly characterize the complaints as alleging "mismanagement" that "lead to 'critical life and safety'" hazards. See Dkt 59, p. 4. Plaintiffs apparently are trying to insinuate that the complaints can be conceivably read to allege some type of negligent acts. However, nothing in the complaints supports that characterization. There is no conceivable reading of the complaints that could construe the repeated allegations of intentional and fraudulent

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 15

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   paragraphs 4, 47, 69, 75-78, 84, 90, 234 of the California Complaint.[24]   *See* Dkt. 59, p. 5 n.19.

2   These paragraphs are listed in Plaintiffs' "Appendix A", at Dkt 67-1.   None of these paragraphs

3   uses the term "unintended" and none alleges bodily injury or property damage <u>or any unintended</u>

4   <u>damage arising from Plaintiffs' alleged acts</u>.   Plaintiffs seem to be arguing that because the

5   underlying complaints allege that Plaintiffs committed innumerable intentional and fraudulent acts

6   in order to increase the work order "pass" percentage and inflate Plaintiffs' monetary gain, that

7   unstated claims for unintended consequences can be inferred.   Plaintiffs' argument flies in the face

8   of the well-established "eight corners rule", and Plaintiffs' argument must be rejected.[25]

9        The allegations of intentional misconduct are clear, and the reason these allegations are

10   limited to intentional misconduct is easily understood.   The plaintiffs in the underlying lawsuits

11   sought declaratory relief that the PMAs are void and allege the PMAs automatically terminate

12   upon "theft, fraud, or other knowing or intentional misconduct by [AMSC] or its employees or

13   agents."   To achieve the desired outcome, the complaints clearly and repeatedly allege intentional

14   malfeasance including that Plaintiffs intentionally conspired to defraud, and have defrauded, the

15   United States government, such that the PMAs are terminated.

16        In response to the absence of an alleged "occurrence", the Plaintiffs offer distortions of

17   both Washington law and the allegations of the underlying complaints.   First, Plaintiffs cite to

18   *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126 Wn.2d 50, 59–60 (1994), *as amended*

19

---

[24] Lexington objects to consideration of the Fifth Amended California Complaint.

20

[25] Plaintiffs also argue that "many" of the declarations cited in their footnote 21 recount "multiple alleged instances

21   of property damage."   Preliminarily, none of the declarations submitted as exhibits to the Matthews Declaration were
ever tendered to Lexington and they should not be considered.   None of the declarations cited "recounts" property

22   damage, and even if they did, any purported "unintended consequence" of the intentional and fraudulent acts of
Plaintiffs would not be covered losses.   *See, e.g. Safeco v Butler*.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 16

A n d r e w s ▪ S k i n n e r , P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

conduct as claims sounding in negligence.

(Sept. 29, 1994), *as clarified on denial of reconsideration* (Mar. 22, 1995), which they incorrectly

argue stands for the proposition that the existence of an "occurrence" will always turn on the

subjective expectation of the insured.  The *Queen City* Court was analyzing a different definition

of "occurrence", which was defined as an accident or happening or event or a continuous or

repeated exposure to conditions, which "unexpectedly and unintentionally" results in personal

injury.  *Id*. at 59-60.  In construing the "unexpectedly and unintentionally" language, the Court

held the subjective knowledge of the insured is considered.  That language is not in the Lexington

Policies and is not at issue.  Washington courts have repeatedly held that whether an event was an

"accident" is an objective inquiry.[26]

Plaintiffs cite *Nationwide Mutual Insurance Co. v. Hayles, Inc.*, 136 Wn. App. 531 (2007)

to argue that a truly unintended consequence of an intentional act could be a covered claim, where

the resultant alleged damages are also covered under the policy.  But *Hayles* is distinguishable and

supports Lexington's position.  *Hayles* held the intentional act of turning on an irrigation system

that caused rotting of an onion crop (a covered damage) was a covered "occurrence," defined as

"accident" under the policy, because "[r]easonable minds could conclude only that no one under

these circumstances would have anticipated that turning on the water could rot the onions."  In this

case – setting aside that no bodily injury or property damage resulting from Plaintiffs' acts is even

alleged – any purported health safety risk to the residents is a directly foreseeable consequence of

closing work orders without doing the maintenance work and falsification of work order data.

