HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, AMERICAN MANAGEMENT SERVICES LLC, a Washington limited liability company, AMERICAN MANAGEMENT SERVICES CALIFORNIA INC., a Washington corporation, GOODMAN REAL ESTATE, INC., a Washington corporation, formerly d/b/a GOODMAN FINANCIAL SERVICES, INC., STANLEY HARRELSON, an individual, JOHN GOODMAN, an individual, PINNACLE IRWIN LLC, a Washington limited liability company, PINNACLE MONTEREY LLC, a Washington limited liability company,, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTTSDALE INSURANCE COMPANY, a Delaware corporation, and LEXINGTON INSURANCE COMPANY, a Delaware corporation, <br><br> Defendants. | NO. C15-cv-01004 <br><br> DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT <br><br> NOTE ON MOTION CALENDAR: DECEMBER 18, 2015 <br><br> ORAL ARGUMENT REQUESTED |

## I.    INTRODUCTION

Scottsdale is entitled to judgment as a matter of law because AMS's response fails to show that the underlying litigation raised claims that were potentially covered under Scottsdale's policies.  Rather than set out specific facts showing that the underlying plaintiffs alleged an

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1  accidental occurrence that caused property damage or bodily injury, AMS sets out only

2  speculation about facts that hypothetically could have been alleged and evidence that

3  theoretically could have been introduced.  To establish a duty to defend, AMS bears the burden

4  of showing that "the facts alleged in the complaint against [AMS], if proven, would trigger

5  coverage under the policy." *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 196, 317

6  P.3d 532 *review denied*, 180 Wn.2d 1015, 327 P.3d 55 (2014) (citing *Am. Best Food, Inc. v. Alea*

7  *London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010)).

8      This standard is not met through speculation about facts that **could** be alleged.  *See*

9  *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 754–55, 320 P.3d 77 (2013) *review denied*, 180

10  Wn.2d 1026, 328 P.3d 903 (2014).  In discussing a similar standard, the Ninth Circuit has

11  explained that speculation about un-pleaded allegations fails to meet an insured's burden:

12          The plaintiffs in the underlying suit do not allege the type of
damages covered by the policy.  To support a finding of potential

13          liability, the plaintiffs would need to allege *new facts* of bodily
injury.  Mere speculation that the plaintiffs could or will allege

14          such facts does not give rise to a duty to defend.  The possibility of
an amendment does not require the insurer to speculate about any

15          conceivable claim that a plaintiff might bring against the insured or
to spin out wild theories of recovery for every conceivable

16          damage.  Liability under the policies can only be characterized as
speculative and hypothetical.  The duty to defend, albeit a broad

17          one, encompassing liability for damages *potentially* covered under
the policies, does not stretch this far.

18

19  *The Upper Deck Co., LLC v. Fed. Ins. Co.*, 358 F.3d 608, 615–16 (9th Cir. 2004).  AMS's broad

20  speculation about possible allegations that were never actually raised fails to carry AMS's

21  burden and entitles Scottsdale to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S.

22  317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

23                  **II.**    **ANALYSIS**

24  A.    **AMS stretches the notion of "conceivable" coverage to unprecedented
lengths.**

25      While AMS couches its arguments in platitudes about the insurer's broad duty to defend

26  under Washington law, what it implicitly requests is that this Court drastically expand

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1    Washington law.    This overreaching is exposed when AMS argues that, even though the

2    underlying complaints did not allege bodily injury or property damage, Scottsdale had a duty to

3    defend because it was conceivable that evidence of property damage or bodily injury *could have*

4    *been introduced* at some point during the underlying litigation.    *See* Case No. C15-01004, Dkt.

5    No. 74 at 12 (arguing that a duty to defend arose because the underlying allegations "were

6    sufficient to allow introduction of evidence of actual bodily injury and/or property damage"); *id.*

7    at 14 ("evidence of bodily injury to military families could have been introduced").

8          Nothing in Washington law supports AMS's notion that the duty to defend arises merely

9    because the complaint alleges facts which could allow the introduction of evidence on which a

10    covered claim could theoretically be based.    Rather, the insurer must defend if the complaint

11    "alleges facts which could, if proven, impose liability upon the insured within the policy's

12    coverage." *Roberts*, 179 Wn. App. at 751 (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147

13    Wn.2d 751, 760, 58 P.3d 276 (2002)).    The duty to defend must be based on a "reasonable

14    interpretation of the facts or the law."    *Edmonson v. Popchoi*, 172 Wn.2d 272, 282, 256 P.3d

15    1223 (2011) (quoting *Am. Best Food*, 168 Wn.2d at 405).

