1

2

The Honorable Thomas S. Zilly

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

AT SEATTLE

11

12

13

14

15

16

17

18

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, AMERICAN MANAGEMENT SERVICES LLC, A Washington limited liability company, AMERICAN MANAGEMENT SERVICES CALIFORNIA INC., a Washington corporation, formerly d/b/a GOODMAN FINANCIAL SERVICES, INC., STANLEY HARRELSON, an individual, JOHN GOODMAN, an individual, PINNACLE IRWIN LLC, a Washington limited liability company, and PINNACLE MONTEREY LLC, a Washington limited liability company, | CASE NO. 2:15-cv-01004-TSZ<br><br>PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITIONS TO CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR: DECEMBER 18, 2015 |

19

Plaintiffs,

20

vs.

21

22

SCOTTSDALE INSURANCE CO., a Delaware corporation, and LEXINGTON INSURANCE COMPANY, a Delaware corporation,

23

Defendants.

24

25

PLAINTIFFS' RESPONSE TO DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

# Table of Contents

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II.   SUMMARY OF KEY FACTS .............................................................................................1

III.  ARGUMENT .........................................................................................................................3

    (A)   Under the Policies, the Insurers Have a Duty to Defend Any Suit that Conceivably Seeks Damages "Because of" Bodily Injury or Property Damage. ........................................................................................................................3

    (B)   The Underlying Complaints Raise the Possibility of Bodily Injury or Property Damage Caused by an "Occurrence." ........................................................6

        1.   The Insurers Fail to Distinguish *Queen City Farms* and *Hayles*. .....................7

        2.   Faced With Conflicting Authority, the Insurers Were Legally Obligated to Give Their Insureds the Benefit of the Doubt and Defend. ....................................................................................................................9

    (C)   At a Minimum, the Underlying Complaints' Breach of Fiduciary Duty Allegations Triggered the Insurers' Duty to Defend. ......................................10

IV.   CONCLUSION ....................................................................................................................12

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1

**Table of Authorities**

2

**Page**

3

**Cases**

4

*Abrams v. Gen. Star Indem. Co.*,
   335 Or. 392 (2003)..................................................................................................... 10, 11

5

*Aetna Cas. and Sur. Co. v. M & S Industries, Inc.*,
   64 Wash.App. 916 (1992).......................................................................................... 5

6

7

*Allstate Prop. & Cas. Ins. Co. v. Jong Hwan Choi*,
   No. 14-cv-311-SAB, 2015 WL 917649 (E.D. Wash. Mar. 3, 2015) ...................... 9

8

*CNA Cas. of Cal. v. Seaboard Sur. Co.*,
   222 Cal.Rptr. 276 (Ct.App.1986) ............................................................................ 5

9

10

*Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*,
   43 F.3d 1119 (7th Cir. 1994) .................................................................................... 11

11

*Expedia, Inc. v. Steadfast Ins. Co.*,
   180 Wash.2d 793 (2014) ........................................................................................... 3

12

13

*E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*,
   106 Wash.2d 901 (1986)........................................................................................... 2

14

*Ferguson v. Birmingham Fire Ins.*,
   254 Or. 496 (1969)..................................................................................................... 11

15

16

*Hartley v. State*,
   103 Wash.2d 768 (1985)........................................................................................... 8

17

*In re Feature Realty Litigation*,
   468 F.Supp.2d 1287 (E.D Wash. 2006) .................................................................. 5

18

19

*Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*,
   980 F.2d 1402 (11th Cir. 1993) ............................................................................... 11

20

*Mid-Continent Cas. Co. v. Academy Dev., Inc.*,
   476 Fed.Appx. 316 (5th Cir. 2012).......................................................................... 5

21

22

*Nationwide Mut. Ins. Co. v. Hayles, Inc.*,
   136 Wash.App. 531 (2007)....................................................................................... 7, 8

23

*Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*,
   126 Wash.2d 50 (1994)............................................................................................. 7, 8, 9

24

*St. Paul Mercury Ins. Co. v. Tessera, Inc.*,
   --- Fed.Appx. ----, 2015 WL 8526143 (9th Cir. 2015) ......................................... 5

25

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

*Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union,*
   770 A.2d 978 (D.C. 2001) ......................................................................... 11

*Truck Ins. Exch. v. Vanport Homes, Inc.,*
   147 Wash.2d 751 (2002) ............................................................................. 1

