HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, a Delaware corporation, *et al.*,<br><br>Defendants. | NO. 2:15-CV-01004-TSZ<br><br>DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND<br><br>**NOTE ON MOTION CALENDAR: December 18, 2015**<br><br>ORAL ARGUMENT REQUESTED |

Under the broad rules employed by Washington courts, it is not difficult to draft a complaint that triggers the duty to defend, but the duty is not absolute. The underlying plaintiffs in two separate lawsuits[1] filed 10 discrete complaints, comprising over 500 pages of pleadings, none of which contains a single allegation that could conceivably be interpreted as involving "property damage" and/or "bodily injury" caused by an "occurrence". In what could only be described as purposeful drafting, these complaints seek the termination of business contracts based on the

---

[1] *Monterey Bay v. Military Housing, LLC, et al. v. Pinnacle Monterey, LLC, et al.,* United States District Court, Northern District of California, San-Jose Division, Case No. 14-cv-03953-BLF, and *Fort Benning Family Communities, LLC, et al., v. American Management Services East, LLC, et al.*, Superior Court of Muscogee County, Georgia, Civil Action No. SU10CV2025-F.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 1

A n d r e w s ▪ S k i n n e r ,   P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

fraudulent and intentional misconduct of the Plaintiffs in this case.  Lexington properly concluded that these allegations were not covered by the Lexington Policies at issue and that the declination of the tender of defense of the underlying lawsuits was proper.

> **1. Plaintiffs have made no argument that Lexington's duty to defend was triggered by the Third Amended California Complaint and therefore summary judgment should be granted in favor of Lexington.**

In its Motion for Summary Judgment, Lexington provided a detailed history of the tenders of the underlying complaints and Lexington's responses.  As Lexington has pointed out, Plaintiffs tendered the Third Amended California Complaint to Lexington in November 2012. Dkt 57 at 7-8. In their opposition, Plaintiffs wholly fail to address the Third Amended California Complaint. As such, summary judgment should be granted in favor of Lexington.

> **2. There is no coverage triggered by the Fifth Amended California Complaint.**

Plaintiffs fail to address the lack of covered injury and damage in the Third Amended Complaint and instead, Plaintiffs' opposition addresses only allegations made in a subsequent Fifth Amended California Complaint, which was filed in April 2015, even though there is no evidence that the Fifth Amended Complaint was ever tendered to Lexington.  Unfortunately, coverage is not triggered by the Fifth Amended Complaint for the reasons identified in Lexington's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment. Dkt. 77.  The Fifth Amended Complaint is not significantly different from earlier versions of the complaint[2], and leads to the same conclusion: that the claims in the California Action (like the Georgia Action) are not covered.

---

[2] As compared with the Third Amended Complaint, the Fifth Amended Complaint modifies the original factual allegations and adds a new claim under 18 U.S.C. § 1961 (Civil RICO).  The Fifth Amended Complaint does not

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 2

**Andrews▪Skinner, P.S.**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

1   Plaintiffs vaguely allege that they tendered the Fifth Amended Complaint to the
2 "insurers" and cite to April 15, 2015 correspondence to Scottsdale's coverage counsel,
3 referencing the fact the Fifth Amended Complaint would be filed. Dkt 52-10. However, there is
4 no similar correspondence to Lexington or other evidence in the record of a tender by Plaintiffs.

5   Plaintiffs offer no authority for the proposition that an insurer can be required to defend a
6 complaint that was never tendered to the insurer. As Plaintiffs fail to address Lexington's
7 motion with respect to the Third Amended Complaint, as a matter of law, the Court should find
8 Lexington had no duty to defend under the Third Amended California Complaint. Further,
9 because the Fifth Amended Complaint was never tendered to Lexington, the Court should find
10 Lexington had no duty to defend the California Action as a matter of law.

**3.    Queen City addresses a completely different definition of occurrence and is therefore distinguishable.**

*Queen City Farms v. Central Nat'l Ins.*, 126 Wn.2d 50 (1994), cited by Plaintiffs for the proposition that a subjective standard applies in determining whether an incident is an accident under the definition of "occurrence" at issue in this case, is distinguishable from this case and therefore does not apply. In fact, citation to *Queen City Farms* is disingenuous. *Queen City Farms* addressed entirely different language that is not found in the definition of occurrence at issue here. In *Queen City Farms,* a coverage action, the underlying losses resulted from contamination of groundwater. *Id*. at 56. The policy provided coverage for personal injury and bodily damage caused by or arising out of an "occurrence." The *Queen City Farms* policy defined "occurrence" as "an accident or happening or event or a continuous or repeated exposure

---

contain any allegations of bodily injury or property damage and even if bodily injury or property damage were alleged, there is no occurrence.

