The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, AMERICAN MANAGEMENT SERVICES LLC, A Washington limited liability company, AMERICAN MANAGEMENT SERVICES CALIFORNIA INC., a Washington corporation, formerly d/b/a GOODMAN FINANCIAL SERVICES, INC., STANLEY HARRELSON, an individual, JOHN GOODMAN, an individual, PINNACLE IRWIN LLC, a Washington limited liability company, and PINNACLE MONTEREY LLC, a Washington limited liability company,<br><br>    Plaintiffs,<br><br> vs.<br><br>SCOTTSDALE INSURANCE CO., a Delaware corporation, and LEXINGTON INSURANCE COMPANY, a Delaware corporation,<br><br>    Defendants. | CASE NO. 2:15-cv-01004-TSZ<br><br>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR: MARCH 18, 2016 |

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

**I. INTRODUCTION**

The Insurers want to have their cake and eat it too. They argue that AMS should be required to continue to bear the entire financial burden and maintain all ESI gathered in the underlying lawsuits regardless of its relevance to this lawsuit. The law and facts do not support their position. The portion of the data AMS proposes eliminating has no application to the issues in this case. Aside from speculative theories, the Insurers give this Court no reason why extraneous data should continue to be maintained. Nor do they articulate why they are unable to provide search terms, despite having all necessary information to do so. The proportionality factors support AMS' motion because the financial burden outweighs the negligible potential benefit of maintaining data that has no application to the issues in this case.

This protective order would separate the wheat from the chaff. It would continue to maintain all potentially relevant data, and eliminate extraneous data that will have no impact on this case. This would result in substantial cost savings, and the Insurers would not be prejudiced because all relevant information would be maintained. The Insurers, on the other hand, ask this Court to require AMS to bear the entire cost to unnecessarily save all ESI in perpetuity. The Insurers' approach is unreasonable and inequitable. AMS respectfully requests that the Court grant its motion and adopt a practical and reasonable solution to this complex issue.

**II. ARGUMENT**

1. **The proportionality factors support granting Plaintiffs' motion.**

The Insurers address only the "amount in controversy" proportionality factor, and ignore the remaining factors.[1] While the amount in controversy here is significant, that fact alone is not sufficient to impose an unreasonable financial burden on AMS.[2] The proportionality rule also requires consideration of (1) the importance of the discovery in resolving the issues, and (2)

---

[1] Fed. R. Civ. P. 26(b)(1).
[2] "It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors." *Id.* (Committee Notes of Rules – 2015 Amendment).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 1
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

1  whether the burden and expense associated with the proposed discovery outweighs its benefit.
2  Both of these factors decidedly support AMS' position.

3  First, the data AMS proposes eliminating will have no impact on resolution of the issues.
4  Any data triggered by the search terms the Insurers provide will be maintained along with the
5  data that was responsive in the underlying lawsuits.  Any extraneous data (which would not have
6  been triggered by any of the search terms provided by the Insurers or the underlying plaintiffs)
7  would be eliminated.  If the data is not responsive to the broad search terms that are run on the
8  database, there is no chance that it would have any impact on the issues here. Significantly, AMS
9  is not proposing to eliminate the nearly nine million documents that were responsive to the
10 search terms run in the underlying litigation. Indeed, AMS will supplement that vast amount of
11 documents with any additional documents that are responsive to insurer-provided search terms.
12 Given the broad scope of search terms already run, it is entirely possible that additional terms
13 won't even result in additional responsive documents.

14 Second, the financial burden associated with maintaining the extraneous data far
15 outweighs the negligible benefit it may have in this lawsuit.  On the one hand, the financial
16 savings achieved by AMS' proposal would be substantial.  On the other, only superfluous
17 irrelevant data that would have no impact on this case would be eliminated.  The balance tips
18 decidedly in favor of AMS' motion.

19 AMS' position is further buttressed by the fact that the Insurers have failed to establish
20 that they would suffer any prejudice as a result of eliminating the irrelevant data.  They fail to
21 identify any information that could not be triggered by broad search terms.  They also fail to
22 address—let alone rebut—AMS' contention that the scope of discovery in an insurance coverage
23 case such as this is necessarily defined by the scope of discovery in the underlying matter;
24 particularly where, as here, discovery was a heavily litigated topic in the underlying lawsuits.
25

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PROTECTIVE ORDER - 2
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

1  The Insurers do not even attempt to explain why if it was determined by the parties in the
2  underlying lawsuits to not be relevant there, how it could possibly be relevant here.

