The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, AMERICAN MANAGEMENT SERVICES LLC, A Washington limited liability company, AMERICAN MANAGEMENT SERVICES CALIFORNIA INC., a Washington corporation, formerly d/b/a GOODMAN FINANCIAL SERVICES, INC., STANLEY HARRELSON, an individual, JOHN GOODMAN, an individual, PINNACLE IRWIN LLC, a Washington limited liability company, and PINNACLE MONTEREY LLC, a Washington limited liability company,<br><br>    Plaintiffs,<br><br>  vs.<br><br>SCOTTSDALE INSURANCE CO., a Delaware corporation, and LEXINGTON INSURANCE COMPANY, a Delaware corporation,<br><br>    Defendants. | CASE NO. 2:15-cv-01004-TSZ<br><br>PLAINTIFFS' MOTION FOR RECONSIDERATION<br><br>NOTE ON MOTION CALENDAR: MAY 2, 2016 |

PLAINTIFFS' MOTION FOR RECONSIDERATION
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

Under LCR 7(h), plaintiffs respectfully request that the Court reconsider its Order on the parties' cross-motions for summary judgment.[1] Plaintiffs have separately filed Plaintiffs' Stipulations and Admissions[2] in conjunction with this motion which are binding on plaintiffs for all purposes in this litigation. There are no "new facts" presented through the filing of additional Declarations nor is there any newly discovered evidence.[3] Rather, plaintiffs are setting out factual admissions and legal stipulations which, for purposes of this litigation, define the limits of the of the duty to defend as to specific allegations, claims, and insureds. Plaintiffs do not claim the insurers owed a defense to all insureds on all claims. This fact is fundamental to Plaintiffs' argument  The Stipulations and Admissions are offered to focus the legal and factual issues and remove extraneous material and arguments.

Plaintiffs submit the following errors support their motion for reconsideration:

1. The Court's application of the objective standard to find there was no "occurrence" was a legal error. First, the policies contain "Separation of Insureds" clauses and relevant policy provisions use the term "the insured" versus "an insured," which Washington courts have held to protects innocent insureds from the intentional wrongdoing of other insureds. Second, the Court incorrectly applied an objective standard to comprehensive CGL (CGL) policies. The policies provide broad coverage and are issued with endorsements identifying tens of Named Insureds and several categories of insureds, such as officers, directors and members, providing a completely different kind of coverage from the automobile and homeowners policies described in decisions applying the objective standard for the definition of occurrence. Washington courts have used several definitions of "occurrence" and "accident" and those

---

[1] ECF 90.
[2] ECF 92.
[3] Plaintiffs have an ongoing discovery dispute that may result in new evidence following resolution of that dispute.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 1
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

applied by the Court are inconsistent with the coverage provided by a CGL policy.  Third, the Court should have examined occurrence as it relates to each indivdial insured.[4]

2. The Court improperly applied Washington law by rejecting a duty to defend on the grounds that (a) "the gist" of the claims in the underlying lawsuits were fraud and intentional conduct because the duty to defend can be limited to a single claim or a defined set of covered claims and reasonably related allegations;[5] (b) the breach of fiduciary duty claims reasonably related to work order manipulation in the underlying lawsuits are covered.  The fact the underlying plaintiffs did not expressly allege claims for "property damage" or "bodily injury" is irrelevant under Washington law and the policies, because both recognize the policies' promise to pay "all sums the insured becomes legally obligated to pay as damages because of bodily injury or property damage"

3. The Court improperly judged issues of fact that relate to indemnity rather than the duty to defend when it determined (a) "property damage" and "bodily injury" were reasonably foreseeable and (b) the affidavits and declarations of employees filed by plaintiffs in the underlying lawsuits and referred to in Amended Complaints, as well as the testimony of experts, did not prove "property damage" or "bodily injury."

4. The Court incorrectly applied the "eight corners" rule by excluding the employee declarations and affidavits despite specific allegations of their existence and their content in the Fifth Amended Complaint (Georgia) and the Fourth Amended Complaint (California).

