HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMERICAN MANAGEMENT SERVICES EAST, LLC, a Washington limited liability company, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>SCOTTSDALE INSURANCE COMPANY, a Delaware corporation, *et al.*,<br><br>　　　　　　　　　　Defendants. | NO.  2:15-CV-01004-TSZ<br><br>DEFENDANT LEXINGTON INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION<br><br>**NOTED ON MOTION CALENDAR:**<br>**June 3, 2016** |

　　　　Plaintiffs' motion for reconsideration should be denied.  In the April 15, 2016 order, the Court properly ruled that under the "eight corners rule," Lexington's duty to defend was not triggered by the allegations of the underlying complaints.  Specifically, the underlying complaints allege that <u>all</u> of the insureds engaged in intentional and fraudulent conduct, which would not be considered an "occurrence" under the Lexington Policies.  Furthermore, there are no allegations of "property damage" or "bodily injury," which is a fundamental requirement to coverage under the Lexington Policies.  Since Plaintiffs cannot establish these essential elements of coverage under the Lexington Policies, summary judgment was properly granted in favor of Lexington.

　　　　On reconsideration, Plaintiffs would have the Court ignore the "eight corners rule," a position

DEFENDANT LEXINGTON INSURANCE
COMPANY'S RESPONSE TO PLAINTIFFS'
MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 1

*Andrews▪Skinner, P.S.*
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248▪Fax: 206-623-9050*

directly adverse to longstanding Washington precedent. Plaintiffs make new arguments asking the Court to disregard established precedent on the interpretation of insurance policy terms and to consider a motion in limine from the underlying case and matters raised in entirely unrelated lawsuits, to assert a duty to defend was somehow triggered by the California and Georgia Actions. But this Court should not lose sight of the Washington standard for the duty to defend: "An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007).

As a rule, the duty to defend must be determined only from the complaint. *Id.*, at 53-54.[1] Courts "generally examine only the allegations against the insured and the insurance policy provisions to determine whether the duty to defend is triggered." *USAA v. Speed*, 179 Wn. App. 184, 194 (2014). However, "[I]nsurers do not have an unlimited duty to defend." *Id.,* at 196. The duty to defend "is not triggered by claims that clearly fall outside the policy." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 879 (2013).

Here, the Court correctly and thoroughly analyzed and applied the controlling Washington precedent to the unambiguous allegations, to conclude the duty to defend was never triggered with respect to the underlying California and Georgia Actions for which Plaintiffs sought coverage.

1. **Plaintiffs Have Not Established a Basis for Reconsideration.**

Motions for reconsideration are disfavored. LCR 7(h)(1). The motion should be denied in

---

[1] The two exceptions are, 1) when coverage "is not clear from the face of the complaint" the insurer has a duty to investigate outside the complaint, and 2) if the allegations in the complaint "conflict with facts known to or readily ascertainable by the insurer, or if the allegations are ambiguous or inadequate, facts outside the complaint may be considered." *Woo,* 161 Wn.2d at 53-54. As will be discussed below, neither exception applies in this case.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S RESPONSE TO PLAINTIFFS'
MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 2

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1  the absence of "manifest error" in the prior ruling or a showing of "new facts or legal authority which

2  could not have been brought to its attention earlier with reasonable diligence." *Id*.  The motion should

3  be denied because the Court did not commit manifest error when it applied settled Washington

4  precedent and ruled Lexington had no duty to defend the Plaintiff insureds for the myriad intentional,

5  knowing and/or fraudulent acts alleged against them in the California and Georgia Actions.

6      Nor have Plaintiffs brought forth any new facts or legal authority that could not have been

7  brought to the Court's attention earlier with reasonable diligence.  A motion for reconsideration is

8  not intended to allow litigants to make new arguments they could have made in the original

9  motion.  "Matters that were not presented in the first instance by a well-represented party are not

10  considered on a motion for reconsideration." *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp.