---

[26] *See Safeco Ins. Co. of America v. Butler*, 118 Wn.2d 383, 403 (1992); *USAA v. Speed*, 179 Wn. App. 184, 198, *review denied*, 180 Wn.2d 1015, 327 P.3d 55 (2014) ("Whether an event constitutes an accident is determined objectively and does not depend on the insured's subjective perspective.").

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 17

**A n d r e w s ▪ S k i n n e r ,  P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   Finally, Plaintiffs also offer what can best be characterized as the "lesser included offense"

2   argument as it relates to the claims for breach of fiduciary duty.  Under Plaintiffs' theory, because

3   a fiduciary duty can be breached by both intentional and negligent conduct, it necessarily follows

4   that the insurer is obligated to read both allegations into an alleged claim, thereby triggering a duty

5   to defend.  In other words, the duty to defend a claim for breach of fiduciary duty is absolute, since

6   it implicitly involves potential negligence.  This is incorrect.

7   It comes as no surprise that the Plaintiffs would resort to a hypothetical claim of breach of

8   fiduciary duty through negligence given the stark allegations in the underlying actions.  The

9   underlying complaints clearly allege that intentional and fraudulent conduct resulted in a breach

10  of fiduciary duty and there are no allegations that the Plaintiffs breached their fiduciary duty based

11  on negligence.  In fact, neither complaint even contains the word "negligence."  Plaintiffs'

12  arguments are outside the bounds of any applicable law.  The underlying complaints are

13  unambiguous and applying the "eight corner rule" leads to one conclusion:  no coverage was

14  triggered under the Lexington policies.

15  **C.     The Plaintiffs' reliance on extrinsic evidence does not change the conclusion that there is no duty to defend under the Lexington policy.**

16

17  Plaintiffs have submitted extrinsic evidence to Lexington.  Although the allegations in the

18  underlying complaints were unambiguous, Lexington reviewed the extrinsic evidence it received

    from the insureds and concluded that it did not change the original coverage determinations.[27]

19

20  The Plaintiffs are relying on two distinct categories of extrinsic evidence that must be

21

22  ---

[27] An insurer may not rely on facts extrinsic to the complaint to deny the duty to defend; however, it may do so if the extrinsic evidence would trigger the duty.  *Woo*, 161 Wn.2d at 54.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 18

**A n d r e w s ▪ S k i n n e r , P.S.**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   addressed.  First, the Plaintiffs refer to extrinsic evidence they provided to Lexington in 2015,

2   more than four years after the initial tender in 2010.  Lexington will address these materials below.

3       Second, Plaintiffs improperly cite to extrinsic evidence that was never provided to

4   Lexington for consideration.  This includes a *motion in limine* recently filed in the California

5   Action, a 2014 Government Accountability Office report regarding litigation costs, as well as the

6   claim file materials from the *Mosquera* and *Charbonneau* matters.  Plaintiffs can cite to no

7   authority that stands for the proposition that the decision to decline a defense can be evaluated by

8   consideration of extrinsic evidence that was not provided to the insurer at the time of the coverage

9   decision and was not even available at that time.  Such a practice is inherently unfair since it places

10  the insurer in the untenable position of having a never-ending duty to seek out extrinsic evidence

11  that may give rise to coverage for the claim.  Lexington requests that this evidence be stricken

12  from the record and not considered for the purpose of this motion.