16          Applying these standards, Washington courts have rejected the notion that speculation

17    about un-pleaded facts can impose a duty to defend.    *Roberts*, for example, denied a duty to

18    defend against a claim of outrage because the complaint alleged only intentional conduct.    The

19    court reached this result even while acknowledging that evidence of reckless conduct could have

20    been introduced and that it was "conceivable" that the insured's conduct resulted in unintended

21    injuries. *Roberts*, 179 Wn. App. at 753, 756.

22          AMS attempts to dramatically overhaul these standards by pointing to the Washington

23    Supreme Court's use of the word "conceivably" in *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d

24    793, 805, 329 P.3d 59 (2014).    But *Expedia* did not rewrite the case law.    *Expedia* essentially

25    involved underpayment of taxes.    Simply put, one can underpay taxes either intentionally or

26    negligently.    And if the complaint fails to specify one or the other, then the insurer has a duty to

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1    defend under a policy covering damages caused by negligence. *See id.* That is all *Expedia* said.

2    There is no indication in *Expedia* that the Washington Supreme Court intended to make insurers

3    responsible for facts that ***could*** have been pleaded or for evidence that ***could*** be introduced.

4          AMS's proposed test would require the insurer to defend in every case, because it is

5    always hypothetically possible that a complaint will be amended to add a covered claim or

6    evidence will be introduced that would implicate coverage. AMS's interpretation thus conflicts

7    with Washington law, which recognizes that a defense can be denied where the complaint does

8    not allege covered damages. *See, e.g., Roberts*, 179 Wn. App. at 755.

9          **B.    Scottsdale did not base its denial on extrinsic evidence.**

10         AMS is mistaken when it argues that Scottsdale used extrinsic evidence to deny AMS's

11   requested defense. The reasons for the denial of defense are set forth in detail in Scottsdale's

12   correspondence to AMS and its counsel. *See generally* C15-1004, Dkt. Nos. 52-1–52-4 p. 36.

13         Scottsdale discussed extrinsic evidence in its prior briefing for two reasons. First and

14   foremost, Scottsdale has addressed the extrinsic evidence that was proffered by AMS. For

15   example, AMS cited several declarations from the underlying litigation that supposedly showed

16   "instances" of property damage. Scottsdale analyzed these declarations and determined that

17   they: (a) do not identify any instances of property damage; and (b) confirm that the wrongdoing

18   at issue in the underlying litigation involved fraud and other intentional misconduct, which is not

19   covered under the Scottsdale policies. *See, e.g.,* C15-1004, Dkt. No. 53 at 9–11. AMS's tactic—

20   of raising extrinsic evidence and then, when Scottsdale addresses that evidence, accusing

21   Scottsdale of denying a defense based on extrinsic evidence—is disingenuous.

22         Second, Scottsdale has mentioned certain findings in the underlying litigation that are

23   relevant to public policy. For example, AMS was found in the Fort Benning action to have

24   committed intentional misconduct as a matter of law, and it admitted the basis for the related

25   claims in the MBMH action. *See American Management Services East, LLC v. Fort Benning*

26   *Family Communities, LLC*, 333 Ga. App. 664, 774 S.E. 2d 233 (2015); C15-01004, Dkt. No. 54

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1    at 13. It would violate Washington's public policy if an insured could shift intentionally inflicted

2    injuries to an insurer. *Detweiler v. J.C. Penney Casualty Ins. Co.*, 110 Wn.2d 99, 105–06, 751

3    P.2d 282 (1988). Although Scottsdale could not (and did not) deny a defense based on this

4    extrinsic evidence, the fact that imposing a duty to defend here would violate public policy is

5    relevant to this Court's analysis.[1]

**C.    The underlying complaints do not allege damages "because of," "caused by," or "for" property damage or bodily injury.**

Conspicuously absent from AMS's two rounds of briefing is a single citation to any one line, in any of the hundreds of pages that comprise the various iterations of the complaints in two separate underlying actions, that identifies a single instance of property damage or bodily injury. The best AMS can do is point to the allegation that AMS's work-order fraud created "life and safety concerns." C15-1004, Dkt. No. 74 at 5. Implicitly conceding that "concerns" are not injuries, AMS then conclusorily argues that the underlying plaintiffs used this term as "shorthand for actual bodily injury and property damage." *Id.* at 11.