*U.S. Fid. & Guar. Co. v. Korman Corp.,*
   693 F.Supp. 253 (E.D. Pa. 1988) .............................................................. 6

*Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.,*
   963 N.E.2d 930 (Ill. Ct. App. 2011) ......................................................... 4

*Wellbrock v. Assurance Co. of Am.,*
   90 Wash.App. 234 (1998) ........................................................................... 5

*Woo v. Fireman's Fund Ins. Co.,*
   161 Wash.2d 43 (2007) ............................................................................. 10

*Yakima Cement Prods. Co. v. Great Am. Ins. Co.,*
   93 Wash.2d 210 (1980) .............................................................................. 4

**Other Authorities**

California Civil Jury Instructions No. 4101(3) ...................................... 11

**Treatises**

Allan D. Windt, *Insurance Claims & Disputes* § 11.1 (5th ed. 2007) ........................................... 4

TABLE OF AUTHORITIES - ii
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The Insurers continue to get it wrong.  They begin by asking the Court to disregard evidence illustrating they had a duty to defend the AMS Insureds on the ground that the evidence was not tendered in time, despite the fact that the issue presented in the AMS Insureds' motion is "if" the duty to defend was ever triggered, not "when" it was triggered.  All of the evidence submitted by the AMS Insureds can and should be considered by the Court.  Furthermore, the Insureds continue to ignore evidence that establishes that the AMS Insureds could *conceivably* be held liable because of property damage or bodily injury.  Likewise, they continue to apply the improper standard—to their benefit—in assessing whether there was an "occurrence" as that term is used in the policies.  The AMS Insureds respectfully request that the Court issue an Order finding that the Insurers had a duty to defend them in the Underlying Lawsuits.

## II. SUMMARY OF KEY FACTS

Consistent with their efforts throughout the claims process and this litigation, the Insurers ask the Court to ignore evidence that supports a finding of coverage.  Here, the Insurers request that the Court not consider certain evidence submitted in support of the AMS Insureds' motion because it was provided after this litigation was initiated.  For example, they ask the Court to not consider the GAO Report, despite the fact that it was first produced by Scottsdale in its initial disclosures.[1]  Although the AMS Insureds dispute whether the extrinsic evidence was properly tendered or readily ascertainable, the Insurers' position nevertheless misses the point.  The issue presented here is "if" the duty to defend was triggered, not "when" it was triggered.

Under well-settled Washington law, the duty to defend "arises *at the time an action is first brought*, and is based on the potential for liability."[2]  As presented in the AMS Insureds' motion, the question for the Court is whether the Fifth Amended Complaint in both the

---

[1] Counsel for AMS Insureds was not aware of this report prior to its disclosure by Scottsdale. It is incredible that Scottsdale would argue against its admissibility when it found this report and produced it to the AMS Insureds. The fact that it fails to support Scottsdale is not a reason to rule against its admissibility.

[2] *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash.2d 751, 760 (2002) (emphasis added).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1   California and Georgia Lawsuits triggered the Insurers' duty to defend.  The AMS Insureds

2   steadfastly contend that the duty was triggered well before those complaints were filed, but at

3   this point in the litigation the only question is whether the duty to defend was triggered by the

4   Fifth Amended Complaints.[3]

5          Additionally, the evidence belies the Insurers' contention that there are no allegations that

6   suggest that the AMS Insureds' conduct caused property damage or bodily injury.  For example,

7   the Underlying Plaintiffs expressly allege that the AMS Insureds caused or, at a minimum,

8   allowed property damage to continue and worsen: "In fact, after learning that Pinnacle was

9   falsifying work order data, the Monterey Owner, MBMH, initiated inspections of military

10  housing units that determined many of the homes had life safety issues that Pinnacle, responsible

11  for the repair and maintenance of the military housing, *had failed to remedy or had allowed to*

12  *occur and continue*."[4]  Despite clear reference to this report, and citation to it in the AMS

13  Insureds' motion, the Insurers fail to cite to—much less discuss—the conclusions in that report

14  that the AMS Insureds allegedly caused covered damages.[5]

15         Moreover, both Insurers contend that the Court should not consider extrinsic evidence in

16  this case.  Again, their arguments are not supported by Washington law.  An insurer—and this

17  Court—must consider extrinsic evidence in two cases: (1) when the allegations are in conflict

18  with facts known to or readily ascertainable to the insurer, or (2) when the allegations stated in

19  the complaint are ambiguous or inadequate to determine whether there is a possibility of

20  coverage.[6]  Here, both prongs justify consideration of extrinsic evidence.  First, the evidence

21  cited by the AMS Insureds in their motion can reasonably be interpreted to conflict with certain

22  allegations in the complaints filed in the Underlying Lawsuits, including in determining whether

23

24          [3] The Insurers admit that there is no material difference between the Third Amended Complaint (ECF No. 51-9), which they readily admit was "tendered" to them, and the Fifth Amended Complaint (ECF No. 51-11).