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 3

*Andrews▪Skinner, P.S.*
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248▪Fax: 206-623-9050*

to conditions which **unexpectedly and unintentionally** results in personal injury, property damage…" *Id*. at 64 (bold added). It was the latter part of this definition - "unexpectedly and unintentionally" - that the court considered when determining whether a subjective or objective standard should be applied to the interpretation of that policy provision. *Id*. The court titles its discussion of this language: "'UNEXPECTEDLY AND UNINTENTIONALLY': OBJECTIVE OR SUBJECTIVE STANDARD." *Id*. at 61. While the court held that the subjective standard controls, based on the rule that insurance contracts should be interpreted as an average purchaser of insurance would understand them, the court's decision was with specific regard to the "unexpectedly and unintentionally" language. *Id*. at 65-67. However, this "unexpectedly and intentionally" language does not exist in the definition of "occurrence" in the Lexington Policies. See, e.g., Ex. 5 at 26.

*Queen City Farms* does not attempt to define what constitutes an accident under the policy language. In fact, the court expressly held that the application of an objective standard in determining what constitutes an accident is a separate issue:

> Finally, many of the cases relied upon by the insurers concern the meaning of the term "accident", and not specifically the issue whether expectation of harm should be determined under an objective or subjective standard. The determination of what constitutes an accident, i.e., whether injury or damage has resulted from an "accident", is not dispositive on the standard for expectation of the damages. Thus, this court's holding in *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990), that whether an accident has occurred is an objective determination, does not control the question whether the expectation of injury or damage is to be decided under an objective or subjective standard.

*Id*. at 68.

**4.     The Lexington occurrence definition requires application of an objective standard.**

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 4

*Andrews▪Skinner, P.S.*
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248▪Fax: 206-623-9050*

The Lexington Policy defines "occurrence" as follows: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Washington cases that have interpreted the same definition of occurrence at issue in this case have repeatedly held that the question whether an act was an "accident" is an objective inquiry. In *Roller v. Stonewall Ins. Co.,* the court held "accident" is not a subjective term. 115 Wn.2d at 685.[3] "Thus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not." *Safeco Ins. Co. of America v. Butler*, 118 Wn.2d 383, 403 (1992) (*quoting Roller*). More recently, Washington courts have reaffirmed that "Whether an event constitutes an accident is determined objectively and does not depend on the insured's subjective perspective." *USAA v. Speed*, 179 Wn. App. 184, 198, *review denied*, 180 Wn.2d 1015 (2014). In *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739 (2013), the court held "[a] reasonably foreseeable harm resulting from deliberate conduct was not an 'accident' and, thus, not an 'occurrence' under the policy's language." *Id*., at 756.

The insured bears the burden of proving that a loss "is within the scope of the policy's insured losses." *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 431 (2002). For coverage under a liability policy, the insured must show some form of harm caused by an "occurrence." *Id*. at 424. Under the Lexington Policies, where "occurrence" is defined as an "accident," an "accident" is "an unusual, unexpected, and unforeseen happening." *Grange Ins. v. Brousseau*, 113 Wn.2d 91, 95 (1989). An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs

---

[3] Overruled in part unrelated to this discussion, *Butzberger v. Foster*, 151 Wn.2d 396, 408 (2004).

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 5

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248▪Fax: 206-623-9050

which produces or brings about the result of injury.  *Butler*, 118 Wn.2d at 401.  The result of the act must also be unforeseen, involuntary, unexpected and unusual.  *Id*.

Even if Plaintiffs could show "unintended" consequences, which they cannot, that would be insufficient.  Plaintiffs bear the burden to prove the means were, objectively, an "accident":

> It is not necessary that the claimant intend or expect the injurious consequences of her actions. *Unigard,* at 263 (fire in school garbage can resulting in building blaze); *Safeco Ins. Co. of Am. v. Dotts,* 38 Wn. App. 382, 385-86, 685 P.2d 632 (1984) (backhand slap resulting in death). All that is required is that the claimant know or should know facts from which a prudent person would conclude that the injurious consequences are reasonably foreseeable. *Unigard*. Otherwise, an insured could shift intentionally inflicted injuries to an insurer in violation of public policy. *Detweiler,* at 105-06; *Unigard,* at 265; *Dotts,* at 386.