### 2. The Insurers have sufficient information to provide search terms.

The Insurers both argue that they have not been provided sufficient information in order to formulate search terms.  That is not accurate.  As detailed in AMS' motion, the Insurers have been provided with the identification of all custodial sources along with a list of all the search terms that were run on the data in the underlying lawsuit.  Despite the Insurers' suggestion otherwise, the custodial data was broken down by organization and, as to any AMS custodian, was further broken down by location.  Furthermore, AMS has previously produced additional information (in the form of witness affidavits, declarations and statements) that provides details of many of the custodians' role at AMS and in the underlying lawsuits.  AMS is also providing today copies of all written discovery from the underlying lawsuits that shall be reviewed only upon agreement on a stipulated confidentiality agreement and protective order.[3]  The written discovery provides additional details (job title, role, etc.) regarding a number of the custodians.  AMS has provided the Insurers with a proposed agreement (modeled on the form agreement in the Local Rules and incorporating the protections of the agreements from the underlying lawsuits).  The Insurers have yet to consent to the agreement, but AMS will provide the written discovery promptly upon final agreement on the terms.

AMS has provided the Insurers all available information regarding the database. Unfortunately, each piece of information provided by AMS has been met with more questions

---

[3] Portions of the written discovery in the underlying lawsuits were covered by such an agreement, and AMS wishes to have coextensive protection here. AMS has advised the Insurers this information was available for some time. The parties have agreed on the framework of the protective order, but AMS is waiting for final comments from the Insurers.  Even though there is no agreement, AMS is providing this information subject to a final agreed-upon protective order.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PROTECTIVE ORDER - 3
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

and requests. That process is seemingly perpetual.[4] Meanwhile, AMS is left holding an exorbitant bill for storing irrelevant ESI.

The only additional information the Insurers identify as being relevant to this lawsuit and not the underlying lawsuits is what Scottsdale describes as information relating to "the mechanics of the underlying defense."[5] This information apparently includes documents containing correspondence between AMS, its counsel, the affiliates, the federal government, and the underlying parties relating to the settlement agreements reached in the lawsuits.[6] That information would not be included in the database and, thus, would not be destroyed under AMS' motion. Simply, those materials are not subject to AMS' Motion. The database includes information that was gathered by imaging hard drives and servers from numerous sources throughout AMS, not the information identified by Scottsdale.

Finally, the Insurers' confuse the issue when they argue they must have detailed information regarding the sources of data in order to devise their search terms. The origin of the data does not dictate the search terms. The issues in this lawsuit (*i.e.*, whether there is coverage under the policies for the underlying lawsuits) govern the search terms. For example, if the Insurers are interested in searching for data regarding "property damage," the source of the data is irrelevant. The question is not "who or where the data came from," as the Insurers suggest, but rather "what the data says." This principle applies equally to any potential search term. The Insurers should be required to provide search terms by April 1st.

---

[4] Unlike Lexington, AMS will not speculate as to the Insurers' motive in continuing to kick the can down the road. This is not, as suggested by Lexington, a "cynical attempt" by AMS to shift costs even if it is not successful on its motion for summary judgment. Doc. 87 at 6. AMS' motive has been clear all along: it wants to eliminate the significant financial burden associated with storing extraneous data.

[5] Doc. 85 at 7.

[6] *Id*. Of course, to the extent that such documents are protected by the attorney-client privilege and/or the work product doctrine, they would not be discoverable in the first place.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 4
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

### 3. **This motion is timely and appropriate for adjudication.**

The responses both argue that this motion is not appropriate at this time because it is contrary to the parties' initial discovery plan. This argument misses the point. The Insurers are correct that while the parties did discuss ESI, they did not discuss the specific issue here. What the Insurers fail to mention, however, is that when the parties conducted the initial discovery plan approximately seven months ago, the underlying lawsuits were still ongoing. The ESI database was being maintained as part of that litigation, and not solely for this lawsuit. It simply was not an issue when the parties conducted the initial discovery conference.

Once the continued storage of ESI became an issue, AMS promptly notified the Insurers and requested that they provide search terms. The Insurers cannot reasonably contend that they did not expect such an issue to arise. As Scottsdale acknowledges, "[n]ot surprisingly, a large amount of data was collected in the underlying litigation that is potentially relevant to these claims."[7] The parties have now been discussing the issue for more than six weeks to no avail. Given the Insurers continued refusal to work with AMS to mitigate the financial burden of storing the ESI, AMS had no choice but to bring this motion. It should be noted that while at least Scottsdale is willing to consider a cost-sharing agreement, it has not reached out to AMS to discuss any specifics of that arrangement.