5. The Court incorrectly disregarded extrinsic evidnece, including (a) the the Apex report submitted by underlying plaintiffs, which identified hundreds of instances of property damage, and (b) employees' descriptions of "property damage", such as mold described in the

---

[4] *See Pacific Ins. Co. v Catholic Bishop of Spokane,* 450 F. Supp. 2d 1186 (2006).
[5] *See* Plaintiffs' Stipulations and Admissions re work order manipulation, **C. 1.**

PLAINTIFFS' MOTION FOR RECONSIDERATION - 2
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

declarations and affidavits of employees filed by plaintiffs in the Underlyling Litigation and referred to in the Amended Complaints.

### I. Plaintiffs could conceivably have been legally obligated to pay damages because of actual, documented property damage and personal injury.

The Court's Order was based, at least in part, in its conclusion that the underlying lawsuits "sound in fraud, not in personal injury or property damage." Not all of the underlying claims were based on fraud. The claims for breach of fiduciary duty could be proven without any evidence of intent or willfulness. At a minimum, the insurers should have agreed to defend those claims. Regardless, the Washington Supreme Court has explained "coverage does not hinge on the form of action taken or the nature of relief sought, but on an actual or threatened use of legal process to coerce payment or conduct by a policyholder."[6] Whether the underlying claims sound in fraud, in contract, or in tort is irrelevant.

The operative complaints incorporate references to actual property damage. The duty to defend should have been triggered on the "eight corners" of the underlying complaints and policy alone. Specifically, the Fifth Amended Complaint in Georgia and the Fourth Amended Complaint in California reference employee affidavits and declarations. If the insurers had actually considered the declarations, they would have seen repeated references to mold, which undeniably constitutes "physical injury to tangible property."

Moreover, those complaints make repeated reference to "life and safety" issues that allegedly arose from the insureds' failure to properly respond to work orders and otherwise maintain the military housing units. Once those "life and safety" allegations were made, the insurers had an affirmative duty to investigate and to determine whether the insureds' purported misconduct actually resulted in any property damage or bodily injury.

---

[6] *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wash.2d 869, 878 (quoting *Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 662 F.Supp. 71, 75 (E.D. Mich. 1987)).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 3
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

The insurers also had an obligation to carefully consider extrinsic evidence of actual bodily injury and property damage provided to them by the insureds.[7] That extrinsic evidence demonstrates actual property damage and bodily injury at the military housing units managed by the insureds. The underlying lawsuits were not merely about the potential for future harm because of the alleged misconduct. Rather, extrinsic evidence provided to the insurers documented actual instances of property damage or bodily injury. The underlying plaintiffs intended to use the evidence of property damage or bodily injury at trial in support of their breach of fiduciary duty claims. As a result, plaintiffs were which forced the insureds to file motions *in limine* in response that sought to block its introduction.

The Court's Order does not address all of the extrinsic evidence that was within the insureds' possession. Specifically, the Order makes no reference to the May 2012 "The Villages at Belvoir Environmental & Life Safety Inspection Report" that was prepared by Apex Companies, LLC, which was submitted in the underlying plaintiffs' opposition to the insureds' motion *in limine*, which sought to bar introduction of any evidence of "life and safety" issues.[8] Apex was hired "to complete inspections of the housing units and community spaces to evaluate the life safety and environmental condition of 100% of the homes and buildings" in 15 Fort Belvoir neighborhoods after a 2011 house fire killed a young boy at Belvoir.[9] The results were set out in a detailed report and also in a summary table, which documented 415 instances of "Water Damage, Staining, Mold."[10] Those instances of actual, documented property damage are further detailed in tables attached to the Report and include the following examples

---

[7] The insurers also had an obligation to consider factual information otherwise in their possession, including the specific allegations of bodily injury and property damage asserted by the *Mosquera* and *Charbonneau* lawsuits, which they were defending. The bodily injury and property damage at issue in those cases could have been used as evidence of the insureds' alleged breach of fiduciary duty in the California and Georgia cases.

[8] *See* Mathews Dec., Ex. 10, pp. 48 – 298.

[9] *Id.*, p. 50.