11  2d 1104, 1118 (W.D. Wash. 2010).  Plaintiffs admit there are no new facts or newly discovered

12  evidence (Pltf. Brief, at 1/4-5).  Yet Plaintiffs contradict themselves by submitting two April 2013

13  orders from the Georgia Action (Dkt. 94-1 and 94-2).  These documents are attached to a "Notice of

14  Supplemental Authority" filed by Plaintiffs (Dkt. 94) but they are not "authority" and they could have

15  been submitted earlier with reasonable diligence.  They should not be considered.[2]

16      **2.      The Law on "Occurrence" is Well-Settled in Washington.**

17      The Lexington Policies define "occurrence" as: "an accident, including continuous or

18  repeated exposure to substantially the same general harmful conditions."  Washington cases hold

19

---

20  [2] Plaintiffs' submission of the opinion from *Great American Insurance Company of New York v. Amer. College of Allergy*, 2016 WL 1532261(W.D. Tex.) is not on point and not persuasive.  In that case, the issue was whether the

21  duty to defend arose under the policy's "Personal and advertising injury" coverage.  The Court found the underlying complaint alleged that the insureds had published statements disparaging the underlying plaintiffs, and as a result there

22  was a duty to defend.  *Amer. College of Allergy* merely reinforces that the eight corners rule applies.

DEFENDANT LEXINGTON INSURANCE
COMPANY'S RESPONSE TO PLAINTIFFS'
MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 3

A n d r e w s ▪ S k i n n e r ,  P . S .
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

1 that "accident" is <u>not</u> a subjective term. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685 (1990).[3] "Either an incident is an accident or it is not." *Safeco Ins. Co. of America v. Butler*, 118 Wn.2d 383, 403 (1992) (*quoting Roller*). "Whether an event constitutes an accident is determined objectively and does not depend on the insured's subjective perspective." *See Speed*, 179 Wn. App. at 198. In *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739 (2013), the court held "[a] reasonably foreseeable harm resulting from deliberate conduct was not an 'accident' and, thus, not an 'occurrence' under the policy's language." *Id.*, at 756.

Plaintiffs argue the fact that the Lexington Policies do not contain the terms "unexpectedly and unintentionally" is "a distinction without a difference."[4] (Pltf. Brief, p. 6). However, the language of the policy is precisely the distinction that makes the difference when analyzing an insurer's duties vis-à-vis complaint allegations pursuant to the eight corners rule. *Queen City Farms v. Central Nat'l Ins.*, 126 Wn.2d 50 (1994), addressed different language (the "unexpectedly and unintentionally" clause), which is not found in the Lexington definition of "occurrence." Further, *Queen City Farms* held that the application of an objective standard in determining what constitutes an accident was not at issue in that case, and the holding does not contradict prior or more recent authority applying the objective standard:

> Finally, many of the cases relied upon by the insurers concern the meaning of the term "accident", and not specifically the issue whether expectation of harm should be determined under an objective or subjective standard. The determination of what constitutes an accident, i.e., whether injury or damage has resulted from an "accident", is not dispositive on the standard for expectation of the damages. Thus, this court's holding in *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990), that whether an accident has occurred is an objective determination, does

---

[3] Overruled in part unrelated to this discussion, *Butzberger v. Foster*, 151 Wn.2d 396, 408 (2004).
[4] Plaintiffs appear to try to confuse the issue by muddling the holding in *Speed* with the policy language in the *Queen City Farms* case. (Pltf. Brief, p. 6).

DEFENDANT LEXINGTON INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 4

A n d r e w s ▪ S k i n n e r , P. S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

> not control the question whether the expectation of injury or damage is to be decided under an objective or subjective standard.

*Id*. at 68.  Here, Plaintiffs assert the Court wrongly judged issues of fact by determining that any bodily injury or property damage would have been reasonably foreseeable.  However, Plaintiffs' argument is simply another baseless attack on the objective standard.

Plaintiffs cite to *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wn.App.261, 265-266 (1978), but *Unigard* supports Lexington's position that deliberate acts are not accidents and do not trigger the duty to defend.  *Unigard* held an insurer had no duty to defend a minor who intentionally set a fire, despite the minor's testimony that he did not expect or intend to cause damage to the building.  The policy in *Unigard*, similar to this case, defined "occurrence" as "an accident, including injurious exposure to conditions, which results, during the endorsement term, in bodily injury or property damage."  *Id*., at 262. The *Unigard* court rejected arguments by the minor that the term "accident" was ambiguous:

> The argument that the term "accident" is ambiguous is not well taken. In a long line of cases our courts have said that an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

*Id*., at 263-264.  In short, where "occurrence" is defined as an "accident," the insured who was alleged to have committed an intentional or deliberate act could not bring the claim back into coverage by claiming he did not intend the injury.  An objective standard applies.  By contrast, *Unigard* held the minor's parents, who also were insureds and who were sued for separate claims of *negligently failing to supervise and control their minor son*, were not barred from coverage because the claims against them sounded in negligence.  *Id*. at 262, 265-266 (1978).