13      **1.      Extrinsic evidence provided to Lexington**

14      On January 22, 2015, after the underlying actions had been ongoing for up to five years,

15  Plaintiffs submitted affidavits that were filed in the underlying actions after Plaintiffs' 2012

16  tenders.  See Exs 37-48 (Dkt 52-4 to 52-7).  The affidavits were signed by employees of Pinnacle,

17  indicating their knowledge of the intentional manipulation of work orders and other activities

18  perpetrated by some or all of the Plaintiffs or their employees.  *Id*.  Plaintiffs assert that these

19  affidavits contain evidence of "property damage" allegedly caused by an "occurrence," citing

20  references to: cracked countertops and twenty flooded basements, Ex 42; appliances gone missing

21  or disposed of, Ex 43; failure to do mold remediation, Ex 46; and painting over mold.  Ex 47.

22

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 19

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    However, the coverage is for "property damage" "caused by" an "occurrence".  The

2    condition of the property referenced in the affidavits is not alleged to be damage "caused by" any

3    act or omission by Plaintiffs.  Rather, they merely describe conditions left unfixed, reflecting that

4    when insureds fraudulently and intentionally manipulated work orders for self-gain, the Owners

5    of the facilities did not get the benefit of the bargain under the PMAs.

6    Next, ten days before filing this lawsuit, Plaintiffs submitted the declaration of Paul

7    Cramer, Acting Deputy Assistant Secretary of the Army.  Ex 49.[28]  Nothing in Mr. Cramer's

8    declaration alters the fact that no claim is made in the Actions for "bodily injury."  The risk created

9    by Plaintiffs' fraudulent and intentional decisions not to perform services does not change the

10    nature of the claim or allegations asserted.  A risk of injury does not trigger coverage.  *Wellbrock,*

11    90 Wn. App. at 243.

12         **2.        Extrinsic evidence not provided to Lexington**

13    It is completely inappropriate for the Court to consider extrinsic evidence that was not

14    provided to the insurer or otherwise considered in the coverage determination.  As such, this

15    evidence should be stricken.  In the event the Court is inclined to consider such evidence, it does

16    not alter the coverage conclusion of the "eight corners rule."

17    Plaintiffs cite to a *motion in limine* filed in the California Action to exclude "any reference

18    to the unfounded proposition that resident lives were ever put in danger as a result of alleged work

19    order changes or any other conduct by Defendants."  Dkt No. 65 at 3.  This motion was filed three

20    days <u>after</u> this declaratory action was filed by Plaintiffs.  Moving beyond the timing, the Plaintiffs

21

22    [28] Mr. Cramer declares that "the closing of open work orders without work being completed creates potential life and safety issues for residents."  Ex. 49.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 20

A n d r e w s ▪ S k i n n e r , P . S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1    are unable to explain how a motion they filed somehow defines the allegations being lodged

2    against them.   In actuality, this motion practice confirmed that the underlying plaintiffs were

3    merely alleging that the fraudulent practices of Plaintiffs gave rise to <u>potential</u> consequences.[29]

4    Once again, a risk of injury does not trigger coverage.  *Wellbrock,* 90 Wn. App. at 243.

5         Plaintiffs also rely on a GAO Report that describes the underlying litigation and the efforts

6    of the federal plaintiffs to remove the Plaintiffs from the management of this military housing.

7    This report, which was not provided to Lexington, was prepared by an independent third party –

8    the GAO – and should not be treated as a proxy for formal allegations.   However, the report

9    confirms that the lawsuits were in response to the Plaintiffs' ongoing fraud and mismanagement

10   of the military housing and the desire have them removed from the PMAs.

11        Plaintiffs also refer to two cases filed against AMS in Monterey County Superior Court in

12   California (the *Mosquera* and *Charbonneau* cases) and argue that these cases establish that the life

13   safety issues allegedly arising from the insureds' fraudulent management of the base housing

14   actually resulted in "bodily injury" claims.[30]  Plaintiffs argue that because the insurers were aware

15   of these lawsuits (they had been tendered to the carriers), they should have considered these

16   lawsuits when evaluating coverage for the Georgia and California Actions.   These other claims are

17   noteworthy for reasons Plaintiffs may not appreciate.   First, these lawsuits reflect cases where

18   allegedly injured parties sought damages for their bodily injury or property damage claims.  This

19

20   ─────────────────
     [29] In opposing the motion, the underlying plaintiffs confirmed that the claim only addressed "potential" harm:  "put

21   another way, when someone engages in a fraudulent scheme, at trial they don't get to exclude evidence of the *potential*
     consequences of their fraud". Dkt 65-1, Ex. 9, p. 4. (Italics added.)