As Scottsdale has explained previously, however, the extrinsic declarations about AMS's work-order fraud, proffered by AMS, do not allege any instances of bodily injury or property damage. Instead, they merely confirm what the underlying plaintiffs said in their complaints, that AMS employees were concerned that the practice of deliberately falsifying work orders could pose *risks* to resident safety. *See* C15-1004, Dkt. No. 71 at 10–11.

The only declaration cited by AMS that mentions specific instances of property damage or bodily injury was Paul Cramer's. But Mr. Cramer specifically testified that he was *not* suggesting that those instances were caused by AMS's work-order fraud or any other wrongful practice of AMS. C15-1004, Dkt. No. 52-7 at 8. AMS also cites the *Charbonneau* and *Mosquera* cases, but fails to present any evidence whatsoever that these separate lawsuits were in any way the basis for any damages claim raised by the underlying Plaintiffs.

---

[1] Accordingly, the Court should deny AMS's footnote motion to strike. *See* C15-01004, Dkt. No. 74 at 9.

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

Finally, AMS contends that a "risk of harm" can be considered property damage or bodily injury, attempting to distinguish *Wellbrock v. Assurance Co. of Am.*, 90 Wn. App. 234, 242-43, 951 P.2d 367 (1998). According to AMS, *Wellbrock* is distinguishable because the issue there was whether the injury had occurred during the policy period. But AMS glosses over the fact that *Wellbrock* rejected the duty to defend because "the risk of later harm" was not an injury. C15-1004, Dkt. No. 74 at 16. AMS's arguments here cannot be reconciled with *Wellbrock*'s unambiguous holding that the "mere presence of a 'hazard' . . . does not trigger coverage." *Wellbrock*, 90 Wn. App. at 242–43.

AMS's position also cannot be reconciled with another case cited in AMS's brief, *Yakima Cement Products Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 219, 608 P.2d 254 (1980). There, the insured negligently installed defective concrete panels in a building. *Id.* at 211–12. The general contractor claimed damages caused by the delay while the insured removed and replaced the panels. *Id.* at 212. These damages included damage to the building's other structural materials as a result of exposure to the elements during the delay. *Id.* at 213.

The Washington Supreme Court rejected, however, the notion that these consequential damages could trigger coverage, because the general contractor never claimed that the wrongful act of incorporating defective materials into the building caused any actual property damage. *Id.* at 218. The court explained that there could have been coverage if the general contractor had alleged, for example, that the integration of the defective panels had diminished the building's value. *Id.* Had such an allegation been raised, the consequential damages actually claimed could have been covered. *Id.* But absent such an allegation, the consequential damages were not covered because they did not "result directly from injury to or destruction of tangible property." *Id.* at 219 (citing *Labberton v. General Cas. Co.*, 53 Wn.2d 180, 332 P.2d 250 (1958)).

Likewise, here, the absence of any allegation of actual property damage or bodily injury caused by AMS's work-order fraud is fatal to its claims. Nowhere did the underlying plaintiffs allege, for example, that the "concerns" raised by work-order fraud diminished the value of their

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

property. *Yakima Cement*, *Wellbrock*, and *Roberts* clarify that insurance coverage and the duty to defend are not covered by mere allegations that a hazard was created or by allegations of uncovered harm from which one might speculate that covered allegations could have been raised.