25          [4] ECF No. 51-11, ¶ 89.
           [5] ECF No. 59, p. 7, lns. 13-17 (citing to Mathews Dec., Ex. 10, pp. 48-298 ("The Villages at Belvoir Environmental & Life Safety Inspection Report, May 2012")).
           [6] *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 908 (1986).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2
Case Number:  2:15-CV-1004-TSZ

they allege property damage/bodily injury or an occurrence.  Second, the allegations in the Underlying Lawsuits are—at the very least—ambiguous the meaning of "life and safety issues" and the potential bases for liability.  For each of these reasons, it is appropriate for the Court to consider extrinsic evidence to determine if (not when) the duty to defend was triggered.

Finally, the Insurers contend that the Court should not consider certain statements attached to the Mathews Declaration, the motion *in limine* filed in the California Lawsuit, and the GAO report because they were not provided prior to this litigation.  As noted above, this argument misses the point.  The issue here is whether the Insurers had a duty to defend the AMS Insureds.  It is undisputed that all of this evidence provides insight on the allegations set forth in the complaints filed in the Underlying Lawsuits and, therefore, must be considered by the Court.

### III. ARGUMENT

(A)     **Under the Policies, the Insurers Have a Duty to Defend Any Suit that Conceivably Seeks Damages "Because of" Bodily Injury or Property Damage.**

The Insurers repeatedly insist that the Underlying Lawsuits do not assert claims "for" bodily injury or property damage.  The Insurers miss the point, while mischaracterizing their own insuring grants.  The Policies do not merely provide coverage "for" property damage or bodily injury; that is the sort of coverage provided by first-party property insurance or medical insurance. The Policies at issue here, in contrast, are third-party liability policies.  As such, the Policies provide coverage for all sums that the Insureds become legally obligated to pay *because of* bodily injury or property damage.  And once there is a lawsuit that *conceivably* seeks damages *because of* bodily injury or property damage, the Insurers have a contractual duty to defend.[7]

---

[7] The Insurers suggest that plaintiffs somehow misinterpret *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793 (2014).  In fact, it is the Insurers who fail to give proper consideration to the Washington Supreme Court's guidance. Under *Expedia,* "the duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint." *Id.* at 802. As discussed at length elsewhere, the Underlying complaints contain *allegations* of threats to life and safety which could *conceivably* lead to liability because of bodily injury and/or property damage. Tellingly, neither of the Insurers even acknowledges *Expedia's* broad "conceivability" standard in their Opposition briefs.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

Courts in Washington[8] and nationwide have consistently held that consequential damages awarded because of property damage or bodily injury are covered under a general liability policy.  The Illinois Court of Appeals succinctly summarized the issue:

> Liability policies cover not only damages *for* property damage, but damages *because of, on account of* or *by reason of* property damage. Accordingly, once covered property damage exists, all consequential damages are covered. * * * In short, even though an item of damage is not covered as property damage, it can be covered if it constitutes a consequential damage flowing from covered property damage.[9]

Accordingly, the Insurers should not have analyzed the Underlying Complaints looking only for claims "for" bodily injury or property damage.  Rather, the proper focus should have been on whether it was *conceivable* that the AMS Insureds *could be* legally obligated to pay damages *because of* bodily injury or property damage. As discussed in the AMS Insureds' briefs, the "life and safety" allegations in the Underlying Lawsuits raised that possibility.

For similar reasons, the Insurers' attempt to avoid their defense obligation because the Underlying Plaintiffs could not suffer bodily injury is misguided.  As discussed above and in the AMS Insureds' briefs, whether or not the Underlying Plaintiffs were capable of sustaining bodily injury is irrelevant; rather, the appropriate inquiry is whether or not the AMS Insureds could have been legally obligated to pay damages *because of* bodily injury, regardless of who sustained that injury. As discussed below, evidence of bodily injury to military families could have been introduced in support of the underlying plaintiffs' breach of fiduciary duty claims; the AMS Insureds could then have been legally obligated to pay damages *because of* that bodily injury.