*Lloyd v. First Farwest Life Ins. Co.*, 54 Wn. App. 299, 302-303 (1989).

Although Plaintiffs pull out words or phrases ("life safety issues") from the complaints, these random references cannot be analyzed in a vacuum. Even a cursory review of the complaints indicates that these lawsuits address Plaintiffs' fraudulent and intentional conduct, which would never be an "occurrence." In fact, "fraud" or "intentional" (or some variation) are referenced 201 times in the Fifth Amended California Complaint and 190 times in the Fifth Amended Georgia Complaint.[4] In stark contrast, "negligence" or "accidental" (or some variation) are absent from both complaints.  It is undisputable that the drafters of these complaints did not to include allegations that would be considered an "occurrence."

**5.     Allegations of breach of fiduciary duty do not trigger a duty to defend.**

In the absence of a specific allegation of negligence, Plaintiffs argue that the claims for breach of fiduciary duty triggers a defense because this claim can be based on negligence.

---

[4] The complaints also make claims, such as racketeering and conspiracy, that would constitute intentional misconduct.

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 6

A n d r e w s ▪ S k i n n e r ,  P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

However, Washington courts have held that there is no duty to defend, where the plaintiff did not allege accident and alleged that the harm resulted from "fraud, undue influence, and tortious interference." *Roberts*, 179 Wn. App. at 765.[5]

The underlying complaints are replete with allegations of intentional wrongdoing and the breach of fiduciary duty claims flow directly from that conduct. In addition, the specific fiduciary duty claims describe intentional misconduct. The Third Amended California Complaint alleges that the insureds breached their fiduciary duty by engaging in fraud and intentional misconduct related to falsifying work order data, misappropriating assets and engaging in scheme to subsidize its own insurance costs. Dkt 51-9, ¶180.[6] The Fifth Amended Georgia Complaint contains similar allegations of breach of fiduciary duty from intentional misconduct. Dkt 51-5, ¶¶183-195. While the underlying plaintiffs could have alleged a breach

---

[5] *Roberts* also held the claim for defamation was excluded under the exclusions for "knowing violation of rights of another" and "material published with knowledge of falsity," notwithstanding the insured's argument that the claim, construed liberally, "conceivably" alleged negligent rather than intentional conduct. The court disagreed at 769:
> The complaint, read liberally in its entire context, alleges intentional and deliberate conduct. As to the defamation claim, the complaint alleges that Roberts made false statements about the other parties that went beyond the bounds of decency "in order to so intentionally interfere with their relationships." The complaint states no prima facie claim of negligence and solely refers to intentional, deliberate conduct. To state a claim for negligence, the underlying complaint must allege facts that support a conclusion that the conduct was negligent. See *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 319, 255 P.2d 360 (1953). ("In order to state a cause of action for negligence, it is necessary to allege facts which would warrant a finding that the defendant has committed an unintentional breach of a legal duty, and that such breach was a proximate cause of the harm."). The complaint states no such facts. Read in context, the complaint alleges only intentional torts and, thus, Roberts's knowledge of the falsity of her statements may be implied. See *Margoles v. Hubbart*, 111 Wn.2d 195, 215, 760 P.2d 324 (1988) ("evidence of hostility or spite is clearly relevant" in determining whether defamation defendant acted with knowledge of falsity).

[6] Even if the Fifth Amended California Complaint were at issue, which it is not, the fiduciary duty claims can only be read as intentional. See, e.g., Ex 22, ¶¶213-223. For example, ¶218 alleges: "AMSC and AMS breached their fiduciary duties to MBMH and CMC by committing widespread work order fraud, instructing their employees and agents to commit fraud and other intentional misconduct, misappropriating Plaintiffs' assets, conspiring with the other Defendants to use the high quality and low risk of the military housing at the Monterey and Irwin Projects owned by MBMH and CMC to subsidize the insurance costs of riskier multi-family assets owned by Goodman and Harrelson, and by charging MBMH and CMC inflated, undisclosed charges in connection with Pinnacle's administration of the Master Insurance Program, as well as failing to disclose to MBMH and CMC that they had committed fraud and other intentional misconduct."