### 4. **The Insurers should be required to share equally in the cost.**

As detailed in AMS' motion, the parties should share equally in maintaining the database. Despite the Insurers' argument otherwise, the equitable result is to require all parties to share in the cost of maintaining this information. The Insurers contend they should not have to pay for a database when they will not have access to all information.[8] To be clear, under AMS' proposal,

---

[7] Doc. 85 at 2.

[8] The Insurers' suggestion that they be provided access to all of the collected and processed data is not practical or reasonable. That data contains privileged and confidential information that has not been reviewed by counsel. AMS is not simply going to turn over all un-reviewed data to the Insurers at the risk of producing privileged and confidential information. AMS cannot unring the bell once the data is turned over to the Insurers.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 5
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

the Insurers would have access to *all* of the produced data from the underlying lawsuit, along with *all* non-privileged data triggered by their search terms.  The only thing the Insurers would not have access to is (1) privileged information, and (2) AMS' attorney work product associated with classifying the various documents and notes regarding the data.  Aside from that, the Insurers would have carte blanche to review all 8.7 million produced documents (about 48 million pages of material), plus any additional material triggered by their search terms.  The equal access being provided by AMS warrants equal payment for maintaining the database.

Scottsdale's suggestion that pro rata shares be divided among the eight separate plaintiffs is unreasonable.  Throughout the claims process and this litigation, the various plaintiffs have been treated as a single unit.  The Insurers never individually analyzed coverage nor have they asserted specific claims or defenses against individual plaintiffs.  Likewise, Plaintiffs have consistently presented collective arguments both during the claims process and during this litigation, including filing single motions on all issues.  For purposes of cost sharing, Plaintiffs should, therefore, be treated as a single unit.  The parties should each pay a one-third share of the ongoing cost to maintain the database.

### 5. AMS satisfied its conferral requirement.

Lexington contends that AMS has failed to satisfy its conferral requirement.  The facts do not support the argument.  More than six weeks ago, AMS placed the Insurers on notice of this issue.  At that time, AMS specifically requested that the Insurers provide search terms to be run on the processed data, so that the collected and processed data sets could be eliminated and the financial burden could be minimized.   Since then, the parties conducted multiple conference calls, and have had dozens of additional telephone calls and e-mails regarding the issue.  Throughout the process, the issues have been clear and AMS' requests of the Insurers have been consistent.  Rather than providing the search terms or an alternate solution, the Insurers have simply demanded that AMS continue to pay to store the ESI for an indefinite period.  Each

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 6
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

1  answer AMS provides is met with another question.  All the while, AMS is left holding the tab.

2  Any contention that AMS failed to satisfy its conferral record is not supported by the record.

3  The Insurers left AMS with no choice but to file this motion.

### III. CONCLUSION

For the reasons detailed in the briefing, Plaintiffs respectfully request that the Court grant their motion for protective order.

BALL JANIK LLP

Dated: March 18, 2016

s/Kyle A. Sturm
Kyle A. Sturm, admitted *pro hac vice*
ksturm@balljanik.com
Kevin S. Mapes, WSBA 40416
kmapes@balljanik.com
Nicholas A. Thede, WSBA 43765
nthede@balljanik.com
James C. Prichard, WSBA 30077
jprichard@balljanik.com
Ball Janik LLP
101 SW Main St., Ste. 1100
Portland, OR 97204
Tel: (503) 228-2525

BOWERS FOREMAN PLLC

s/Linda L. Foreman
Linda L. Foreman, WSBA 11817
linda@lindaforeman.com
Bowers Foreman PLLC
5825 60th St. SE
Snohomish, WA 98290
Tel: (425) 822-7197

Attorneys for Plaintiffs

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 7
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1

CERTIFICATE OF SERVICE

I certify that on March 18, 2016, I electronically filed the foregoing Reply In Support Of Plaintiffs' Motion For Protective Order with the Clerk of the Court for the United States District Court for the Western District of Washington by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 18, 2016

          s/Kyle A. Sturm
          Kyle A. Sturm, admitted *pro hac vice*
          Attorneys for Plaintiffs

CERTIFICATE OF SERVICE - 1
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1052940\v1