[10] *Id.,* p. 51.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 4
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

- Standing water at attic furnace has dripped through, causing water damage on ceiling of master bedroom.[11]

- Furnace/HWH closet has water dripping, water damage on ceiling and visible mold.[12]

- Floor of water heater closet on second floor has extensive water damage. Tiles are coming up, floor easily pushes down when pressure is applied.[13]

- Window frame in upstairs bathroom leaks. Water damage to paint next to shower.[14]

- Mold/water damage was observed at the bottom of the furnace unit. HWH pipes need repairs, inlet pipe is coming off from the top of the HWH.

These are five out of hundreds of documented instances of property damage. It does not matter that the underlying plaintiffs were not seeking the actual repair costs. Rather, the appropriate inquiry is whether the insureds could conceivably be obligated to pay damages *because of* that property damage. Because evidence of such damage could be introduced to support the plaintiffs' breach of fiduciary duty claims, the answer is "yes," and the insurers had a duty to defend.[15] Plaintiffs respectfully request this Court reconsider its Order in light of these facts.

**II. The underlying lawsuits alleged an "occurrence" sufficient to trigger coverage.**

The Court's conclusion that the underlying complaints did not allege an "occurrence" constitutes manifest error because it (1) improperly concluded that an objective standard applies, and (2) failed to separately consider each individual defendant's claim for coverage. The first error rests in the Court's interpretation of inconsistent, and often contradictory, Washington precedent on the proper standard. The second error results from failing to consider the allegations against each individual insured and, instead, painting all plaintiffs with a broad brush.

---

[11] *Id.*, p. 74.
[12] *Id.*, p. 97.
[13] *Id.*, p. 101.
[14] *Id.*, p. 157.
[15] Despite this Court's ruling, the declarations submitted in support of plaintiffs' motion for summary judgment demonstrate actual damage and not the mere risk of future harm. For example, the Cramer Declaration references a fire and a death, which are undeniably property damage and bodily injury. That Cramer himself did not suggest the damage was the direct result of the insured's misconduct is irrelevant; the declaration presents evidence of actual bodily injury and property damage that could have been introduced at trial in support of the underlying plaintiffs' claims for breach of fiduciary duty.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 5
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

### A. Washington law requires the Court to apply a subjective standard when considering an occurrence under a CGL policy.

The Court has concluded that the undefined term "accident" must be defined according to its common law meaning. Citing the Washington Court of Appeals decision in *United Servs. Auto. Ass'n v. Speed*,[16] the Court concluded that accident means "(1) an unusual, *unexpected*, and unforeseen happening; and (2) a loss that happens without design, *intent*, or obvious motivation." That definition is equivalent to the definition of "occurrence" considered in *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*[17] There, a commerican general liability policy defined an occurrence as "an accident * * * which unexpectedly and unintentionally results in personal injury [or] property damage," and the central question was whether the insured "expected or intended" the alleged damage.[18] There is no substantial difference in these definitions.

The Court dismisses this overlap in the definition because the policies here do not include the terms "unexpectedly and unintentionally."[19] This is a distiction without a difference. Whether the definition of the term is derived from the express terms of the policy or the common law, the analysis remains the same. The same point applies here and with greater force because the policies here were issued years after *Queen City Farms*. The insurers' failure to articulate a standard must inure to the benefit of plaintiffs, and a subjective standard must be applied.[20]

The Court's reliance on *Speed* is likewise misplaced. If a subjective standard were to be applied, the underlying complaints sufficiently allege an occurrence for the commerical entities and their executives for the claims relating to work order manipulation.