In *Pacific Ins. Co. v. Catholic Bishop of Spokane*, 450 F.Supp.2d 1186 (E.D. Wash. 2006), claims were asserted against a priest for sexual abuse (intentional acts) and against the Diocese for negligent hiring and oversight (negligent acts). *Id.*, at 1189. It was undisputed that the claims against the priest for sexual abuse were not covered. The only issue was whether there was coverage for claims against the Diocese, which were for negligent hiring, supervision, and retention, not intentional direct sexual abuse. *Id.*, at 1201.[5] The negligence claims were covered.[6]

### a. Plaintiffs' Assertion that a Subjective Standard Applies to Lexington's Commercial General Liability Policies is Unsupported by the Record.

Plaintiffs refer to the Lexington Policies as "comprehensive" CGL policies calling for a subjective standard to apply to the determination of "occurrence." Plaintiffs' position is both factually and legally inaccurate. Plaintiffs' argument contradicts on-point Washington authority, discussed above and at length previously, calling for an objective standard. Plaintiffs cite to *Olds-Olympic, Inc. v. Commercial Union Ins. Co.*, 129 Wn.2d 464, 471 (1996), but that case did not involve the interpretation of "accident" or whether an objective or subjective standard applied.[7] *Olds-Olympic* concerned coverage for an insured's environmental cleanup under the Model Toxics Control Act. In that case, the jury made findings that "occurrences" happened at the insured's

---

[5] The Diocese was not seeking coverage as an innocent non-tortfeasor for the intentional acts of a co-insured. *Id*.

[6] The policy in *Catholic Bishop* defined coverage in terms of what is "neither expected nor intended from the standpoint of the insured." *Id.*, at 1202. However, the objective versus subjective standard was not dispositive in *Catholic Bishop*, as the court relied on the nature of the claims alleged. In short, claims for intentional acts against the priests were not covered; claims for negligence against the Diocese were covered.

[7] Plaintiffs rely on a discussion in *Olds-Olympic* about an "owned property" exclusion, where the court said that so-called "comprehensive" general liability policies are interpreted broadly in favor of coverage consistent with the "comprehensive" label. *Id.* at 471. Aside from *Olds-Olympic* being entirely inapposite, the Lexington Policies in this case were not labeled as "comprehensive general liability" policies. Nothing in *Olds-Olympic* provides a basis for applying a subjective standard to "accident" under the Lexington Policies.

DEFENDANT LEXINGTON INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 6

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

place of business causing damage to the State's groundwater.[8] The jury's findings on occurrence and causation were not at issue on appeal.[9] As such, there was no analysis of whether an objective or subjective standard applied to the policy language.

### b. Plaintiffs' Assertion Regarding Individual Insureds is a Red Herring.

Now that the Court has ruled on all of the claims from the Underlying Lawsuits, Plaintiffs concede the only claims for which they believe a duty to defend could exist are for the claims of breach of fiduciary duty. *See* Dkt. 92, at 5.[10]

Plaintiffs now argue, for the first time, that the Court "should have examined occurrence as it relates to each individual insured." (Pltf. Brief, at 2). In addition to criticizing the Court for not addressing arguments not raised before, Plaintiffs' position is even more incredible for its misrepresentation of the record. Plaintiffs argue that the theory against the "AMS entities"[11] in the underlying complaints was that they were responsible for the conduct of their employees through *respondeat superior*. Plaintiffs also argue that there were no specific allegations of fraudulent or intentional conduct against the "Goodman/Pinnacle" plaintiffs,[12] but that claims were made against the Goodman/Pinnacle plaintiffs as corporate officers or shareholders for being

---

[8] *Olds-Olympic* held that cleanup costs incurred by an insured under the MTCA may be damages under a liability policy, and that property damage to the property of a third party that resulted from an occurrence ordinarily would invoke liability coverage. *Id*., at 473, 476.