22   [30] These claims had been known to Plaintiffs for years, yet they never requested that Lexington review the claims to
     determine whether they had any bearing on the coverage for the underlying actions.

     DEFENDANT LEXINGTON INSURANCE
     COMPANY'S MEMORANDUM IN OPPOSITION
     TO PLAINTIFFS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT RE: DUTY TO DEFEND
     [2:15-CV-01004-TSZ] - 21

     **A n d r e w s ▪ S k i n n e r , P . S .**
     *645 Elliott Ave. W., Ste. 350*
     *Seattle, WA 98119*
     *Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1  is in stark contrast to the underlying complaints, where there is no explicit or implicit allegation

2  that the underlying plaintiffs were making claims for bodily injuries or property damage.  Second,

3  these suits reflect the way the duty to defend is properly handled: a claim involving allegations of

4  "bodily injury" and silent as to whether that harm was accidental is tendered to a liability insurer.

5  After reviewing the allegations, the insurer determines that the claim may give rise to coverage

6  under the terms of the relevant policies and agrees to defend.  In the present case, there are no such

7  allegations, which led to the conclusion that there was no defense for the underlying claims.

8          Plaintiffs also cite to declarations attached to the Matthews Declaration.  Dkt 60, Exs. 17-

9  26. As with the affidavits provided to Lexington in 2015, these employee declarations merely

10  reiterate the allegations that the insureds engaged in fraud in the management of the housing.

11  **D.     The Lexington Policies contain exclusions that bar coverage for the Actions**

12          There at least five exclusions that bar coverage for the underlying claims:  (1) Expected or

13  Intended Injury; (2) Cross-Suits; (3) Damage to Property; (4) Mold; and (5) Pollution.[31]

14          **1.     Expected or Intended Injury Exclusion**

15          The Lexington Policies provide that there is no coverage for ""Bodily injury" or "property

16  damage" expected or intended from the standpoint of the insured...."[32]  Damages resulting from

17  intentional acts are deemed to fall under this exclusion.  Here, the plaintiffs in both Actions are

18  seeking declarations that the PMAs are void, which is only possible if the Insureds' acts or

19  omissions were intentional.  Ex. 11, pp. 59-60.

20

21  [31]  Exclusions drafted in clear, unmistakable language will be enforced unless against public policy.  *See Brown v. United Pacific Ins. Co.*, 42 Wn. App. 503, 506 (1986).

22  [32] Exs 1 (p. 14), 2 (p. 23), 3 (p. 25), 4 (p. 17), and 5 (p. 11).

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 22

A n d r e w s ▪ S k i n n e r ,  P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1       **2.**     **Cross-Suit Exclusion**

2       Four of the Lexington Policies contain "cross-suits" exclusions, which precludes coverage

3 for any suit or claim brought by a named insured/additional named insured against another named

4 insured/additional named insured covered by the Lexington Policies.[33]  The PMAs obligated the

5 Plaintiffs to name each Owner as an insured on its general liability policies.  Ex. 11, pp. 55-56.

6 Each of the Lexington Policies contains a Blanket Additional Insured endorsement that treats any

7 person or organization, such as the Owners, as an Additional Insured on a blanket basis where

8 required by contract.[34]  Since the PMAs required that the Owners be named insureds, by operation

9 of this endorsement they would be considered additional insureds under the Lexington Policies.

10 Because the underlying lawsuits involve Lexington insureds (the Owners) suing other Lexington

11 insureds (the Plaintiffs), the cross-suit exclusion precludes coverage for these claims.