This same analysis disposes of AMS's argument that it was entitled to a defense against claims of consequential damages. With one exception, every case cited by AMS on this point alleged either actual harm to or lost use of tangible property. *See Minnesota Min. & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 182 (Minn. 1990) (where insured stored hazardous waste in a manner that caused it to escape into the soil, insurance could cover "consequential damages flowing from the direct damage caused to the environment"); *Federated Mut. Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d 751, 756 (Minn. 1985) (loss of use of grain elevator); *Safeco Ins. Co. v. Munroe*, 165 Mont. 185, 191–92, 527 P.2d 64, 68 (1974) ("we find it to be beyond dispute that a Montana wheat field and the crop therein, is tangible property"); *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 939 (Ill. App. 2011) (vehicle was "discarded and destroyed"); *Marley Orchard Corp. v. Travelers Indem. Co.*, 50 Wn. App. 801, 806–07, 750 P.2d 1294 (1988) (deficient irrigation system caused stress to trees); *Dimambro-Northend Associates v. United Const., Inc.*, 154 Mich. App. 306, 309, 397 N.W.2d 547 (1986) (fire caused damage to tunnel); *Aetna Cas. & Sur. Co. v. Gen. Time Corp.*, 704 F.2d 80, 83 (2d Cir. 1983) (lost profits based on physical damage to zone valves allowed, but "there can be no recovery for intangible losses unless there has been actual physical damage to property"); *Gen. Ins. Co. of Am. v. Gauger*, 13 Wn. App. 928, 932, 538 P.2d 563 (1975) (bad seeds damaged farm land); *Westchester Fire Ins. Co. v. Bell Lumber & Pole Co.*, No. 1:86-CV-8948, 1991 WL 11255748, at *13 (N.D. Ill. Oct. 23, 1991) (lost use of rail cars); *Cent. Armature Works, Inc. v. Am. Motorists Ins. Co.*, 520 F. Supp. 283, 286 (D. D.C. 1980) (negligently performed work caused damage to electrical system). The one exception is *Yakima Cement*, which, as explained above, held that consequential damages cannot be covered unless they result

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1   directly from actual property damage or bodily injury.  Because there are no such allegations in

2   the underlying litigation here, Scottsdale had no duty to defend.

3   **D.    Fraud and intentional breach of fiduciary duty are not accidental occurrences.**

4   AMS bears the burden of proving not only that the underlying litigation raised claims of

5   property damage or bodily injury, but also that such damages were allegedly caused by an

6   accidental occurrence.  The only allegations that AMS has pointed to as raising property damage

7   or bodily injury are the claims that AMS's work-order fraud created life and safety risks.

8   Because one cannot accidentally commit fraud, AMS's claim fails as a matter of law.  AMS

9   attempts to skirt this result by arguing that whether an event is an accident is a subjective

10  analysis, requiring proof of the insured's state of mind.

11  For this proposition, AMS relies on *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of*

12  *Omaha*, 126 Wn.2d 50, 59–60, 882 P.2d 703 (1994).  Scottsdale explained in its opposition to

13  AMS's motion for partial summary judgment that *Queen City* has only minor relevance because

14  it construed a different definition of "occurrence."  The policy at issue in *Queen City* defined

15  "occurrence" as an "accident" that "unexpectedly and unintentionally" caused damage.  *Queen*

16  *City*, 126 Wn.2d at 59–60.[2]  The court held that whether the damage was "unexpected" or

17  "unintentional" must be analyzed subjectively from the perspective of the insured.  *Id.* at 67–68.

18  Here, in contrast, the policies define "occurrence" merely as an "accident," without the

19  "unexpectedly or unintentionally" language.  Before and after *Queen City*, courts hold that

20  "accident" is an objective term.  *See Safeco Ins. Co. of America v. Butler*, 118 Wn.2d 383, 403,

21  823 P.2d 499 (1992) ("'accident' is not a subjective term.  Thus, the perspective of the insured as

22

---

23  [2] *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 164 P.3d 454 (2007), also cited by AMS, analyzed an insurance

24  policy with the same "occurrence" definition as was at issue in *Queen City*.  These opinions have caused confusion. For example, relying in part on dicta from *Cle Elum Bowl, Inc. v. North Pacific Ins. Co.*, 96 Wn. App. 698, 981 P.2d 872 (1999), a court interpreted *Queen City* as imposing a subjective "neither expected nor intended" qualification on

25  the definition of "occurrence."  *Allstate Prop. & Cas. Ins. Co. v. Strand*, No. C11-1334JLR, 2012 WL 2004994, at *6 (W.D. Wash. June 5, 2012).  This reading of *Queen City* is demonstrably incorrect.  *Queen City* was interpreting

26  a policy that included "unexpectedly and unintentionally" in its definition of "occurrence."  It did not purport to superimpose this language into policies that defined "occurrence" differently.

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1  opposed to the tortfeasor is not a relevant inquiry.") (quoting *Roller v. Stonewall Ins. Co.*, 115

2  Wn.2d 679, 685, 801 P.2d 207 (1990)); *Speed*, 179 Wn. App. at 198 ("Whether an event

3  constitutes an accident is determined objectively and does not depend on the insured's subjective

4  perspective."). *Queen City* did not change this rule. To the contrary, the court distinguished the

5  term "accident" from "unexpectedly and unintentionally," holding that "determination of what

6  constitutes an accident, *i.e.*, whether injury or damage has resulted from an 'accident,' is not

7  dispositive on the standard for expectation of the damages." *Queen City*, 126 Wn.2d at 68.