Moreover, the merits, or lack thereof, of the underlying claims are wholly irrelevant in assessing the Insurers' duty to defend.  "The duty does not hinge on the insured's potential liability to the claimant, but on whether the complaint alleges any facts rendering the insurer

---

[8] *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wash.2d 210, 219 (1980).
[9] *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 943-44 (Ill. Ct. App. 2011) (emphasis in original) (quoting Allan D. Windt, *Insurance Claims & Disputes* § 11.1, at 11-17 - 11-18 (5th ed. 2007)); *see also* ECF No. 74, pp. 7-8, fn 14 (collecting other authorities).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4
Case Number:  2:15-CV-1004-TSZ

1    liable to the insured under the policy language."[10] The Ninth Circuit Court of Appeals recently

2    addressed this concept in *St. Paul Mercury Ins. Co. v. Tessera, Inc.*:

3              The existence of a slam-dunk defense, immunity, or privilege with
              respect to the underlying claim against the insured does not affect
4              an insurance company's duty to defend. *See CNA Cas. of Cal. v.
              Seaboard Sur. Co.*, 222 Cal.Rptr. 276, 281 n. 4 (Ct.App.1986)
5              ("[W]hen presented with a tender of a defense, it is not the
              insurer's place to analyze and evaluate the underlying claim of
6              liability in order to reject the defense of any claim that is not
              meritorious....[T]he fact that [the insurer] may have known of a
7              good defense, even an ironclad one, to the [potential tort] claim did
              not relieve it of its obligation to defend its insured.").[11]

8    Accordingly, Scottsdale's citation to case law addressing standing has no bearing on the

9    coverage analysis currently before this Court. If an insurer believes that its insured has a slam-

10   dunk defense to an underlying claim, the appropriate response is not to deny coverage. Instead,

11   the appropriate response is to hire defense counsel to assert that slam-dunk defense on behalf of

12   the insured.

13           Here, the Underlying Complaints regular references to "life/safety" issues raised at least

14   the possibility that evidence of actual bodily injury or property damage would be introduced at

15   trial. Under notice pleading rules, no amendment would even be necessary; in support of their

16   claims that the AMS Defendants created life and safety issues, evidence of damage to property

17   and injury to military residents and their families could be introduced. Contrary to the Insurers'

18   assertions, the allegations do more than raise a risk of later potential injury or damage. Rather,

19   the allegations make it at least *conceivable* that evidence of actual bodily injury or property

20   damage would be introduced.[12]

21

22

23    [10] *Aetna Cas. and Sur. Co. v. M & S Industries, Inc.*, 64 Wash.App. 916, 927-928 (1992).

24    [11] *St. Paul Mercury Ins. Co. v. Tessera, Inc.*, --- Fed.Appx. ----, 2015 WL 8526143, at *1 (9th Cir. 2015) ;
     *see also In re Feature Realty Litigation*, 468 F.Supp.2d 1287, 1300 (E.D Wash. 2006) ("USF&G cannot now elect
     to challenge liability under the guise of a coverage defense."); *Mid-Continent Cas. Co. v. Academy Dev., Inc.*, 476
25   Fed.Appx. 316, 321 (5th Cir. 2012) ("[T]he only relevant inquiry here is whether * * * there is a duty to defend, not
     whether the underlying-action plaintiffs had standing to sue for damage.").
     [12] Defendants' reliance on *Wellbrock v. Assurance Co. of Am.*, 90 Wash.App. 234 (1998) is therefore
     misplaced, as discussed in detail in plaintiffs' opposition to defendants' motions.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1    Scottsdale's attempt to distinguish *U.S. Fid. & Guar. Co. v. Korman Corp.*[13] is

2    unpersuasive and actually proves the AMS Insureds' point.  As Scottsdale notes, "the *Korman*

3    plaintiffs specifically alleged not only that the defendants created risks but also that these risks

4    caused damage."  Contrary to Scottsdale's assertion, that *is exactly* what the Underlying

5    Plaintiffs alleged here. The Underlying Complaints raised the risk of life and safety issues, and

6    the extrinsic evidence demonstrated that those risks led to actual bodily injury and property

7    damage.[14]

8        Furthermore, the extrinsic evidence that was both readily available in public records and,

9    in many cases, specifically provided to the Insurers, demonstrates that the underlying cases

10   involved more than some abstract risk of harm: actual bodily injury and property damage had

11   been documented.  Based on the allegations of the Underlying Complaints, backed up by the

12   extrinsic evidence, it was, at a minimum, *conceivable* that the AMS Insureds could have been

13   legally obligated to pay damages *because of* bodily injury or property damage. The Insurers'

14   duty to defend, therefore, was triggered.