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 7

**A n d r e w s ▪ S k i n n e r ,  P. S.**
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

of fiduciary duty from negligence, under a plain reading of the complaints, they did not. There is no alleged "occurrence".[7]

### 6. Bodily injury and property damage as defined by the policies must be alleged for coverage to apply.

There are no allegations in the underlying complaints of injury to or destruction of tangible property and no damages alleged to have resulted directly from injury to or destruction of tangible property. Fundamentally, the underlying complaints do not allege that any of the Plaintiffs' myriad alleged intentional and fraudulent acts caused injury to or destruction of tangible property. Further, there are no intangible or consequential damages which are alleged to have *resulted directly from* covered property damage. Allegations of damages that would be covered under the Lexington Policies simply do not exist in the underlying complaints.

Plaintiffs cite *Marley Orchard Corp. v. Travelers Indem. Co.*, 50 Wn. App. 801 (1988), but that case does not support Plaintiffs' position. In *Marley*, the insured, ISI, designed and installed an irrigation system in Marley's orchard, after which some trees exhibited stress. Marley sued ISI, alleging ISI was negligent, that the irrigation system was inadequate and caused stress to the trees, and that as a result, that Marley had to make expensive additions to the system. *Id*. at 802-803. The court awarded Marley compensation for modifications to the irrigation system, finding that Marley had proved ISI's system was inadequate and resulted in stress to the orchard's trees. *Id.* at 803. On appeal of the coverage action, the court found that the stress to the trees was property damage under the policy and that the policy covered consequential damages, which included the cost of additions to the irrigation system. *Id.* at 809.

---

[7] Without explanation, Plaintiffs submit the Goodman Declaration. Dkt 75. Under the "eight corners rule", this is one more piece of after-the-fact extrinsic evidence that cannot be considered in the duty to defend analysis.

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 8

**Andrews▪Skinner, P.S.**
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1 *Marley* and the other cases cited by Plaintiffs merely hold that consequential damages 2 (including lost profits) that directly result from a tangible physical injury may be covered. 3 However, unlike in *Marley*, there is no property damage alleged; accordingly, coverage has not 4 been triggered. There is no reason to consider the question addressed by the court in *Marley* 5 because there is no coverage here in the first instance. Plaintiffs' reliance upon *Marley* is 6 therefore misplaced.

7 Plaintiffs argue that *Walla Walla College v. Ohio Cas. Ins. Co.*, 149 Wn. App. 726 8 (2009), pertains only to timing of damage. But Plaintiffs' argument is again misleading. The 9 court in *Walla Walla* necessarily had to determine whether, as a matter of law, property damage 10 had occurred within the policy period, in order to determine if coverage was triggered. The court 11 held there was no property damage that occurred during the policy period, notwithstanding that 12 the insured had submitted testimony that improper installation of the tank during the policy 13 period started a process which ultimately resulted in tank failure. *Id*. at 729. Yet, the court ruled 14 the alleged improper installation was not "physical injury to tangible property" and therefore was 15 not covered "property damage." *Id.* at 735-736. Likewise, damage to a property "right" is not 16 "injury to or destruction of tangible property." Plaintiffs similarly argue that *Wellbrock v.* 17 *Assurance Co. of America*, 90 Wn. App. 234 (1998), involves "timing" of injury and not the fact 18 of injury. Again, Plaintiffs minimize the import of that case. A risk of harm means the harm, or 19 damage, that might be covered has not yet occurred. *Wellbrock* is clear that risk of harm does 20 not trigger coverage under a liability policy (The mere presence of a "hazard," defined as a 21 "source from which an accident may arise" does not trigger coverage).

22

DEFENDANT LEXINGTON INSURANCE
COMPANY'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 9

**A n d r e w s ▪ S k i n n e r , P . S .**
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1    In an apparent concession that risk of harm alone is insufficient to trigger coverage, Plaintiffs argue that "[a]llegations that the AMS Defendants created very real life and safety issues did more than raise a risk of later damage." However, the underlying plaintiffs did not allege that they were seeking damages for something more than the mere "risk" of life and safety issues. Plaintiffs are attempting to achieve coverage by stretching the allegations beyond their clear meaning. Plaintiffs state that the allegations "raised at least the possibility that the AMS Defendants could ultimately be legally obligated to pay damages because of actual bodily injury or property damage." See Dkt 74, at 17, lines 3-6. But Plaintiffs' statements are unsupported by the record. There is no allegation seeking recovery by the underlying plaintiffs for bodily injury or injury to tangible property.