---

[16] 179 Wash. App. 184, 197-98, 317 P.3d 532 (2014) (emphasis added).
[17] 126 Wash.2d 50, 882 P.2d 703 (1994).
[18] *Id.* at 64.
[19] ECF 90 at 17. Notably, plaintiffs have consistently considered this point throughout this lawsuit.
[20] As noted by the *Queen City Farms* Court, the "lack of any objective standard in the policy (and the ease with which one could have been drafted if that is what the insurers intended)" supports the conclusion that a subjective standard is appropriate.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 6
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

1  Even when Washington courts interpret policies with the same language, the court's
2  interpretation may vary from prior holdings depending on (1) whether the language is in an
3  inclusionary section or an exclusion from coverage, and (2) whether the policy being review
4  provides the same insurance as the policy being reviewed in the prior case.[21]  Regarding the
5  latter consideration, "the courts have indiciated that they will not always intepret a term in a
6  comprehensive general liability policy in the same fashion that the identical term will be
7  interpreted in a different type of policy," such as an autombile policy.[22]  "For example, it is
8  recognized that '[t]he definition of 'accident' for the purpose of auto insurance is quite different
9  from the definition of 'occurrence' for the purpose of comprehensive general liability
10 insurance.'"[23]  In *Pacific Ins. Co. v. Catholic Bishop of Spokane*, the court distinguished the
11 definitions of accident espoused in *Safeco Ins. Co. v. Butler*[24] and *Roller v. Stonewall Ins. Co.*[25]
12 on the ground they were not factually analogous and did not address similar forms of insurance
13 (homeowner's / automobile as opposed to CGL).[26]  The *Pacific Ins. Co.* court correctly
14 acknowledged that the claims against the individual priests (who committed the sexual abuse at
15 issue in the underlying lawsuit) were not covered; however, as to the Diocese, the court found
16 there was an "occurrence" on the grounds that CGL policies "maintain a conceptual separation
17 between the intent of the employee and the intent of the employer," particularly, whereas here,
18 the insurance "policies' coverage language is defined in terms of '*the* insured,' rather than '*an*
19 insured' or '*any* insured.'"[27]

---

[21] Thomas V. Harris, *Washington Insurance Law* § 21.03, 21-3 (3d ed. 2010).
[22] *Id.* (citing *Queen City Farms*, 126 Wash.2d at 75-76 and collecting other cases holding the same).
[23] *Pacific Ins. Co. v. Catholic Bishop of Spokane*, 450 F.Supp.2d 1186, 1201 (E.D. Wash. 2006) (quoting *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 64 Wash.App. 838, 866, 827 P.2d 1024 (1992), *aff'd in part, rev'd in part*, 126 Wash.2d 50, 882 P.2d 703 (1994)).
[24] 118 Wash.2d 383, 823 P.2d 499 (1992).
[25] 115 Wash.2d 679, 801 P.2d 207 (1990).
[26] 450 F.Supp.2d at 1201-02.
[27] *Id.* at 1205 (emphasis in original).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 7
Case Number:  2:15-CV-1004-TSZ

The *Speed* case concerned an automobile insurance policy, not a CGL policy as at issue here. The purpose of the policies is different, and warrant differing interpretations. An insurer issuing a CGL policy provides broad coverage to those insured under its terms:

> [T]heir insurance obligation is interpreted in a fashion consistent with the undertaking described in the policy label. Insureds are not purchasing "almost comprehensive" coverage. [CGL] policies are marketed by insurers as comprehensive in their scope and should be strictly construed when the insurer attempts to subtract from the comprehensive scope of its undertaking.[28]

An average commerical insured expects this broad coverage when it purchases the policy. Importantly, the owners, directors, and officers of a commericial entity (such as AMS, AMSE, or AMSC) anticipate that broad coverage will be applied where, as here, they are included in a lawsuit on a theory of vicarious liability resulting from the wrongful acts of the company's employees. The protection afforded by a CGL policy to its owners, directors and officers is eviscerated by application of an objective standard to the acts of a commercail entity's employees—and contradicts the policies' coverage langauge (that is, "the insured")—because it results in a forfeiture of coverage for *all* insureds regardless of knowledge of the entity or its owners, directors or officers. The same cannot be said for automobile insurance. This fact must be considered when considering the scope of coverage available under the policy, including assessing what standards should be applied when the terms of a policy are not clear.

The Court failed to consider this in its ruling. Imposing the standard announced in *Speed* was improper; rather, the Court should have followed the guidance of the Washington Supreme Court in *Queen City Farms* and imposed a broad coverage obligation consistent with the purpose of CGL insurance. This failure constitutes manifest error and warrants reconsideration of the appropriate standard to be applied.