[9] The issue on appeal was whether the trial court had properly instructed the jury on the question whether the insured had a legal obligation with respect to the damage. The court held the instructions were ambiguous and that the basis for the jury's finding that the insured did not have legal liability for remediation of the pollution was unclear, and reversed and remanded the case for a new trial on the issue of the insured's legal liability. *Id*.

[10] Plaintiffs also state: "Plaintiffs' [sic] seek defense and indemnity for the counts & claims for: 1) Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty for allegations reasonably related to work order manipulations; 2) Attorneys Fees; and 3) Punitive Damages." Dkt. 92, at 5.

[11] "AMS entities" is defined by Plaintiffs as American Management Services, LLC (AMS) American Management Services East, LLC (AMSE), and American Management Services California, LLC (AMSC). (Pltf. Brief, at 10 n.34).

[12] Plaintiffs define "Goodman/Pinnacle" as Goodman Financial Services, Inc. (GFS), John Goodman (Goodman), Stanley Harrelson (Harrelson), Pinnacle Irwin, LLC, and Pinnacle Monterey, LLC (Pltf. Brief, at 10 n.35).

"vicriously [sic] liable" for the conduct of employees of the AMS entities.  (Pltf. Brief, at 10).  Again, Plaintiffs saying this does not make it true.  Tellingly, Plaintiffs do not identify one allegation in the Fiduciary Duty claims that allege *respondeat superior* or vicarious liability against any of the insureds.[13]  There are none.  *See* Dkt. 51-5, at 64-69; Dkt. 51,11, at 49-52.

The Court cannot rely on Plaintiffs' conclusory assertions unsupported by the record.  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (the nonmoving party on a summary judgment motion may not rest upon mere allegations or denials in the pleadings, unsupported conjecture, or conclusory statements). Without specific probative facts demonstrating a genuine issue of fact for trial, Plaintiffs cannot avoid summary judgment dismissal.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986).

This Court has determined, consistent with the unambiguous allegations in the underlying complaints, that the claims were for intentional and fraudulent conduct and there is no coverage.[14]  This case is distinguishable from *Unigard* and *Pacific Insurance*, as those cases merely held that claims expressly asserted for negligence were covered.  Here, the so-called AMS entities and

---

[13] Plaintiffs' argument that any of them were alleged to be "passive actors" is without merit.  While they include Pinnacle Irwin, LLC and Pinnacle Monterey, LLC as "passive actor" entities, these entities were not sued in the Georgia Action and were not accused of breach of fiduciary duty in the California Action.  *See* Dkt. 51-5 at 1; 51-9 at 41, 43.  Goodman and Harrelson were alleged to be personally involved in the breach of fiduciary duty as Pinnacle Irwin LLC and Pinnacle Monterey LLC's "most senior officers."  Dkt. 51-9 at p. 1, p. 4 ¶ 12, p. 42 ¶ 188.

[14] Citing *Boeing Co. v. Aetna Cas. & Sur. Co.,* 113 Wn.2d 869, 878 (1990), Plaintiffs mistakenly argue that "coverage does not hinge on the form of the action taken…." (Pltf. Brief, at p. 4).  However, even ignoring the theory of liability, which is for fraud and intentional misconduct, does not change the nature of the deliberate acts at issue in the Underlying Lawsuits.  See *Allstate Ins. Co. v. Bauer*, 96 Wn.App. 11, 16 (1999).

Goodman/Pinnacle plaintiffs were not alleged to have "negligently" breached a fiduciary duty nor are the claims against them premised on some "innocent" and "unknowing" vicarious or *respondeat superior* liability for acts of others. *See also Roberts*, 179 Wn. App. at 765.[15] Plaintiffs' new and unsubstantiated arguments do not change the result.