12       **3.**     **Mold and Pollution Exclusions**

13       The Lexington Policies contain exclusions barring coverage for "'bodily injury' or

14 'property damage' or any other loss, cost or expense," relating in any way to mold.[35]  The policies

15 also contain pollution exclusions for injury or damage arising out of the actual, alleged or

16 threatened discharge of Pollutants.[36]  Plaintiffs cite to affidavits that refer to mold issues at the

17 base housing.  The assertion of purported injury arising out of the presence of mold is absolutely

18 barred from coverage by the mold exclusion.  Similarly, claims arising out of the discharge of a

19 Pollutant, such as carbon monoxide, are barred.

20

21
[33] Exs 2 (p. 58), 3 (p. 59), 4 (p. 48), and 5 (p. 40).
[34] Exs 1 (p. 44), 2 (p. 70), 3 (p. 71), 4 (p. 65), and 5 (p. 56).
[35] Exs 1 (p. 55), 2 (p. 27-28), 3 (p. 29-30, 77), 4 (p. 21-22), and 5 (p. 15-16).

22
[36] Exs 1 (p. 15-16), 2 (p. 24-25, 47), 3 (p. 26-27, 49), 4 (p. 18-19), and 5 (p. 11-12).

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 23

**A n d r e w s ▪ S k i n n e r , P . S .**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1        **4.        Damage to Property Exclusion**

2        The Lexington Policies bar coverage for "property damage" to property occupied by the

3   insured; personal property in the care, custody or control of the insured; or to that particular part

4   of real property on which the insured or any contractors or subcontractors working on the insured's

5   behalf are performing operations, if the damage arises out of those operations.[37]  (Exclusion j(1),

6   (4) and (5)).  Although there are no allegations that the insureds caused "property damage" at the

7   properties which were under their control, any such allegation would be subject to these

8   exclusions.  Washington courts enforce this exclusion, noting that "faulty workmanship is not a

9   fortuitous event but a business risk to be borne by the insured."  *W. Nat'l Assurance Co. v. Shelcon*

10  *Constr. Grp., LLC*, 182 Wn. App. 256, 263 (2014).

11                          **VII.   CONCLUSION**

12       The Lexington Policies do not provide coverage for the Plaintiffs' business disputes that

13  arise out of allegations of fraudulent and intentional misconduct.  The "eight corners rule" leads

14  to the undeniable conclusion that there was no coverage for the underlying lawsuits under the

15  Lexington Policies and the decision to decline the duty to defend was proper.  Therefore, Plaintiffs'

16  Motion for Partial Summary Judgment re: Duty to Defend should be denied.

17       DATED this 11th day of December, 2015.

18                          ANDREWS ▪ SKINNER, P.S.
                            By  *s/Stephen G. Skinner*
19                              STEPHEN G. SKINNER, WSBA #17317
                                645 Elliott Ave. W., Suite 350
20                              Seattle, WA  98119
                                Stephen.skinner@andrews-skinner.com
21                              Attorney for Def. Lexington Insurance Company

22  _____
    [37] Exs 1 (p. 17), 2 (p. 26), 3 (p. 28), 4 (p. 20), and 5 (p. 14).
    DEFENDANT LEXINGTON INSURANCE
    COMPANY'S MEMORANDUM IN OPPOSITION
    TO PLAINTIFFS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT RE: DUTY TO DEFEND
    [2:15-CV-01004-TSZ] - 24

A n d r e w s ▪ S k i n n e r ,   P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

ANDREWS ▪ SKINNER, P.S.


By  *s/Stephen G. Skinner*
   STEPHEN G. SKINNER, WSBA #17317
   645 Elliott Ave. W., Suite 350
   Seattle, WA  98119
   206-223-9248 | Fax: 206-623-9050
   Stephen.skinner@andrews-skinner.com
   Attorney for Def. Lexington Insurance Company

DEFENDANT LEXINGTON INSURANCE
COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: DUTY TO DEFEND
[2:15-CV-01004-TSZ] - 25

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248▪Fax: 206-623-9050