8      The rule announced in *Queen City* was intended to ensure that liability policies would

9  cover acts of negligence, "even though precipitated by intentional acts." *See id.* at 69. The court

10  explained that "the average purchaser of insurance would understand that the policy language

11  provides for coverage for damage resulting from most acts of ordinary negligence." *Id.* The

12  essential facts were that the insured had intentionally stored hazardous waste on its property, but

13  had done so negligently, allowing the waste to contaminate surrounding ground and

14  groundwater. *Id.* at 58–59. Just as a person "who intentionally backs a car up, but does so

15  negligently into the path of a vehicle having the right of way," would expect insurance coverage

16  to apply, so the ordinary consumer would expect the *Queen City* insured's negligent conduct to

17  be covered. The *Queen City* analysis is simply inapposite here, where the allegation is that AMS

18  intentionally engaged in a fraudulent scheme.

19      As explained in Scottsdale's opposition to AMS's motion for partial summary judgment,

20  when the insured intentionally commits wrongful conduct, an accident will be recognized only if

21  "some additional, unexpected, independent, and unforeseen happening" produces the injury.

22  *Butler*, 118 Wn.2d at 401 (quoting *Detweiler*, 110 Wn.2d at 104). The cases applying this rule

23  have often described the facts as "bizarre." *See Detweiler*, 110 Wn.2d at 102 (jury question as to

24  whether an accident occurred, under "the somewhat bizarre facts," where the insured fired a gun

25  at the back of a pickup and the ricochet injured him, given variables  such as the truck's speed

26  and the angle of fire); *Fischer v. State Farm Fire & Cas. Co.*, 272 F. App'x 608 (9th Cir. 2008)

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 9
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1    (an accident occurred in the "bizarre set of circumstances" where the victim mistakenly believed
2    she was consenting to sex with her boyfriend and the accused rapist mistakenly believed she was
3    consenting to sex with him).  Here in contrast, there is nothing bizarre about the allegation that
4    failing to fix life-safety equipment, and then lying about it, results in risks to life and safety.

5    Finally, there is no solace for AMS in its contention that a fiduciary duty can be breached
6    either negligently or intentionally.  The complaints here alleged only intentional breaches of
7    fiduciary duty.  *See* C15-1004, Dkt. Nos. 51-5 at 65–67; 51-10 at 45–46.  With respect to the
8    work-order scheme, the underlying complaints describe AMS's breach of fiduciary duty as
9    "committing wide-spread work order fraud." *Id.* at 45.

10   The purpose of these allegations was to justify termination of the property management
11   agreements, which by their terms terminated automatically upon the occurrence of "theft, fraud,
12   or other knowing and intentional misconduct" by the AMS entities.  C15-1004, Dkt. Nos. 51-5 at
13   9; 51-10 at 43–44.  It is thus not surprising that the underlying plaintiffs based their fiduciary-
14   duty claims purely on fraud and other intentional misconduct.  These allegations failed to raise
15   an accidental occurrence and thus were not covered under Scottsdale's policies.  *See Corp. of the*
16   *Catholic Archbishop of Seattle v. Arrowood Indem. Co.*, No. C15-175 MJP, 2015 WL 8212719,
17   at *2 (W.D. Wash. Dec. 8, 2015) ("If and when additional claims were asserted . . . and if and
18   when additional facts supporting potential negligence liability were put forward, the duty to
19   defend would be triggered," but decision not to defend where complaint alleged only intentional
20   misconduct was reasonable).

21   **E.    Various exclusions preclude coverage.**

22   Scottsdale has previously explained that various policy exclusions apply and would bar
23   coverage even if AMS could fabricate a covered occurrence.  For example, to the extent AMS
24   bases its claim on vague references to mold in the extrinsic evidence, any such claim would be
25   barred under the mold exclusion.  C15-1004, Dkt. No. 71 at 19.  Notably, AMS has not disputed

26

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 10
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

1  that the mold exclusion bars coverage. It simply argues that there were other forms of damage.