15   **(B)    The Underlying Complaints Raise the Possibility of Bodily Injury or Property
         Damage Caused by an "Occurrence."**

16       The Insurers dedicate significant portions of their brief arguing that there is "no

17   conceivable reading of the complaints that could construe the repeated allegations of intentional

18   and fraudulent conduct as claims sounding in negligence."[15] These arguments are consistent with

19   the Insurers' approach so far: ignore allegations, facts, and law that do not support their position.

20   But a careful reading of the complaints demonstrates three critical items (which the Insurers

21   consistently overlook): (1) the complaints allege breach of fiduciary duty, which may be proven

22   by negligence;[16] (2) the Underlying Plaintiffs' theory of recovery was not entirely based upon

---

[13] 693 F.Supp. 253 (E.D. Pa. 1988).
[14] Scottsdale apparently concedes, moreover, that damages for loss in value and for the costs of medical monitoring are covered damages.
[15] *See, e.g.,* ECF No. 70, p. 15, ln. 27.
[16] ECF No. 59, pp. 16-17.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1  intentional conduct;[17] and (3) there are no allegations that the AMS Insureds intended to cause

2  any of the property damage or bodily injury at issue in the Underlying Lawsuits.[18]

3        **1.**    **The Insurers Fail to Distinguish *Queen City Farms* and *Hayles*.**

4        The Insurers' attempts to distinguish *Queen City Farms* and *Hayles* are unpersuasive.[19]

5  The AMS Insureds readily acknowledge that the policy language in *Queen City Farms* was

6  slightly different. That difference, however, has no bearing on the holding that a subjective

7  standard applies to determining whether an event (or series of events) constitutes an occurrence:

> Despite the insurers' claim that an objective standard applies, the policy language simply does not set forth such a standard. Nothing in the occurrence clause says that an objective standard applies, nor does it hint at any objective standard which requires some heightened degree of "foreseeability" in applying an objective standard of expectation. As QCF correctly notes, if the insurers wanted an objective standard to apply, they could easily have drafted language to that effect.
>
> We conclude that the policy language is at the least ambiguous as to whether an objective or subjective standard applies. Unresolved ambiguities are resolved against the drafter-insurer and in favor of the insured. Under this rule, a subject standard applies, and the insured has offered this reasonable construction of the policy language.[20]

16        The holding in *Queen City Farms* did not hinge upon the additional (and more stringent)

17  "unexpected and unintended" language.  Instead, the court unambiguously held that a subjective

18  standard applied because the insurer failed to expressly provide any standard—whether objective

19  or subjective.  The Insurers' attempt to distinguish *Queen City Farms* is unavailing.

---

[17] *See, e.g.*, ECF No. 51-5, ¶ 102 ("These examples, uncovered by the auditors, highlight Pinnacle's <u>failure to implement proper financial and other controls to prevent and detect fraud</u>. *** As a result, management at both Projects intentionally breached their fiduciary duties to the Projects, causing millions of dollars of harm to the Projects."); ¶ 247 ("The acts of theft, fraud and other knowing or intentional misconduct by Pinnacle employees are attributable to Defendants because they were known to high-level supervisors and/or managerial officials of AMSE, AMSC and or AMS, including but not limited to Andrews, Goodman, Harrelson, Sperry, Somerville, and Rouen, who, while acting in the scope of their employment authorized such misconduct, attempted to conceal such misconduct from Plaintiffs, and/<u>or, at the very least, recklessly tolerated such misconduct</u>.") (emphasis added).

[18] ECF No. 59, p. 8, lns. 2-7.

[19] *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wash.2d 50 (1994); *Nationwide Mut. Ins. Co. v. Hayles, Inc.*, 136 Wash.App. 531 (2007).

[20] *Queen City Farms*, 126 Wash.2d at 67-68 (internal citations omitted).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1    The Insurers also miss the mark when they argue that *Hayles* actually supports their

2   position.  For instance, Scottsdale argues that *Hayles* involved a situation where the "intentional

3   conduct was not intended to be wrongful."[21]  Setting aside that "intent" is a subjective

4   determination under *Queen City Farms*, *Hayles* involved completely opposite facts from those

5   suggested by Scottsdale.  There, the intentional act was turning on an irrigation system.  But the

6   court specifically found that the insured "turned on the water after the [plaintiffs] told [the

7   insured] to keep the water off."[22]  The court went on to conclude that the insured's "awareness of

8   the consequences of his intentional act is a question of fact[.]"[23]  The *Hayles* Court clearly

9   applied a subjective standard.