In the instant case, the underlying plaintiffs suing for recovery of losses for fraud and other intentional conduct in relation to the PMAs, are not seeking to recover for bodily injury or property damage, and there is no scenario based on the matters pled in the underlying complaints in which Lexington would be liable for coverage. Ignoring this most basic tenet of coverage law, Plaintiffs instead expect this Court and Lexington to imagine what evidence might be introduced at a trial of the underlying case to determine whether it has a duty to defend. Plaintiffs' assertion is untenable and unsupported by any authority whatsoever. Washington courts have not adopted the "anything is possible" rule as concocted by Plaintiffs.

**7.    The Lexington exclusions bar coverage for the underlying claims.**

Plaintiffs do not dispute the potential application of certain exclusions found in the Lexington Policies. Rather, they simply raise minor issues that will be addressed below.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND [2:15-CV-
01004-TSZ] - 10

A n d r e w s ▪ S k i n n e r ,  P. S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

**Expected or Intended Injury Exclusion –** Plaintiffs resort to the "subjective" intent argument with respect to Exclusion a. However, this motion addresses the duty to defend, which depends on the allegations of the underlying complaints. The underlying plaintiffs allege only intentional conduct, which would be precluded by this exclusion. Further, Plaintiffs dispute the notion that intent can be inferred from this type of misconduct. *Rodriguez v. Williams,* 107 Wn.2d 381, 386 (1986). Plaintiffs have been accused of fraud, racketeering and other unlawful acts. As in *Rodriguez* and related cases, it is incredible to argue that when the insureds allegedly committed fraud or racketeering, they did not intend to harm their business partners.

**Cross-Suit Exclusion –** Plaintiffs assert that because the PMAs are between the Owners and AMS/AMSC, the Cross-Suit exclusion applies only to those entities. However, the exclusion would apply to all cross suits between insureds/additional insureds, including the Plaintiffs in this case and the Owners in the underlying cases, regardless of the PMAs. Further, the California Action also required that the Owners be named as insureds to the Lexington Policies, thereby satisfying the cross-suit exclusion for that action. Dkt 51-6 at 64, 122-123.

**Mold and Pollution Exclusions -** Plaintiffs refer to extrinsic evidence that mentions mold issues. Any property damage or bodily injury arising out of mold would be barred by the mold exclusion. Plaintiffs also cite to the life safety risk associated with improperly maintained carbon monoxide detectors. The Washington Department of Ecology defines carbon monoxide as a "toxic air pollutant." WAC 173-460-150. There can be no dispute that carbon monoxide is subject to the pollution exclusion, which would bar coverage for resultant damages.

**Damage to Property Exclusion –** Plaintiffs focus solely on Exclusion j(1), which

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 11

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248▪Fax: 206-623-9050

addresses property owned, rented or occupied by the insured.  However, Plaintiffs do not address Exclusion j(4) or j(5), which address property damage to in the care, custody or control of the insured or property damage to real property the insured or any contractors are performing operations, if the "property damage" arises out of those operations.  Washington courts acknowledge that CGL policies are not intended to insure standard business risks.  *Mut. of Enumclaw Ins. Co. v. Patrick Archer Constr., Inc.*, 123 Wn. App. 728, 733 (2004).  To the extent there are allegations of "property damage" in the underlying complaints, which is denied, such damage could only arise out of the insureds' operations and would be subject to Exclusion j.

## CONCLUSION

In opposing this motion, Plaintiffs gloss over the allegations of the underlying complaints as well as the language of the Lexington Policies.  However, under the "eight corners rule", there is not one allegation in the underlying complaints that satisfies the coverage requirements under the Lexington Policies.  In the absence of such allegations, Lexington properly declined to defend the underlying lawsuits and summary judgment in favor of Lexington is warranted.

DATED this 18th day of December, 2015.

ANDREWS ▪ SKINNER, P.S.

By *s/Stephen G. Skinner*
STEPHEN G. SKINNER, WSBA #17317
645 Elliott Ave. W., Suite 350
Seattle, WA  98119
Stephen.skinner@andrews-skinner.com
Attorney for Def. Lexington Insurance Company

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 12

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248▪Fax: 206-623-9050

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

ANDREWS ▪ SKINNER, P.S.

By *s/Stephen G. Skinner*
STEPHEN G. SKINNER, WSBA #17317
645 Elliott Ave. W., Suite 350
Seattle, WA  98119
206-223-9248 | Fax: 206-623-9050
Stephen.skinner@andrews-skinner.com
Attorney for Def. Lexington Insurance Company

DEFENDANT LEXINGTON INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND [2:15-CV-01004-TSZ] - 13

Andrews ▪ Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050