---

[28] *Olds-Olympic, Inc. v. Commercial Union Ins. Co.*, 129 Wash.2d 464, 471, 918 P.2d 923 (1996).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 8
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

**B. Each plaintiff's claim for coverage must be considered separately.**

The rights of one insured under the policies are not dependant on the rights of another insured under the same policies.[29] Where the policy grants coverage to "the insured" the contract between the insurer and several insureds is considered "separable."[30] Washington courts have recognized the general rule that an act barring coverage by one insured will not bar coverage for another insured that have not engaged in the precluded conduct.[31] Here, the separability of plaintiffs is established by the terms of policies themselves.[32] The effect of this is that the insurer has a separate contract with each insured, and coverage must be considered individually.

---

[29] *Tissell v. Liberty Mut. Ins. Co.*, 115 Wash.2d 107, 120-21, 795 P.2d 126 (1990).

[30] *Id.* at 120; *Truck Ins. Exch. v. BRE Props.*, 119 Wash. App. 582, 589-91, 81 P.3d 929 (2003). In contrast, Washington courts have concluded that an exclusion phrased in terms of "an insured" may operate to bar coverage for *all* insureds. *See, e.g., Farmers Ins. Co. of Wash. v. Hembree*, 54 Wash. App. 195, 200-01 (1989); *Mut. of Enumclaw Ins. Co. v. Cross*, 103 Wash. App. 52, 56-57 (2000).

[31] *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wash. App. 261, 266, 579 P.2d 1015 (1978).

[32] For example, the policies contain the following provisions, both of which frame coverage in terms of separable insureds:

1. **Insuring Agreement**
   a. We will pay those sums that <u>the insured</u> becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend <u>the insured</u> against any "suit" seeking those damages.

7. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part, to the first Named Insured, this insurance applies:
   
   a. As if each Named Insured were the only Named Insured; and
   b. Separately to each insured against whom claim is made or "suit" is brought.
   
   * * *

2. **Exclusions**

   This insurance does not apply to:
   a. **Expected Or Intended Injury**
   
   "Bodily injury" or "property damage" expected or intended from the standpoint of <u>the insured</u>. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 9
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

Although plaintiffs disagree with the Court's conclusion that an objective standard applies, that determination did not foreclose a finding of an occurrence regarding each individual insured. Even under an objective standard, the allegations against at least some of the plaintiffs constituted an occurrence under the policy.[33] In its opinion, the Court did not separately address the allegations against the various insureds. Instead, the opinion paints all of the insureds with a broad brush in stating that *all* of the allegations against *all* of the plaintiffs concerned intentional and deliberate conduct. This analysis is contrary to Washington law. When the allegations against some of the plaintiffs are considered separately, the objective standard is satisfied.

The allegations of intentional conduct in both of the underlying lawsuits focused on employees of the AMS entities.[34] With respect to the allegations focused on alleged work order fraud commited by those employees while working for the AMS entities, the theory against the AMS entities is that they were responsible for the conduct of their employees through *respondeat superior*. The underlying lawsuits did not make specific allegations of fraduent or intentional conduct against the Goodman/Pinnacle plaintiffs.[35] Instead, the underlying plaintiffs made claims against the Goodman/Pinnacle plaintiffs as corporate officers or shareholders for being vicriously liable for the culpable conduct by the employees of the AMS entities. They were not alleged to have been active participants in the fraudulent scheme and breach of fiduciary duties. At best, they are passive actors in the scheme being held vicariously liable for the conduct of the employees. Their liability in this respect could be established through non-intentional, negligent conduct, which would trigger the insurer's obligations to defend.

---

[33] There can be no reasonable dispute that if a subjective standard is applied an occurrence was alleged with respect to at least some of the plaintiffs.

[34] American Management Services, LLC, American Management Services East, LLC and American Management Services California, LLC are hereinafter collectively referred to as the "AMS entities."