Plaintiffs invoke the laws of other jurisdictions (California and Georgia) to argue that because a fiduciary duty can be breached through negligent conduct, the fiduciary duty claims in the Underlying Lawsuits satisfied the "occurrence" requirement under the Lexington Policies. Once again, Plaintiffs ignore the specific allegations of the underlying complaints. The fiduciary duty claims do not reference negligent conduct. Notably, they are not silent as to the nature of the offending conduct. Rather, Plaintiffs were accused of breaching their fiduciary duty by engaging in "a series of widespread, systematic, and pervasive frauds, intentional misconduct, cover-ups and conspiracies . . . by and among . . . AMSE employees, AMSE senior management, and AMS top management." Dkt. 51-5 at p. 3. Under *Grange, supra,* and other Washington authority, there is no way these allegations could be characterized as an "accident."

### 3. Bodily injury and property damage as defined by the policies must be alleged for coverage to apply.

---

[15] *Roberts* held the claim for defamation was excluded under the exclusions for "knowing violation of rights of another" and "material published with knowledge of falsity," notwithstanding the insured's argument that the claim, construed liberally, "conceivably" alleged negligent rather than intentional conduct. The court disagreed, at 769:
> The complaint, read liberally in its entire context, alleges intentional and deliberate conduct. As to the defamation claim, the complaint alleges that Roberts made false statements about the other parties that went beyond the bounds of decency "in order to so intentionally interfere with their relationships." The complaint states no prima facie claim of negligence and solely refers to intentional, deliberate conduct. To state a claim for negligence, the underlying complaint must allege facts that support a conclusion that the conduct was negligent…. The complaint states no such facts. Read in context, the complaint alleges only intentional torts and, thus, Roberts's knowledge of the falsity of her statements may be implied. See *Margoles v. Hubbart*, 111 Wn.2d 195, 215, 760 P.2d 324 (1988) ("evidence of hostility or spite is clearly relevant" in determining whether defamation defendant acted with knowledge of falsity).

DEFENDANT LEXINGTON INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 9

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248 ▪ Fax: 206-623-9050

Even assuming Plaintiffs can get around well-established Washington authority and satisfy the "occurrence" requirement to the Lexington Policies, they cannot get overcome the absence of any allegation of "bodily injury" or "property damage" in the underlying complaints.  It is Plaintiffs' burden to show the claims are within the coverage provided by the policies, and Plaintiffs have failed to do so.  Plaintiffs argue that "Plaintiffs could conceivably have been legally obligated to pay damages because of actual, documented property damage and personal injury." (Pltf. Brief, p. 3/3).[16]  They ask the Court to find a duty to defend based on potential trial evidence or arguments outside of the allegations of the unambiguous underlying complaints.  No authority supports Plaintiffs' position.  Plaintiffs' repeated yet unsupported assertions that there was some allegation of "property damage" or "bodily injury" that would bring the claims within coverage was soundly, and correctly, rejected by this Court.  Dkt. 90 at 9.

Plaintiffs now argue, also for the first time, that references in the underlying complaints to "life and safety issues" required the insurer to investigate "whether the insureds' purported misconduct actually resulted in any property damage or bodily injury." (Pltf. Brief, at 3/21-22). They submit that this investigation should have led Lexington to carefully consider the extrinsic evidence presented to the Court in original summary judgment briefing: employee affidavits in the underlying suits, the Cramer Declaration, a motion in limine from the California Action, and two additional lawsuits (*Mosquera* and *Charbonneau*).  Plaintiffs' argument misses the point.  First, there is no reasonable reading of the underlying complaints indicating the underlying plaintiffs

---

[16] At the same time, Plaintiffs admit that "property damage" and "bodily injury" was not alleged in the underlying complaints.  *See* Pltf. Brief, 2/7-9 ("The fact the underlying plaintiffs did not expressly allege claims for 'property damage' or 'bodily injury' is irrelevant…").

DEFENDANT LEXINGTON INSURANCE
COMPANY'S RESPONSE TO PLAINTIFFS'
MOTION FOR RECONSIDERATION [2:15-CV-
01004-TSZ] - 10

A n d r e w s ▪ S k i n n e r ,  P. S .
*645 Elliott Ave. W., Ste. 350*
*Seattle, WA 98119*
*Tel: 206-223-9248 ▪ Fax: 206-623-9050*