2  C15-1004, Dkt. No. 74 at 28–29.

3        Finally, AMS fails to refute that the owned-property exclusion applies. Importantly,

4  AMS does not dispute that the underlying plaintiffs were named insureds under the Scottsdale

5  policies. Rather, it argues that the exclusion cannot bar coverage for AMS because it did not

6  own or lease the property at issue. C15-1004, Dkt. No. 74 at 27. The basis for this argument is

7  AMS's claim that when a policy term refers to "the insured," as opposed to "an insured," the

8  term must be analyzed separately for each insured. *Id.*

9        AMS is simply wrong about the policy language. The owned-property exclusion applies

10  to "you," which is defined as "the Named Insured . . . and *any* other person or organization

11  qualifying as a Named Insured under this policy." C15-1004, Dkt. No. 50-6 at 21 (emphasis

12  added). Thus, the exclusion bars coverage for damage to property owned or leased by "any"

13  person who qualifies as a named insured. Because AMS concedes that the underlying plaintiffs

14  were named insureds and owned or leased the property in question, the owned-property

15  exclusion applies.

16        Finally, AMS argues that the owned-property exclusion would prevent coverage only for

17  property damage. This is a distinction without a difference because there is no allegation,

18  anywhere in any of the underlying complaints, of bodily injury. Moreover, the owned-property

19  exclusion specifically bars coverage for "costs or expenses incurred by you, or any other person,

20  organization or entity, for repair, replacement, enhancement, restoration or maintenance of such

21  property for any reason, ***including prevention of injury to a person*** or damage to another's

22  property." *Id.* at 24. Thus, this exclusion precludes coverage based on the underlying claim that

23  AMS's fraud created a risk of bodily injury.

24

25

26

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 11
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

**F.**    **The Court should disregard AMS's references to the MBMH Fifth Amended Complaint and other irrelevant evidence.**

In several places, AMS refers to the Fifth Amended Complaint filed in the MBMH action. As explained in Scottsdale's opposition to AMS's motion for partial summary judgment, this version of the complaint was never tendered to Scottsdale. C15-1004, Dkt. No. 71 at 2–3. A complaint that was never tendered does not trigger an insurer's obligations. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 421, 191 P.3d 866 (2008). As such, the Court should disregard these references, as well as AMS's references to motions filed in the underlying litigation after the present lawsuit was filed. *Id.* at 3–4.

### III.   CONCLUSION

Because AMS has failed to show the existence of a covered claim, Scottsdale had no duty to defend, and the Court should grant Scottsdale's motion for summary judgment.

DATED this 18th day of December, 2015.

OGDEN MURPHY WALLACE, P.L.L.C.

By   s/Geoff J. M. Bridgman
    Geoff J. M. Bridgman, WSBA #25242
    Tracy N. Grant, WSBA #40877
    901 Fifth Avenue, Suite 3500
    Seattle, Washington 98164-2008
    Tel: 206.447.7000/Fax: 206.447.0215
    Attorneys for Defendant
    Scottsdale Insurance Company

SELMAN BREITMAN, LLP

By   s/Peter Mintzer
    Peter Mintzer, WSBA #19995
    800 Fifth Avenue, Suite 4100
    Seattle, Washington 98104
    Tel: 206.447.6461/Fax: 206.588.4185
    Email: pmintzer@selmanlaw.com
    Attorneys for Scottsdale Insurance Company

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 12
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

## CERTIFICATE OF SERVICE

I certify under the laws of the United States of America that on the 18th day of December 2015, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF System and served counsel below by the method indicated:

| | |
|---|---|
| Dwain Clifford, pro hac vice<br>Kevin Mapes, WSBA #40416<br>Nicholas Thede, pro hac vice<br>Kyle A. Sturm, pro hac vice<br>James Clark Prichard, WSBA #30077<br>Ball Janik LLP<br>101 SW Main Street, Suite 1100<br>Portland, OR  97204<br>**Attorneys for Insureds** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Linda L. Foreman, WSBA #11817<br>Bowers Foreman, PLLC<br>5825 60th St. SE<br>Snohomish, WA  98290<br>**Attorneys for Insureds** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Stephen Skinner, WSBA #17317<br>Andrews Skinner, P.S.<br>645 Elliott Avenue W. Ste 350<br>Seattle, WA  98119<br>**Attorneys for Lexington** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |

DATED this 18th day of December, 2015.


s/Geoff Bridgman, WSBA#25242
Geoff Bridgman

{APR1399727.DOCX;1/00335.002030/ }
DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 13
NO. C15-Civil-01004

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215