10    Nevertheless, the Insurers misapply the holding in *Hayles* to assert it supports their

11   position that an objective standard is proper.  To do so, they rely on the statement in *Hayles* that

12   "*[r]easonable minds* could only conclude that no one under these circumstances would have

13   anticipated that turning on the water could rot the onions."[24]  In context, this is wrong.  This

14   statement merely recites the unremarkable standard to be applied in assessing whether questions

15   of fact preclude summary judgment.  The *Hayles* quote specifically cited to *Hartley v. State*[25] as

16   authority for that standard, offering the parenthetical "issues of fact on summary judgment."  It

17   was not, as the Insurers contend, an endorsement of an objective standard.

18    Notwithstanding clear authority from the Supreme Court of Washington, the Insurers

19   state that it is "sheer commonsense" that unattended repairs to fire detection equipment will

20   result in a "directly foreseeable consequence" that the military residents will be at risk for "fire

21   damage."[26]  Not only is that not supported by any actual evidence, it is an entirely unreasonable

22   assumption.  No one that fails to replace their smoke detector batteries anticipates that a fire will

23

24

25

---

[21] ECF No. 71, pg. 16.
[22] *Hayles*, 136 Wash.App at 534.
[23] *Id.* at 539.
[24] ECF No. 77, pg. 17 (Lexington); ECF No. 71, pg. 16.
[25] 103 Wash.2d 768 (1985).
[26] ECF No. 71, pg. 17; ECF No. 77, pg. 17.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

result.  If at all, the only harm that may reasonably follow is that the fire may not be detected at an earlier time.  The fire is an entirely intervening event—the cause of which has no bearing on fire detection equipment.[27]

### 2. Faced With Conflicting Authority, the Insurers Were Legally Obligated to Give Their Insureds the Benefit of the Doubt and Defend.

The AMS Insureds have presented clear and unambiguous authority from the Supreme Court of Washington holding that a subjective standard applies to resolving the occurrence issue. Nevertheless, both Insurers ignore that case law and predominantly rely on cases from the Court of Appeals of Washington and the federal district courts.  Not only are those cases not the law in Washington, but they are reliably inconsistent.

That inconsistency was recognized this year in *Allstate Prop. & Cas. Ins. Co. v. Jong Hwan Choi*.[28] There, the court acknowledged that, "[a]lthough in some Washington cases the common law definition of Accident has been applied, meaning intentionally performed acts can never be Accidents, many other cases employ the more ordinary definition that encompasses intentional actions that result in subjectively unintended results."  Relying upon this statement, the court recognized that "an average purchaser would not understand Accident to exclude all instances involving some deliberate or intentional actions[.]"[29]

Even assuming there is a conflict in laws (which the AMS Insureds' dispute due to *Queen City Farms*), the Insurers were required to give the benefit of the doubt to the AMS Insureds. The Supreme Court of Washington has unambiguously held as such:

> [T]he duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint. Here, Fireman's did the opposite—it relied on an equivocal interpretation of case law to

---

[27] The Insurers' approach to the interpretation of Washington law is surprisingly consistent with the AMS Insureds' theme in this briefing: the Insurers' resolved all issues of fact, law and policy interpretation in their favor and in direct contradiction of Washington law on the duty to defend. That conduct is impermissible and is directly relevant to the AMS Insureds' motion for summary judgment.

[28] No. 14-cv-311-SAB, 2015 WL 917649, at *3 (E.D. Wash. Mar. 3, 2015).

[29] *Id.*

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1    give *itself* the benefit of the doubt rather than its insured.[30]

2    Any doubt as on the subjective versus objective issue must be resolved in favor of the

3    AMS Insureds. Consistent with their approach during the claim and this litigation, the Insurers

4    refuse to recognize this rule of law. Although they could have defended under a reservation of

5    rights and filed a declaratory judgment action (as endorsed by the Supreme Court of Washington

6    on multiple occasions), they refused to do so. Instead, they continually interpret all facts, law and

7    policy provisions in their favor and improperly denied the duty to defend.