[35] The Goodman/Pinnacle refers to plaintiffs Goodman Financial Services, Inc., John Goodman, Stanley Harrelson, Pinnacle Irwin, LLC, and Pinnacle Monterey, LLC.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 10
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

**III. The property damage and bodily injury arose from accidental occurrences.**

The Court summarily dismisses plaintiffs' argument that the underlying claims for breach of fiduciary duty could ultimately have been established on a negligence standard, with no evidence of intent. In doing so, the Court ignored Georgia and California law while misapplying Washington law. Neither Georgia nor California requires intent or expectation of harm to establish a claim for breach of fiduciary duty. This Court disregarded plaintiffs' argument, citing *Grange Ins. Ass'n. v. Roberts*,[36] for the proposition that the duty to defend is analyzed "solely on the factual allegations of intentional conduct, even where unintentional conduct could satisfy the cause of action."  That is not, however, the holding in *Grange*. There, the underlying plaintiff alleged only the tort of "outrage" or intentional infliction of emotional distress. The Court of Appeals noted, in a footnote, there was also a "judicially created cause of action" for negligent infliction of emotional distress. The Court of Appeals did not need to consider that cause of action, however, because "no party argues that [the underlying plaintiff] alleged negligent infliction of emotional distress."[37]

Here the underlying plaintiffs did not need to allege a separate cause of action for negligent breach of fiduciary duty. Rather, the very claim that was asserted could ultimately be proven on a negligence standard, even if the complaint alleged only intentional conduct. While we know of no Washington law addressing this issue, courts elsewhere have routinely found a duty to defend where a complaint alleges only intentional or willful conduct, but where the claimant could ultimately prevail on a lesser negligence standard.[38] Faced with that case law, the

---

[36] 179 Wash. App. at 739.
[37] *Id.* at 753, fn. 5.
[38] *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 394 (2003); *Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 988-90 (D.C. 2001) (finding potential coverage for libel in a complaint that alleged only "abuse of process"); *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (finding a duty to defend implied "unfair competition" claims where underlying complaint alleged tortious interference with contract and antitrust violations); *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (finding a duty to defend slander of title claims where insureds were alleged to have acted knowingly and intended the results of their actions).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 11
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

insurers should have given their insureds the benefit of the doubt—as they were required to do—and provided a defense for the breach of fiduciary claims reasonably related to the alleged work order manipulation.[39]

## IV. CONCLUSION

Plaintiffs respectfully request that the Court reconsider its Order on the parties' cross-motions for summary judgment and find that the insurers had a duty to defend plaintiffs in the underlying lawsuits for the breach of fiduciary claims reasonably related to the alleged work order manipulation.

DATED:  May 2, 2016                         BALL JANIK LLP

*s/Kyle A. Sturm*
Kyle A. Sturm, admitted *pro hac vice*
ksturm@balljanik.com
Kevin S. Mapes, WSBA 40416
kmapes@balljanik.com
Nicholas A. Thede, WSBA 43765
nthede@balljanik.com
101 SW Main St., Ste. 1100
Portland, OR 97204
Tel: (503) 228-2525

BOWERS FOREMAN PLLC

*s/Linda L. Foreman*
Linda L. Foreman, WSBA 11817
linda@lindaforeman.com
Bowers Foreman PLLC
5825 60th St. SE
Snohomish, WA 98290
Tel: (425) 822-7197

*Attorneys for Plaintiffs*

---

[39] We further note that the insurers could have, but did not, include in their policies an exclusion for breach of fiduciary duty claims. *See Nat'l Fire & Marine Ins. Co. v. Certain Underwriters at Lloyd's, London*, 169 Wash. App. 1016 (2012) (noting that an umbrella insurer had a defense obligation where the underlying primary policy contained a breach of fiduciary duty exclusion, while the umbrella policy did not).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 12
Case Number:  2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1

# CERTIFICATE OF SERVICE

I certify that on May 2, 2016, I electronically filed the foregoing MOTION FOR RECONSIDERATION with the Clerk of the Court for the United States District Court for the Western District of Washington by using the CM/ECF system.

I certify that all participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 2, 2016

*s/Kyle A. Sturm*
Kyle A. Sturm, admitted *pro hac vice*
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE - 1
Case Number: 2:15-CV-1004-TSZ

BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone 503-228-2525

1058652\v1