were seeking recovery of damages for bodily injury or property damage. Second, there was no ambiguity in the allegations of the complaints to require investigation beyond the complaints. *Woo*, *supra*, at 53-54. Third, Lexington did review and carefully consider the extrinsic evidence submitted by Plaintiffs,[17] as did the Court. On this record, the Court correctly determined that the unambiguous underlying complaints, alleging fraud, did not create an exception to the eight corners rule so as to require consideration of extrinsic evidence. Dkt. 90, at 12. The Court nonetheless analyzed the extrinsic evidence and correctly concluded that even if considered, the extrinsic evidence added nothing beyond the complaints other than expanding upon the allegations of intentional mismanagement or fraud, and further that the employee affidavits and motion in limine in the California Action did not reference a specific injury but only the possibility of future harm. Dkt. 90, at 13. Nonetheless, Plaintiffs continue to assert that the existence of the *Mosquera* and *Charbonneau* lawsuits create a duty in this action, but they provide no authority for this position. As this Court noted, "that separate groups allegedly wronged by AMS' conduct have elected to proceed differently is not a basis to find coverage." Dkt. 90, at 14.[18]

Plaintiffs seek to eviscerate the eight corners rule and argue that an insurer has to consider what might be alleged or introduced at trial years after an underlying complaint is filed and assessed by the insurer. The extrinsic evidence cited by Plaintiffs was presented to Lexington long after the Underlying Lawsuits were filed and in some cases <u>after</u> the Plaintiffs filed this coverage suit. For example, Plaintiffs argue the Court "incorrectly disregarded" the "Apex" Report, which

---

[17] The extrinsic evidence was not submitted by Plaintiffs to Lexington until 2015.

[18] Further, Plaintiffs assert the declarations make "repeated" references to mold, which is misleading at best. However, the declarations, while critical of how the insureds responded to maintenance issues, do not allege, and do not support a claim for damages for bodily injury or property damage caused by any alleged act or failure to act by the insureds.

DEFENDANT LEXINGTON INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION [2:15-CV-01004-TSZ] - 11

Andrews▪Skinner, P.S.
645 Elliott Ave. W., Ste. 350
Seattle, WA 98119
Tel: 206-223-9248▪Fax: 206-623-9050

was filed in the California Action on July 2, 2015 (*See* Dkt. 65-1), two weeks after this coverage action was filed on June 22, 2015.  They further cite to a motion in limine filed in the California Action on June 25, 2015, long after the underlying complaints were tendered to Lexington and after the Plaintiffs filed this coverage action.  Plaintiffs present no authority for asserting a duty to defend arising out of extrinsic materials unknown and/or never provided to the insurer.

## CONCLUSION

After voluminous briefing on the duty to defend, one point stands out: there is not one allegation in the underlying complaints that satisfies the coverage requirements under the Lexington Policies.  As such, the Court properly applied the "eight corners rule" in ruling that Lexington owed not duty to defend the Plaintiffs in the underlying lawsuits.[19]  In the face of this reality, Plaintiffs would have this Court ignore controlling Washington authority and impose a convoluted duty on insurers to defend even if the underlying complaint does not contain any covered allegations.  The eight-corners rule provides a reliable standard for resolution of the duty to defend, which benefits insurers and policyholders alike, and there is no reason to abandon the rule in this case.  For these reasons, the Court should deny Plaintiffs' Motion for Reconsideration.

DATED this 27th day of May, 2016.

ANDREWS ▪ SKINNER, P.S.

By  *s/Stephen G. Skinner*
STEPHEN G. SKINNER, WSBA #17317
645 Elliott Ave. W., Suite 350
Seattle, WA  98119
Stephen.skinner@andrews-skinner.com
Attorney for Def. Lexington Insurance Company

---

[19] The result reached by the Court in its Summary Judgment Order was also reached in another Western District case, *State Farm Fire & Cas. Co. v. El-Moslimany*, Case No. C15-0124-MAT (April 15, 2016).

1

## CERTIFICATE OF SERVICE

2

3   I hereby certify that on May 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

4

5  ANDREWS ▪ SKINNER, P.S.

6  By *s/Stephen G. Skinner*
      STEPHEN G. SKINNER, WSBA #17317
7     645 Elliott Ave. W., Suite 350
      Seattle, WA  98119
8     206-223-9248 | Fax: 206-623-9050
      Stephen.skinner@andrews-skinner.com
9     Attorney for Def. Lexington Insurance Company

10

11

12

13

14

15

16

17

18

19

20

21

22