8    **(C)    At a Minimum, the Underlying Complaints' Breach of Fiduciary Duty Allegations
9           Triggered the Insurers' Duty to Defend.**

10    The Insurers attempt to avoid their duty to defend the breach of fiduciary duty claims by

11    arguing that the express terms of the Underlying Complaints allege only intentional examples of

12    the alleged breach.[31] The Insurers' argument fails, however, because regardless of those express

13    allegations, the underlying plaintiffs could ultimately have prevailed on their breach of fiduciary

14    duty claims without proving intentional, much less willful, conduct.[32]  Courts addressing the

15    issue have consistently concluded that insurers have a duty to defend "implicit claims" or "lesser

16    included" claims that could be established based on a negligence standard.

17    The Oregon Supreme Court, for example, answered the following certified question from

18    the Ninth Circuit Court of Appeals: "[D]oes an insurer have a duty to defend an insured under an

19    insurance policy with an 'intentional acts' exclusion if the complaint against the insured alleges a

20    subjective intent to harm but the claim could be proven through unintentional conduct?"[33]

21    *Abrams v. Gen. Star Indem. Co.* involved an underlying claim for conversion. Like the Insurers

22    here, General Star refused to defend, arguing that the underlying complaint alleged only

23    intentional conduct. Coverage litigation, and the Ninth Circuit's certified question, ensued. The

---

[30] *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 60 (2007) (emphasis in original).
[31] ECF No. 71, p. 18 (Scottsdale); ECF No. 77, p. 18 (Lexington).
[32] *See* footnote 17, above, providing examples of allegations of non-intentional conduct.
[33] *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 394 (2003).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1   Oregon Supreme Court answered in the affirmative, concluding that "because the allegations of

2   intentional conversion include allegations of ordinary conversion, a tortious act that is covered

3   under the policy, General Star had a duty to defend."[34] In finding a duty to defend, the Oregon

4   Court looked to a prior decision involving only allegations of "willful" trespass:

> In *Ferguson*, this court held that the insurer had the duty to defend
> the insured against a complaint of *willful* trespass because the
> plaintiff could have recovered for "innocent trespass" without
> amending the complaint. * * * The court in *Ferguson* used the
> analogy to criminal law and explained that, in such circumstances,
> the insurer has a duty to defend because the allegations of
> intentional conduct contain a "lesser included" tort that is covered
> under the insurance policy.[35]

Courts elsewhere have reached similar conclusions, finding a duty to defend where a

complaint alleged only intentional or willful conduct, but where the claimants could potentially

prevail on "implied" or "lesser included" claims that required a negligence standard.[36]

Here, the Underlying Plaintiffs could have prevailed on their breach of fiduciary duty

claims without any finding of willful or intentional conduct. As noted in the AMS Insureds'

motion, both Georgia and California allow a claim for breach of fiduciary duty based on

negligent conduct.[37] Indeed, California Jury Instruction 4101 sets out the standards that must be

proven to establish a claim for breach of fiduciary duty under California law. Among other

things, the plaintiff must establish that the defendant "failed to act as a reasonably careful

[fiduciary] would have acted under the same or similar circumstances."[38] The AMS Insureds

could have been found liable based solely on a failure to act "reasonably."

---

[34] *Id.* at 400.

[35] *Id.* at 399 (quoting *Ferguson v. Birmingham Fire Ins.*, 254 Or. 496, 507 (1969)).

[36] *See, e.g., Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 988-90 (D.C. 2001) (finding potential coverage for libel in a complaint that alleged only "abuse of process"); *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (finding a duty to defend implied "unfair competition" claims where underlying complaint alleged tortious interference with contract and antitrust violations); *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (finding a duty to defend slander of title claims where insureds were alleged to have acted knowingly and intended the results of their actions).

[37] *See* ECF No. 59, pp. 16-17.

[38] California Civil Jury Instructions No. 4101(3).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1    As discussed in detail here, in plaintiffs' motion, and in plaintiffs' opposition briefing, the

2    Underlying Complaints consistently allege that the AMS Insureds' conduct created life and

3    safety issues for residents of the military housing facilities. Based on those allegations, the

4    Underlying Plaintiffs could have introduced evidence at trial that the AMS Insureds breached

5    their fiduciary duties when they improperly closed out work orders without confirming that the

6    work at issue at actually been performed. The Underlying Plaintiffs could have introduced

7    evidence that the AMS Insureds' alleged breach resulted in very real property damage and bodily

8    injury, including buildings destroyed by fires that resulted in death and/or injury to residents. The

9    fact that the Underlying Complaints alleged intentional conduct does not end the coverage

10   analysis. A jury could have based liability for breach of fiduciary duty entirely on the conclusion

11   that the AMS Insureds failed to act as a reasonable fiduciary.

12   Based on the allegations of the Underlying Complaints, as supported and explained by

13   extrinsic evidence, a jury could have found that the AMS Insureds breached their fiduciary duties

14   by unreasonable failing to ensure that necessary repairs were completed. A jury could further

15   conclude that the AMS Insured's unreasonable, but not intentional, conduct ultimately led to

16   damage to military housing and injury to military families. In other words, it was at least

17   conceivable that the AMS Insureds could have been found legally obligated to pay damages

18   because of accidental bodily injury and/or property damage. That is exactly what triggers the

19   duty to defend under Washington law.

20                                        **IV. CONCLUSION**

21   For all of the reasons discussed here and in the AMS Insureds' prior briefing, the AMS

22   Insureds' motion for partial summary judgment should be granted.

23

24

25

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1   Dated: December 18, 2015                    BALL JANIK LLP

2                                               *s/Kyle A. Sturm*
                                                _____
3                                               Kyle A. Sturm, admitted *pro hac vice*
                                                ksturm@balljanik.com
4                                               Kevin S. Mapes, WSBA 40416
                                                kmapes@balljanik.com
5                                               Nicholas Thede, WSBA 43765
                                                nthede@balljanik.com
6                                               James C. Prichard, WSBA 30077
                                                jprichard@balljanik.com
7                                               Ball Janik LLP
                                                101 SW Main St., Ste. 1100
8                                               Portland, OR 97204
                                                Tel: (503) 228-2525
9
                                                BOWERS FOREMAN PLLC
10
                                                s/Linda L. Foreman
11                                              _____
                                                Linda L. Foreman, WSBA 11817
12                                              linda@lindaforeman.com
                                                Bowers Foreman PLLC
13                                              5825 60th St. SE
                                                Snohomish, WA 98290
14                                              Tel: (425) 822-7197

15                                              Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1040343\v1

1

**<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that I served a full, true and correct copy of the foregoing PLAINTIFFS'

3  REPLY TO DEFENDANTS' OPPOSITIONS TO CROSS-MOTIONS FOR SUMMARY

4  JUDGMENT by:

5            ☐      U.S. Postal Service
              ☒      Electronically, utilizing CM/ECF
6            ☐      Facsimile
              ☐      Arranging for hand delivery [as indicated]
7            ☐      Overnight mail
              ☐      Electronic mail, via Outlook
8

9  addressed to the following named person(s) at their last known address(es):

10  Stephen G. Skinner, WSBA No. 17317        Peter Mintzer, WSBA No. 19995

11  Andrews Skinner, P.S.                                Selman Breitman, LLP
    645 Elliott Ave. W., Ste. 350                      800 5th Ave., Ste. 4100
12  Seattle, WA  98119                              Seattle, WA  98104
    206-223-9248                                        T: 206-447-6461
13  206-623-9050                                        F: 206-588-4185
    Stephen.skinner@andrews-skinner.com     pmintzer@selmanlaw.com
14

15  Attorneys for Lexington Insurance Company      Geoff Bridgman, WSBA No. 25242
                                                              Tracy N. Grant, WSBA No. 40877
16                                                            Mary Knack, WSBA No. 26945
                                                              Ogden Murphy Wallace, PLLC
17                                                            901 5th Ave., Ste. 3500
                                                              Seattle, WA  98164-2008
18                                                            T: 206-447-7000
                                                              F: 206-447-0215
19                                                            gbidgman@omwlaw.com
                                                              tgrant@omwlaw.com
20                                                            mknack@omwlaw.com
                                                              Attorneys for Scottsdale Insurance Company
21

22           DATED: December 18, 2015        BALL JANIK LLP

23                                                        By: *s/Kyle A. Sturm*

24                                                        Kyle A. Sturm, admitted *pro hac vice*
                                                          OSB No. 080214
25                                                        James C. Prichard, WSBA No. 30077
                                                          jprichard@balljanik.com
                                                          Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR          BALL JANIK LLP
PARTIAL SUMMARY JUDGMENT - 14                       101 SW Main Street, Suite 1100
Case Number:  2:15-CV-1004-TSZ                      Portland, Oregon 97204
                                                    Telephone 503-228-2525

1040343\v1